## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**MICHAEL GAGE,** )
     **Plaintiff,** )
)    **Civil Action No. 08-1159 (EGS)**
**v.** )
)
**DISTRICT OF COLUMBIA,** )
     **Defendant.** )
_____)

### PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

  Plaintiff Michael Gage respectfully moves for a preliminary injunction against the Defendant. In support, Mr. Gage submits the attached Memorandum and states as follows:

1) Mr. Gage is the father of T.G., a fifteen-year-old resident of the District of Columbia who has been determined eligible for special education.

2) Beginning shortly after they moved into the District of Columbia in February, 2008, Mr. Gage repeatedly asked the District of Columbia Public Schools ("DCPS"), in person and in writing, to determine and identify an appropriate school placement for T.G..

3) DCPS has declined to take any action whatsoever regarding T.G.'s educational needs.

4) After months of DCPS' failure to act, and after alerting DCPS to his intent, Mr. Gage enrolled T.G. in Rock Creek Academy, an appropriate private special education school that had agreed to allow T.G. to attend temporarily in the expectation of retroactive funding from DCPS.

5) Mr. Gage filed an administrative due process complaint containing the allegations in his Complaint in this case, which was then dismissed by the Hearing Officer.

6)  In dismissing the due process complaint, the Hearing Officer wrongfully held that DCPS did not owe T.G. a free appropriate public education ("FAPE") because T.G. had not enrolled at a DCPS school.

7)  If Mr. Gage and his son are not granted preliminary relief in the form of funding for his placement and independent evaluations, and other relief, T.G. will suffer irreparable harm.

For these reasons, Mr. Gage respectfully requests that this Court issue a preliminary injunction ordering the Defendant: 1) to take all steps necessary to place and fund T.G. at Rock Creek Academy, with transportation, retroactive to May 14, 2008;  2) to fund independent comprehensive psychological, speech and language, and OT evaluations of T.G., each at market rate;  and  3) to convene a multidisciplinary team ("MDT") meeting within fifteen days of receiving the results of those evaluations, and at that meeting to review the evaluations, to revise and update T.G.'s IEP as appropriate, and to develop an appropriate compensatory education plan to compensate T.G. for the denials identified herein.

Mr. Gage respectfully requests oral argument.

Respectfully submitted,

/s/ _____
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264
tyrka@tyrkalaw.com

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MICHAEL GAGE,** | ) | |
| **Plaintiff,** | ) | |
|  | ) | **Civil Action No. 08-1159 (EGS)** |
| **v.** | ) | |
|  | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## FOR A PRELIMINARY INJUNCTION

### BACKGROUND

Prior to late February, 2008, when they moved into the District of Columbia, Mr. Gage and his son T.G. lived in Montgomery County, Maryland. (Exhibit 1 at 5; Exhibit 4 at 2; Exhibit 5 at 2; Exhibit 6 at 2.)[1,2] T.G.'s Montgomery County school determined him eligible for special education as a qualified child with a disability and developed an individualized education program ("IEP") for him. (Exhibit 2.) T.G.'s Maryland IEP, his most recent, prescribes specialized instruction for all of his academic subjects and forty-five minutes of speech and language therapy given three times monthly. (Id.)

T.G.'s most recent evaluations are a November 10, 2000 psychological report (Exhibit 1 at 10), a November 13, 2000 educational evaluation (Id. at 16), an April 11, 2001 occupational

---

[1] As reviewed below, after DCPS agreed at the pre-hearing conference that there was no dispute regarding any of the facts alleged in Mr. Gage's administrative complaint, the Hearing Officer cancelled the scheduled hearing and ordered the parties to brief the issues. (Exhibit 4 at 2.) Mr. Gage filed a brief as ordered, but DCPS declined to file a brief and declined to file an opposition to Mr. Gage's brief. Because DCPS explicitly and implicitly conceded the factual statements in Mr. Gage's administrative complaint and brief, in this Motion Mr. Gage cites to those documents, among others.

[2] Exhibit 6, the Hearing Officer's Determination ("HOD") at issue in this case, is a four-page document, but the first page is not numbered and pages 2-4 are numbered 1-3. Citations to the HOD in this memorandum use the actual page numbers, not the page numbers printed on the bottom of the pages.

therapy evaluation (Id. at 19), and an April 12, 2002 speech and language evaluation (Id. at 26).
DCPS has never conducted any evaluations of T.G. (Exhibit 1 at 6; Exhibit 5 at 3.)

On March 6, 2008, Mr. Gage went to his neighborhood school, Ballou Senior High
School ("Ballou"), informed the staff at Ballou that T.G. was a child with a disability, and
requested a meeting to determine an appropriate special education placement for T.G. (Exhibit 1
at 6; Exhibit 4 at 2; Exhibit 5 at 3; Exhibit 6 at 2.) On March 11 and April 1, 2008, Plaintiff's
counsel wrote to DCPS to request a meeting to determine a placement for T.G. (Exhibit 1 at 6;
Exhibit 3 at 1, 3; Exhibit 4 at 2; Exhibit 5 at 3; Exhibit 6 at 2.)

DCPS did not respond to Mr. Gage's requests. (Exhibit 1 at 6; Exhibit 4 at 2; Exhibit 5 at
3; Exhibit 6 at 2.) DCPS has never attempted to arrange a meeting for T.G. or attempted to
perform any evaluations of T.G. (Exhibit 1 at 6; Exhibit 5 at 3; Exhibit 6 at 2.) DCPS has never
proposed an appropriate placement for T.G. or suggested that T.G. enroll at any school at all.
(Exhibit 1 at 6; Exhibit 5 at 3.) DCPS has not provided any instruction or related services to T.G.
(Exhibit 1 at 6; Exhibit 5 at 3.)

On May 8, 2008, Plaintiff's counsel notified DCPS that Mr. Gage had obtained T.G.'s
acceptance to Rock Creek Academy and that he intended to enroll T.G. there on May 14, 2008.
(Exhibit 3 at 9; Exhibit 5 at 3.) T.G. began attending classes at Rock Creek Academy on May 14,
2008.

Mr. Gage filed an administrative "due process complaint" with the District of Columbia
Office of the State Superintendent of Education Student Hearing Office on May 9, 2008. (Exhibit
1 at 5.) DCPS did not serve a response to the Plaintiff's complaint. See 20 U.S.C. § 1415(c)(2)
(B).

4

On May 23, 2008, the parties participated in a pre-hearing conference, at which DCPS conceded all of the factual allegations in the due process complaint and the parties agreed to forgo the hearing and submit briefs. (Exhibit 4 at 2; Exhibit 6 at 2.) The Hearing Officer issued a corresponding briefing order on May 27, 2008. (Exhibit 4.)

Mr. Gage submitted a brief on May 30, 2008. (Exhibit 5.)[3] DCPS did not submit a brief, and did not submit an opposition to Mr. Gage's brief. (Exhibit 6 at 2.)

In a June 6, 2008 written hearing officer's determination ("HOD"), the Hearing Officer dismissed Mr. Gage's administrative complaint on the basis that "DCPS is not obligated to make FAPE available to the student until he has enrolled at a DCPS school and has actually begun to attend." (Exhibit 6 at 3-4.)

T.G. has been attending Rock Creek Academy since May 14, 2008, and he has been receiving educational benefits there. (Exhibit 7.) However, in the absence of funding, Rock Creek Academy is willing to continue to allow T.G. to attend school only until the beginning of August 2008. (Id.)

## PRELIMINARY INJUNCTION STANDARD IN IDEA CASES

FED. R. CIV. P. 65 governs the entry of a preliminary injunction. "A court considering a plaintiff's request for a preliminary injunction must examine whether: (1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will substantially injure the other party; and (4) the public interest will be furthered by the injunction." Serono Lab. v. Shalala, 158 F.3d 1313, 1317-1318 (D.C. Cir. 1998).

---

[3] In the June 6, 2008 HOD, the Hearing Officer states that the Plaintiff's brief was submitted on June 2, 2008. (Exhibit 6 at 2.) However, the fax transmission report attached to the Plaintiff's brief shows that it was both sent to the Student Hearing Office and served on DCPS counsel before the close of business on May 30, 2008. (Exhibit 5 at 12.) Regardless, the Hearing Officer appears to have read and considered the Plaintiff's brief before making his determination.

"These factors interrelate on a sliding scale and must be balanced against each other. 'If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak.'" Shalala, 158 F.3d at 1318 (quoting CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995)).

Regarding the merits of the case, unlike in typical judicial review of administrative action, in a challenge to an IDEA HOD, the court bases its decision on the preponderance of the evidence. See 20 U.S.C. § 1415(i)(2)(C)(iii). The court therefore gives "less deference than is conventional" to the administrative decision. Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988).

The plaintiff must persuade the court that the hearing officer was wrong, and the court must explain its basis for ruling against the hearing officer. See Kerkam, 862 F.2d at 887. However, "a hearing decision without reasoned and specific findings deserves little deference" Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005)(internal quotation omitted), and on pure issues of law, the Court owes the Hearing Officer no deference. See Dale M. v. Bd. of Educ., 237 F.3d 813, 817 (7th Cir. 2001); see also Harris v. District of Columbia, Civil Action No. 07-1422, 2008 U.S. Dist. LEXIS 48022 *8-9 (D.D.C. June 23, 2008) (reviewing hearing officer's interpretation of IDEA implementing regulations de novo).

## ARGUMENT

I.  **THE PLAINTIFF WILL VERY LIKELY SUCCEED ON THE MERITS AND PROVE THAT THE HEARING OFFICER WRONGLY DENIED HIS REQUESTED RELIEF**

A.  **The Hearing Officer Incorrectly Ruled That DCPS Did Not Owe T.G. FAPE Because He Was Not Yet Enrolled in a DCPS School.**

As reviewed above, the Hearing Officer decided only one question: "When does the obligation of DCPS to make FAPE available arise?" (Exhibit 6 at 2.) The Hearing Officer

dismissed Mr. Gage's complaint because he ruled that "DCPS is not obligated to make FAPE available to the student until he has enrolled at a DCPS school and has actually begun to attend." (Id. at 4.)

To the contrary, this court has repeatedly, consistently held that under the IDEA DCPS owes FAPE to children in this jurisdiction regardless of enrollment status. Statutory construction aside, the Hearing Officer's ruling is grossly inequitable, in that it absolves DCPS of responsibility on the basis of Mr. Gage's failure to take an action that DCPS had itself made impossible.

1.    The IDEA does not condition the right to FAPE on enrollment.

In at least three cases, this court has ruled that enrollment is not a necessary condition of the right to FAPE. See Nesbit v. District of Columbia, 2003 U.S. Dist. LEXIS 26306 (D.D.C. March 31, 2003); District of Columbia v. Abramson, 493 F. Supp. 2d 80 (D.D.C. 2007); Hawkins v. District of Columbia, 539 F. Supp. 2d 108 (D.D.C. 2008).

In Nesbit v. District of Columbia, the court addressed the question of DCPS' responsibility for providing FAPE to a student enrolled in a charter school. 2003 U.S. Dist. LEXIS 26306. Judge Kessler ruled, as the court has consistently done since, that DCPS owed the child a FAPE despite the fact that he was not enrolled in a DCPS school:

> Defendant also seems to argue that DCPS was never responsible for [the child's] special education needs because his parents failed to enroll him in DCPS, but it is clear that DCPS was responsible for [his] special education needs as soon as [his father] inquired about evaluation at Meyer Elementary School.

2003 U.S. Dist. LEXIS 26306 at *21.

In District of Columbia v. Abramson, the court heard the District's challenge to an HOD that had held DCPS responsible for a child attending school in Connecticut. 493 F. Supp. 2d 80. Judge Friedman held that despite the child's enrollment in a Connecticut school, by virtue of his

District residency DCPS was responsible for identifying the child under the child-find provisions. See id. at 85-86. Moreover, and more relevantly, DCPS owed FAPE to the child independent of the child-find provisions. See id.

In Abramson, much as in the present case, the parents affirmatively acted to bring the child to DCPS' attention. See id. at 82. However, in Abramson the child had not yet been evaluated when his parents approached DCPS. See id. DCPS began the evaluation process, but then stopped once it learned that the parents had enrolled the child in a school in Connecticut. See id. The parents filed a due process complaint and prevailed, and the District challenged the HOD in this court. See id. at 83-84.

In the action before this court, the District argued only that it did not have any child-find obligations to the child. See id. at 84-85. The District explicitly admitted that DCPS owed the child FAPE despite his attendance at a Connecticut school: "'Once a child has been determined disabled pursuant to the statute, and is deemed eligible to receive special education and related services, the LEA where the child *resides* must provide FAPE.'" Id. at 85 (quoting from the District of Columbia's motion for summary judgment). The court agreed:

> "The 'child find' requirement...is distinct from the requirement of an LEA to provide FAPE to its residents....The LEA is still required to offer FAPE to any resident when there is a parent request for the student to be evaluated for services."
> ***
> Just because Connecticut may have child find responsibilities of its own and just because S.A. is currently enrolled in school in Connecticut does not relieve DCPS from having to fulfill its own responsibilities as the LEA of residence to evaluate the student and make FAPE available.

Id. at 85-86. (quoting HOD with approval).

Most recently, in Hawkins v. District of Columbia, Judge Bates wrote at length in rejecting DCPS' argument that the parent's failure to register the child negated the child's rights:

[E]ven if [the child] was not registered there as of that date, DCPS cites to no law to support its position that this alone would simply make all of its IDEA obligations disappear as to [the child]. In fact, the IDEA seems to contemplate the possibility that a student may not be enrolled in school at all prior to an initial evaluation since a FAPE is guaranteed to children as young as three years old. 20 U.S.C. § 1412(a)(1)....Thus, even the possibility that [the child] may not have been registered in any school does not, by itself, eradicate DCPS's IDEA obligations since [the child] was previously identified for an eligibility determination.

The IDEA provides that "[a] free appropriate public education is available to all children with disabilities <u>residing in the State</u> between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." 20 U.S.C. § 1412(a)(1)(A). Accordingly, "DCPS has a fundamental obligation to provide FAPE to a child with a disability <u>residing in the District of Columbia.</u>" <u>Abramson</u>, 493 F.Supp. 2d at 84 (citation omitted). It is undisputed that [the child] is a resident of the District of Columbia, and hence, DCPS must fulfill its IDEA obligations for this student.

539 F. Supp. 2d 108 at 114-115 (emphasis in original).

These cases leave no doubt that DCPS owes FAPE to each child with a disability in its jurisdiction, regardless of registration, enrollment, and attendance. Moreover, the LEA owes FAPE regardless of whether the child has yet been determined eligible. See <u>Abramson</u>, 493 F. Supp. 2d at 85 (quoting with approval hearing officer's statement that "[t]he 'child find' requirement...is distinct from the requirement of an LEA to provide FAPE to its residents....The LEA is still required to offer FAPE to any resident when there is a parent request for the student to be evaluated for services."). Thus the distinction drawn by the Hearing Officer in this case, that child find does not apply, is irrelevant. (Exhibit 6 at 3.)

The Hearing Officer rightfully noted that T.G. is largely past the point of child-find.[4] T.G. has been found eligible for special education, and Mr. Gage has made DCPS well aware of T.G.'s existence and his needs. At the time that Mr. Gage approached DCPS, T.G. did not need an eligibility determination; he needed a free appropriate public education.

---

[4] However, because his evaluations are far out of date, T.G. does require extensive evaluation.

In reviewing that undisputed state of affairs, the Hearing Officer adopted the position that DCPS had been unwilling even to argue in <u>Abramson</u>, that DCPS does not owe a student FAPE unless and until he is enrolled in a DCPS school.[5] <u>See</u> <u>Abramson</u>, 493 F. Supp. 2d at 85 (quoting the District of Columbia's statement that "[o]nce a child has been determined disabled pursuant to the statute, and is deemed eligible to receive special education and related services, the LEA where the child *resides* must provide FAPE").

The Hearing Officer based his ruling on the relatively thin basis of the phrasing of one provision of the statute that places certain specific obligations upon an LEA "[i]n the case of a child with a disability who transfers school districts within the same academic year, who enrolls in a new school, and who had an IEP that was in effect in another State[.]" 20 U.S.C. § 1414(d)(2)(c)(i)(II); <u>see</u> Exhibit 6 at 3; 34 C.F.R. 300.323(f). The Hearing Officer appears to have assumed that, because Congress placed specific obligations on LEAs in these circumstances, it therefore relieved LEAs of their general obligation to provide FAPE in those cases.

There is nothing in the IDEA to suggest that interpretation. Further, there is nothing in the statute or the legislative history to indicate that Congress intended, in its use of the word "enrolls" in that provision, to place any specific procedural burden on parents.

The statute does not define "enroll." <u>See</u> 20 U.S.C. § 1401. The Congressional Record includes three references to this portion of the statute during the discussion of the 2004 amendments to the IDEA; none of them indicates any intent to create a specific procedural obligation on parents.

The representatives spoke only of the need for "added protections of children" who transfer frequently, not the need for specific new procedures. 150 Cong. Rec. H10006 at H10007

---

[5] DCPS also declined to take that position in this case, as it declined to serve a response to the administrative Complaint or to file anything in compliance with the Hearing Officer's briefing order.

(statement of Rep. McGovern), H10019 (statement of Rep. Holt) (daily ed. November 19, 2004). The representatives did not want to make it more difficult to transfer an IEP; they wanted to "ensure[] that their individual education plans [sic] can travel with them." Id. at H10007 (statement of Rep. McGovern); see id. at H10014 (statement of Rep. Miller).

Similarly, the Conference Report contains no statement or suggestion that the new provision was intended to place an extra requirement on parents who transfer their children. "The Senate amendment, but not the House bill, requires that IEPs transfer with a child from one district to another, or State to State." H.R. Conf. Rep. No. 108-779, at 207 (2004).

This Court has consistently held, before and after the 2004 amendments, what the District freely admitted in Abramson, that the IDEA requires DCPS to provide FAPE to every qualified child within its jurisdiction, and that registration and enrollment have no bearing on that question. As the court discussed in Abramson, specific obligations in one part of the statute do not insulate an LEA from its general obligation to provide FAPE to every qualified child in the jurisdiction, so the Hearing Officer's reliance on only part of the IDEA is unwarranted. Moreover, the idea that Congress intended to place a specific procedural burden on parents transferring jurisdictions is nonsensical and contrary to the Congressional Record. Accordingly, on the merits the Court is likely to rule that the Hearing Officer incorrectly held that DCPS owed T.G. no obligations until Mr. Gage enrolled him.

2.     DCPS prevented T.G.'s enrollment at any DCPS school.

DCPS has never disputed that on three separate occasions, once in person and twice in writing, Mr. Gage informed DCPS of T.G.'s needs and asked DCPS to determine an appropriate school placement for T.G.. (See Exhibit 3 at 1, 3; Exhibit 4 at 2; Exhibit 5; Exhibit 6 at 3.) DCPS has never disputed that it did not respond to these requests, did not suggest any school for T.G. to

attend, and did not otherwise act to ensure that T.G. received any part of FAPE. (See Exhibit 4 at 2; Exhibit 5, Exhibit 6 at 3.)

It is therefore undisputed that not only did DCPS fail to provide a free appropriate education to T.G., it failed to provide him any education at all. DCPS did not just fail to meet to determine an appropriate school, as Mr. Gage repeatedly requested; it declined even to suggest that T.G. attend any particular school at all.

Needless to say, Mr. Gage could not enroll T.G. at a school when DCPS refused to tell Mr. Gage where to enroll him. Nonetheless, the Hearing Officer dismissed Mr. Gage's case on the basis of his failure to enroll T.G. in a DCPS school.

The IDEA empowers hearing officers to make equitable determinations. See, e.g., Frank G. v. Bd. of Educ., 459 F.3d 356, 373 (2d Cir. 2006) (quoting with approval U.S. Dept. of Education's Office of Special Education & Rehabilitative Services policy letter to Susan Luger, listed in 65 Fed. Reg. 9178 (Feb. 23, 2000) and reprinted in 33 I.D.E.L.R. 126 (March 19, 1999). Even if the Hearing Officer had been correct in his ruling regarding the specific obligation to enroll, in equity the Hearing Officer should not have excused DCPS of all of its obligations on the basis of its own obstruction. See, e.g., Shear v. Nat'l Rifle Ass'n, 606 F.2d 1251, 1254-1255 (D.C. Cir. 1979) ("[W]hen a promisor wrongfully prevents a condition from occurring that condition is excused.").

Accordingly, on the merits the Court is likely to rule that, even if Mr. Gage had an obligation to enroll T.G., the Hearing Officer should have held DCPS accountable regardless because DCPS prevented Mr. Gage from enrolling T.G..

**B.    The FAPE Owed to T.G. Includes School Placement, Instruction and Services, and Evaluations.**

FAPE includes, among other things, current evaluations and a current IEP, and an appropriate school placement. See, e.g., 20 U.S.C. § 1414(b)(3)(B); 34 C.F.R. § 300.304(c)(4); 20 U.S.C. § 1401(9)(C)-(D); Abramson, 493 F. Supp. 2d at 85 (quoting with approval hearing officer's finding that "[t]he LEA must offer FAPE by evaluating the student, convening an eligibility meeting, determining eligibility, developing an IEP if the student is eligible and determining and offering an appropriate placement"); Hawkins, 539 F. Supp. 2d at 116 (finding DCPS' failure to identify and evaluate child constituted denial of FAPE)); Harris v. District of Columbia, Civil Action No. 07-1422, 2008 U.S. Dist. LEXIS 48022 *13-14 (finding "DCPS's failure to appropriately monitor [student]'s progress under the IEP, and accordingly revise the plan to mesh with her needs, violates the clear mandate of both the IDEA and the Supreme Court" and the "failure to act on a request for an independent evaluation...jeopardizes the whole of Congress' objectives in enacting the IDEA").

There is no dispute that DCPS has not provided T.G. with a placement, or with any instruction and services. There is no dispute that DCPS has not performed any evaluations of T.G. despite the undisputed fact that all of his evaluations are out of date. See Exhibit 1 at 11-31; 20 U.S.C. § 1414(a)(2)(B)(ii) (reevaluations shall occur "at least once every 3 years").

Accordingly, on the merits the Court is likely to rule that DCPS wrongfully failed to provide T.G with placement, instruction and services, and evaluations.

**C.    The Court is Likely to Order Placement and Funding at Rock Creek Academy, Retroactive to the Date of Enrollment.**

"The Act contemplates that [FAPE] will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as

nonhandicapped children, but the Act also provides for placement in private schools at public expense where this is not possible." School Comm. of Burlington v. Dep't of Ed. of Mass., 471 U.S. 359, 370 (1985). A child is entitled to funding at a private school "if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act." Florence County School District Four v. Carter, 510 U.S. 7, 15 (1993).

There is no dispute that DCPS failed to provide T.G. with any placement whatsoever. Furthermore, Mr. Gage notified DCPS that he intended to send T.G. to Rock Creek Academy, and DCPS has never contended that Rock Creek Academy is in any way inappropriate for T.G.. There is no dispute that T.G. has been receiving educational benefits at Rock Creek Academy, where he has been attending school since May 14, 2008. (Exhibit 3 at 9; Exhibit 5; Exhibit 7.)

Accordingly, on the merits the Court is likely to order placement and funding for T.G. at Rock Creek Academy, retroactive to May 14, 2008.

## II.    MR. GAGE AND T.G. WILL BE IRREPARABLY HARMED IF IMMEDIATE RELIEF IS NOT GRANTED

To date, despite Mr. Gage's multiple requests, DCPS has not determined an appropriate – or any – placement for T.G., and has not provided him with any instruction and services. Furthermore, DCPS has not conducted necessary re-evaluations of T.G. or revised his IEP. As discussed above, all of these failures constitute substantive denials of FAPE.

This court has repeatedly held that the denial of FAPE constitutes irreparable harm. See e.g. Massey v. District of Columbia, 400 F. Supp. 2d 66 (D.D.C. 2005) (finding irreparable harm where DCPS had not offered an appropriate placement); Blackman v. District of Columbia, 277 F. Supp. 2d 71, 79 (D.D.C. 2003) ("Indeed, each day a child is denied a free appropriate education...he or she is harmed yet again."); Cox v. Brown, 498 F. Supp. 823, 828-29 (D.D.C.

1980) ("[The children] will suffer the irreparable harm of lacking each day of their young lives an appropriate education."). Harm to Mr. Gage and T.G. is immediate, irreparable, and – due to DCPS' continued failures – ongoing.

Mr. Gage has been able temporarily to mitigate some of this harm by enrolling T.G. in Rock Creek Academy.[6] Rock Creek Academy has agreed to allow T.G. to attend under these circumstances, in the hope that Mr. Gage would obtain retroactive funding through the administrative process. (See Exhibit 7.) Now that the Hearing Officer has dismissed Mr. Gage's case, Rock Creek Academy has informed Mr. Gage that the school can only allow T.G. to attend, without funding, until the beginning of August.[7] (See id.) T.G. is therefore in imminent danger of suffering the entirety of the irreparable harm.

## III.    THERE IS NO DANGER OF SUBSTANTIAL INJURY TO THE DEFENDANT

If Mr. Gage is granted immediate relief, DCPS will be responsible for the cost of T.G.'s tuition at Rock Creek Academy. This court has found that such a cost is not a substantial injury such that it outweighs the harm to the children in cases like this one. Cox, 498 F. Supp. at 828-29; Massey, 400 F. Supp. 2d at 74.

In Massey, the court held that the "unanticipated financial expense" of private school tuition for the student did not outweigh the "serious harm recognized in prior decisions" that results from the denial of FAPE. 400 F. Supp. 2d at 74. The court then elaborated on the nature and origin of the harm to DCPS:

> While this Court is sensitive to the budgetary pressures facing any public school district, DCPS cannot be allowed to violate the IDEA and then plead immunity to sanctions because of its financial situation. It is well within DCPS' control to comply with the IDEA and obviate the need for courts to make determinations that will affect DCPS' budget.

---

[6] T.G. has still not received updated evaluations.
[7] Rock Creek Academy is a "full-year" school that closes for a few weeks in August.

Id.

In Cox, the court suggested that this expense is not a "harm" at all, observing that "[t]he expense that must be borne for this education ultimately by the taxpayers is consistent with the intent that the handicapped children be no less educated and no less sheltered with constitutional protection than those not in need of special services." 498 F. Supp. at 830.

Though a preliminary injunction will force DCPS to pay the Rock Creek Academy tuition, that harm is insubstantial compared to the harm to T.G. from any further delay.

## IV.    IMMEDIATE RELIEF WILL FURTHER THE PUBLIC INTEREST

As in the analysis of the balance of harms, this court has repeatedly ruled that the public interest weighs in favor of immediate relief in cases like this one. "Prior decisions by this Court have made clear that the relevant public interest is that of students." Massey, 400 F. Supp. 2d at 75. "The public interest lies in the proper enforcement of the orders of the Court and the IDEA and in securing the due process rights of special education students and their parents provided by statute. These interests outweigh any asserted financial harm to DCPS." Petties v. District of Columbia, 238 F. Supp. 2d 88, 99 (D.D.C. 2002).

Because the public interest lies with the student in this case, as in most IDEA cases, the Court should order immediate relief for Mr. Gage and T.G.

**CONCLUSION**

For these reasons, the Court should issue a preliminary injunction ordering the Defendant: 1) to take all steps necessary to place and fund T.G. at Rock Creek Academy, with transportation, retroactive to May 14, 2008;  2) to fund independent comprehensive psychological, speech and language, and OT evaluations of T.G., each at market rate; and  3) to convene a multidisciplinary team ("MDT") meeting within fifteen days of receiving the results

of those evaluations, and at that meeting to review the evaluations, to revise and update T.G.'s

IEP as appropriate, and to develop an appropriate compensatory education plan to compensate

T.G. for the denials identified herein.

      Mr. Gage respectfully requests oral argument.


Respectfully submitted,

/s/ _____
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264
tyrka@tyrkalaw.com

# TABLE OF AUTHORITIES

## CASES

Blackman v. District of Columbia, 277 F. Supp. 2d 71 (D.D.C. 2003) ...………………….....14

Cox v. Brown, 498 F. Supp. 823 (D.D.C. 1980)..………………………………….....14, 15, 16

Dale M. v. Bd. of Educ., 237 F.3d 813 (7th Cir. 2001).……………….……………….6

*District of Columbia v. Abramson, 493 F. Supp. 2d 80 (D.D.C. 2007).…………......passim

Florence County School District Four v. Carter, 510 U.S. 7 (1993).……………….…………14

Frank G. v. Bd. of Educ., 459 F.3d 356 (2d Cir. 2006).…………………………………….12

Harris v. District of Columbia, Civil Action No. 07-1422, 2008 U.S. Dist. LEXIS 48022 (D.D.C. June 23, 2008).……………………………………………………………….6, 13

Hawkins v. District of Columbia, 539 F. Supp. 2d 108 (D.D.C. 2008).……………..…….7, 8, 13

Kerkam v. McKenzie, 862 F.2d 884 (D.C. Cir. 1988).……………………………………….6

*Massey v. District of Columbia, 400 F. Supp. 2d 66 (D.D.C. 2005).…………......14, 15, 16

Nesbit v. District of Columbia, 2003 U.S. Dist. LEXIS 26306 (D.D.C. March 31, 2003).…….6, 7

Petties v. District of Columbia, 238 F. Supp. 2d 88 (D.D.C. 2002).……………………….16

Reid ex rel. Reid v. District of Columbia, 401 F.3d 516 (D.C. Cir. 2005).………………...6

School Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359 (1985).………....…14

Serono Lab. v. Shalala, 158 F.3d 1313 (D.C. Cir. 1998).………………………...….5, 6

Shear v. Nat'l Rifle Ass'n, 606 F.2d 1251 (D.C. Cir. 1979).……………………………….12

## STATUTES & RULES

20 U.S.C. § 1400 et seq. (2006).……………………………………………….passim

34 C.F.R. § 300.323(f).……………….....……………………….………………….10

34 C.F.R. § 300.304(c)(4).……………….....……………………….………...……13

Fed. R. Civ. P. 65.……………….…….....……………………….……….......………5

## OTHER

150 Cong. Rec. H10006 (daily ed. November 19, 2004).………………………...……….11

H.R. Conf. Rep. No. 108-779, at 207 (2004).…………………………………...……….11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this Motion was served via hand delivery on the Defendant

District of Columbia at the Office of the Mayor, 1350 Pennsylvania Avenue, NW, Washington,

DC, and served via electronic mail on Edward Taptich, Chief, Equity Section Two, Civil

Division, District of Columbia Office of the Attorney General on July 3, 2008.

<u>/s/                      </u>
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264
tyrka@tyrkalaw.com



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**May 20, 2008**

Attorney-Advisor
Office of the General Counsel
District of Columbia Public Schools
Washington, DC 20002-4232
By Fax:  202-442-5097/5098

<u>RE: T██ G██ (D.O.B. ███/92)</u>

Attorney-Advisor:

A hearing has been scheduled for **9:00 a.m. on May 28, 2008,** to adjudicate a due process complaint filed on behalf of the above-captioned student, T██ G██. In addition to any documents and witnesses disclosed by DCPS, the parent reserves the right to rely on the following witnesses and documents, as well as any other documents previously disclosed or offered into evidence in any other matter concerning this student.

Documents:

**Administrative Record**

1.  05/09/08   Due Process Complaint Notice
2.  05/13/08   Due Process Hearing Notice

**Evaluations**

3.  11/10/00   Psychological Report
4.  11/13/00   Educational Assessment
5.  04/02/01   Occupational Therapy Evaluation
6.  04/12/02   Speech and Language Evaluation

**IEPs, MDT Meeting Notes, Etc.**

7.  12/01/06   Individualized Education Program ("IEP")

**Correspondence**

8.  03/11/08   Letter, Petitioner's Counsel to Special Education Coordinator, Ballou High School; 3401 4th Street SE Washington, DC 20032
9.  04/01/08   Letter, Petitioner's Counsel to Special Education Coordinator, Ballou High School; 3401 4th Street SE Washington, DC 20032

10. 04/02/08    Letter, Petitioner's Counsel to Office of the Registrar, Ballou High School; 3401
                4th Street SE Washington, DC 20032
11. 04/10/08    Letter, Kendra Hill, Rock Creek Academy, to Petitioner's Counsel
12. 05/08/08    Letter, Petitioner's Counsel to Special Education Coordinator, Ballou High
                School; 3401 4th Street SE Washington, DC 20032
13. 05/09/8    Letter, Petitioner's Counsel to Karen D. Shaw, Principal, Ballou High School;
                3401 4th Street SE Washington, DC 20032
14. 05/14/08    Notice Compelling DCPS Witness(es)


Witnesses:[1]

1. Mr. Michael Gage, Parent, 2008 Savannah Place SE Washington, DC 20020; (202) 907-2806
2. Ms. Kendra Hill, Director of Student Services; Rock Creek Academy, 4401 Connecticut
    Avenue NW Washington, DC 20008; (202) 378-1377
3. Ms. Sharon Millis, Special Education Advocate & Expert; Tyrka & Associates, LLC
4. Mr. Zachary Nahass, Associate; Tyrka & Associates, LLC
5. Ms. Camille McKenzie, Office Assistant; Tyrka & Associates, LLC
6. Mr. Patrick Meehan, Law Clerk; Tyrka & Associates, LLC
7. Ms. Yanet Scott, Office Assistant; Tyrka & Associates, LLC


Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

---

[1] Some witnesses may be testifying by telephone and/or use a designee. The address and phone numbers for all employees or agents of Tyrka & Associates can be found in the letterhead for this correspondence.

```
                          ************************************
                          ***   MULTI TX/RX REPORT   ***
                          ************************************

JOB NO.              4606
PGS.                   42
TX/RX INCOMPLETE     -----
TRANSACTION OK       [001] 2026983825                    SHO
                     [002] 2024425098                    OGC

ERROR                -----
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | SHO ~ Hearing Officer St. Clair & OGC |
| *Fax Number:* | |
| *From:* | Douglas Tyrka |
| *Regarding:* | T█████G██ |
| *# of pages:* | |
| *Notes:* | Disclosures Part 1 |

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended

```
                    ******************************
                    ***  MULTI TX/RX REPORT   ***
                    ******************************

JOB NO.         4607
PGS.            44
TX/RX INCOMPLETE    -----
TRANSACTION OK  [001] 2026983825                          SHO
                [002] 2024425098                          OGC

ERROR               -----
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*     SHO ~ Hearing Officer St. Clair
                 & OGC

*Fax Number:*

*From:*          Douglas Tyrka

*Regarding:*     T███ G███

*# of pages:*

*Notes:*         Disclosures
                 Part 2

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended

**DUE PROCESS COMPLAINT NOTICE**
In re T████ G█████
**May 9, 2008**

| | |
|---|---|
| **Petitioner:** | Michael Gage |
| **Student:** | T████ G███ |
| **DOB:** | ███/1992 |
| **Current School:** | Not Attending |
| **Residence:** | 2008 Savannah Place, SE |
| | Washington, DC 20020 |

**Petitioner's Contact Information for Special Education Purposes**:

Tyrka & Associates, LLC
1726 Connecticut Ave. N.W. Suite 400
Washington, D.C. 20009
Tel: 202-265-4260
Fax: 202-265-4264

**The Petitioner waives the right to a resolution session and requests that a hearing be scheduled immediately.**

**Hearing Time Requested:**

> if Daniel McCall is counsel for DCPS, 6 hours;
> if Tiffany Puckett is counsel for DCPS, 4 hours;
> otherwise, 2 hours.

**Violations:**

1. Failure timely to implement or revise a qualified child's IEP.
2. Failure timely to order re-evaluations of a qualified child with a disability.
3. Failure to provide an appropriate placement.

**Facts:**

1. T████ is a 15-year old resident of the District of Columbia.
2. T████ moved into the District of Columbia from Montgomery County, Maryland in late February, 2008.
3. T████ most recently attended Gaithersburg High School, where he had been determined eligible for specialized instruction and related services as a qualified child with a disability.
4. T████'s most recent IEP prescribes specialized instruction for all of T████'s academic subjects and 45 minutes of speech and language therapy, three times monthly.
5. T████'s most recent evaluations are:
   a) a psychological report dated November 10, 2000
   b) an educational assessment dated November 13, 2000
   c) an occupational therapy evaluation dated April 2, 2001, and
   d) a speech and language evaluation dated April 12, 2002.

**TG1**

6. On March 6, 2008, the Petitioner visited his neighborhood high school, Ballou Senior High School ("Ballou"), informed the Ballou staff that he and T███ had recently moved into the jurisdiction and that T███ required special education, and requested that DCPS determine an appropriate placement for T███.

7. On March 11, 2008, the Petitioner's counsel wrote to DCPS and requested that DCPS convene an MDT meeting to determine an appropriate placement for T███.

8. Before April 1, 2008, Gaithersburg High School delivered a copy of T███'s school records, including his IEP, to Ballou.

9. On April 1, 2008, the Petitioner's counsel again wrote to DCPS, and again requested that DCPS convene an MDT meeting to determine an appropriate placement for T███.

10. On May 9, 2008, the Petitioner's counsel again wrote to DCPS, and again requested that DCPS convene an MDT meeting to determine an appropriate placement for T███.

11. DCPS has never:
    a) convened an MDT meeting to determine an appropriate placement for T███,
    b) ordered any new or additional evaluations of T███,
    c) provided an appropriate placement for T███,
    d) suggested to the Petitioner that T███ should attend any school at all, or
    e) provided any specialized instruction or related services for T███.

12. On May 8, 2008, Petitioner's counsel wrote to DCPS to inform DCPS that the Petitioner intended to place T███ at Rock Creek Academy because DCPS had failed to determine a placement for T███.

13. Rock Creek Academy has agreed to accept T███ for admission, and the Petitioner intends to enroll T███ there on Monday, May 12, 2008.

**Proposed resolution:**

1. <u>Declaratory</u>: DCPS to be found to have denied FAPE to T███ by failing to perform timely re-evaluations of T███ in all areas of suspected disability, failing timely to implement or revise T███'s IEP, and failing to provide an appropriate placement for T███

2. <u>Injunctive</u>
   a) DCPS to fund and place T███ at Rock Creek Academy, retroactive to the date of enrollment.
   b) DCPS to fund independent comprehensive psychological, speech and language, and OT evaluations of T███, each at market rate.
   c) DCPS to convene an MDT meeting within 15 days of receiving the results of the independent evaluations to:
      i) review all current evaluations, and
      ii) review and revise T███'s IEP as warranted.
   d) DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

3. <u>Compensatory Education</u>
   a) At the ordered MDT meeting, DCPS to discuss and determine appropriate compensatory education to compensate T███ for DCPS' failure timely to conduct and review age-appropriate transition assessments.

b) In the alternative, DCPS to fund an independent evaluation to determine appropriate compensatory education, and following that evaluation, the Petitioner, at her option, to bring a due process complaint in order to present evidence and testimony on the issue of compensatory education.

**Resolution Meeting:**

1. The Petitioner waives the right to a resolution session.
2. The Petitioner contends that a representative of the LEA with authority to:
   a. fund and place T⬛⬛at Rock Creek Academy, retroactive to the date of enrollment;
   b. authorize funding for independent comprehensive psychological, speech and language, and OT evaluations;
   c. schedule an MDT meeting; and
   d. negotiate attorneys' fees for work performed prior to the resolution meeting
   is a necessary attendee at any resolution meeting.
3. If this individual is not going to be in attendance, the Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.
4. The Petitioner contends that any meeting not attended by the identified individual is not a valid resolution session, but rather an informal settlement discussion.
5. The Petitioner will be accompanied by his or her attorney at any resolution session convened subsequent to the filing of this complaint and will record any resolution session by analog or digital means.
6. Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

```
                    ********************************
                ***    MULTI TX/RX REPORT    ***
                    ********************************
JOB NO.          4497
PGS.               4
TX/RX INCOMPLETE  -----
TRANSACTION OK   [001]  2026983825                        SHO
ERROR            [002]  2024425098                        OGC
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW  ♦  Suite 400  ♦  Washington DC 20009  ♦  Phone: (202)265-4260  ♦  Fax: (202)265-4264

*Recipient:*   SHO & OGC

*Fax Number:*

*From:*   Douglas Tyrka

*Regarding:*   T██████ G█████

*# of pages:*   4

*Notes:*   Due Process Complaint Notice

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number shown above to arrange for the return of this transmission at the

```
************************
***   TX REPORT   ***
************************

TRANSMISSION OK

JOB NO.              4502
DESTINATION ADDRESS 2024425097
PSWD/SUBADDRESS
DESTINATION ID
ST. TIME            05/09 15:12
USAGE T             00'41
PGS.                4
RESULT              OK
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*     SHO & OGC

*Fax Number:*

*From:*          Douglas Tyrka

*Regarding:*     T██ G██

*# of pages:*    4

*Notes:*         Due Process Complaint Notice

CONFIDENTIALITY NOTICE



**OSSE**
DC Office of the
State Superintendent
of Education ≡≡

## Office of Compliance & Review
### Student Hearing Office

# DUE PROCESS HEARING NOTICE

| | | | | |
|---|---|---|---|---|
| **To:** | D. Tyrka | **Telephone :** | | (202) 265-4260 |
| | Parent and Legal Counsel, if known | **Fax:** | | (202) 265-4264 |
| | | **Email:** | | |
| | | | | |
| **To:** | OGC | **Telephone :** | | (202) 442-5000 |
| | LEA or LEA Legal Counsel, if known | **Fax:** | | (202) 442-5098 |
| | | **Email:** | | |

**FROM:**      Student Hearing Office Scheduling Coordinator

**RE:**      **Case Number:**      -    T▮▮ G▮▮    v.    **DCPS**

**DATE:**   **5/13/2008**   **Attending School:**      **Not Attending**

The Office of the State Superintendent of Education (OSSE), Student Hearing Office (SHO), received a Due Process Complaint on **5/9/08** . The Hearing Officer appointed to this due process complaint and the Hearing Officer's telephone, fax number and email address is:

| **Hearing Officer** | **Telephone** | **Fax** | . | **Email Address** |
|---|---|---|---|---|
| St. Clair, Herbert | (202) 543-2409 | (202) 543-2409 | | hsclair@aol.com |

The following dates and times have been provisionally scheduled in order to have a timely HOD if this matter is not resolved and proceeds to a hearing:

**Pre-Hearing Conference Date:**      **19-May-08**

**Due Process Hearing Date & Time:**      **May 27, 2008 @ 1:00 PM**

**Unless otherwise assigned, all Due Process Hearings will be conducted at 1150 5th Street, S. E., Washington, D.C. 20003.** Pre-Hearing Conferences will be telephonic, **unless the Hearing Officer orders otherwise.** If the parties have agreed in writing to waive the resolution meeting, the timeline for the conduct of the hearing and the issuance of the HOD commences the day after the written agreement. Therefore the parties must file the written agreement with the SHO with a copy to the Hearing Officer as soon as possible.
[**Please note:** On February 21, 2008, DCPS notified the Student Hearing Office that it will agree to waive resolution meetings in all cases where a complaining party requests such a waiver. Until such time as DCPS notifies the SHO otherwise, the SHO will treat the applicable timelines as beginning the day after a complaint requesting such a waiver is filed.]

<u>**THIS IS A PROVISIONAL NOTICE:**</u> It is the Hearing Officer who will set the pre-hearing conference and hearing date and time. If you are unavailable for the above pre-hearing conference date and/or time, please confer with the other party and contact the Hearing Officer with an alternative date and time. The date and time for the hearing will be set during the pre-hearing conference. You will have the opportunity during the pre-hearing conference to inform your appointed Hearing Officer if you are unavailable for the provisional date and/ or time for your hearing, and to specify a date and/ or time when you are available. Once all parties have been contacted by their appointed Hearing Officer and a pre-hearing conference had been concluded, a scheduled hearing date and/ or time may be modified only by a motion for a continuance.



**Office for Pupil and Community Services**
Field Office—Upcounty Government Center
12900 Middlebrook Road, Third Floor
Germantown, Maryland 20874
(301) 353-0833

Montgomery
County
Public
Schools

*Signature added*

C○○ ▬ ▬AL

## Report of the Psychologist

### CONFIDENTIAL

Student's Name: T▬▬▬ ▬▬▬▬        Student's ID#: 766482

Address:  186614 Sandpiper Lane  Gaithersburg MD.  20879

School: Rosemont Elementary       Grade: 03

Date of Evaluation: 11-08-00      Parent: Ms. Douglas

Date of Birth: ▬▬▬-92            Home Telephone:(301)975-0011

Age: 08-▬▬                        Date of Report: 11-10-00

Sex: Male                         Psychologist: Margaret R. Rifkind

Primary language: English:

REASON FOR REFERRAL:

T▬▬▬ receives special education services to address a speech and
language disability.  At the annual review of his academic
progress, held 2/17/00, a cognitive assessment was requested by the
IEP team to help to determine whether T▬▬▬ also has a learning
disability in the area of written language.

SOURCES OF DATA:

Bender Visual-Motor Test
House-Tree-Person
Record Review
Wechsler Intelligence Scale for Children - Third Edition (WISC-III)
Conference with Teachers

BACKGROUND INFORMATION:

T▬▬▬ is a third grade, eight year-old student, at Rosemont
Elementary School, where he has attended since kindergarten. Prior to
this, according to his records, he attended two years of Head-Start.
T▬▬▬, who was born in Maryland at a weight of six pounds and
thirteen ounces, experienced frequent colds and ear infections as a
little one. At the age of four years, when he was enrolled in Head-
Start at Strawberry Knolls, the speech pathologist assessed T▬▬▬
and found that he had a moderate articulation disorder and a severe
expressive and receptive language disorder.

**TG3**

T███ ████                           3                    Rosemont Elementary

he appeared to be unable to attend when they were given to the whole group.

Currently T█████ is in a regular third grade class but is pulled out by the special education teacher for Math, Reading, and Language Arts. His mainstream teacher, Ms. Russell, describes T██████ as a sweet child who sometimes needs redirecting when he is off task. He participates in classroom activities and is able to cope with Science and Social Studies because assignments and projects are done in cooperative groups.

Ms. Kline, the special education teacher who sees T█████ in a small group in her room, shares his previous teachers' perception of him. She finds T█████ to be highly distractible, and reports that he moves around a great deal and hums and makes noises. His distractibility significantly interferes with his independent work, she reports. Terrell also appears to be tired, particularly in the morning when he slouches on his desk. He has not picked up any new ISM objectives, this year, and it appears that he had regressed in his reading over the summer.  T██████ has made good progress from the level he started at in September but is still not at the level he was reported to have been at, at the end of second grade. Ms. Kline explained that they are going more slowly because she is trying to tie the writing into the reading of each book.  She finds that T██████ can demonstrate his comprehension orally but misses out words, capitalization, and punctuation when he writes.

Mrs. Douglas reported that T█████ goes to bed at an appropriate hour but does not readily fall asleep and is difficult to waken in the morning.

TEST BEHAVIOR:

T██████ is a handsome, appealing, little boy with whom it was a pleasure to work. He was observed in his third grade classroom, sitting on the rug with his classmates while his teacher read a story about the rain-forest.  T██████ was sitting at the edge of the group under a desk and did not appear to be looking at the teacher or the book when she showed the pictures to the children.  However, when the teacher asked a question about what she had read, T██████ was the first to put up his hand to answer and was able to give an appropriate response when called upon.  He was reluctant to leave the room with this examiner until reassured that he would have an opportunity later to do the follow up writing assignment.

T█████ was cheerful and chatty in the testing situation but he yawned a great deal and was clearly tired.  He was also eager to go back to his classroom but was nevertheless cooperative for as long as the examiner required him to stay.  T██████ said that he was nine years of age although he is actually eight.

T█████'s articulation was unclear, making it hard to understand

T█████ █████                    4                Rosemont Elementary

everything that he said.  He also had some difficulty finding the
correct words to express himself.  Although he seemed able to screen
out the sounds coming from the two rooms flanking the testing room, he
was visually distracted by features of the test materials that were
irrelevant to the task.  For example, he was concerned about what was
on the back of cards rather than what was on the front and it was hard
for him to follow the rule not to look over the screen behind which
the examiner was putting out the materials.  He responded to firmness
but did require an above average amount of structure.  T████████
persevered with difficult tasks but was able to move on without
frustration when asked to do so.

When asked to do a speed paper and pencil task T██████ was quick to
recognize what had to be done and adopted a good working position,
sitting up straight. He started off well but wasted time when he made
an error and then became distracted by trying to work with his thumb
in his mouth.  When asked to solve simple mental arithmetic problems,
T█████ demonstrated that he has not yet established the fact that he
has five fingers on each hand.

The results presented below should be considered a minimal estimate of
T█████'s potential in view of his fatigue during the testing and his
eagerness to have it come to an end.

TEST DATA AND INTERPRETATIONS:
Assessment of Cognitive Ability

On the Wechsler Intelligence Scale for Children-Third Edition (WISC-
III), a standardized measure of intelligence, T█████ earned a Verbal
IQ of 84 and a Performance IQ of 84, yielding a Full Scale IQ of 83,
all of which fall within the low average range of intellectual
functioning of youngsters his age. The WISC-III scaled scores below
indicate how T█████'s functioning compares with that of his peers on
a scale ranging upward from 1 to 19 with a mean of 10 and standard
deviation of 3.

| Verbal Subtests | Scaled Scores | Performance Subtests | Scaled Scores |
|---|---|---|---|
| Information | 06 | Picture Completion | 07 |
| Similarities | 09 | Coding | 08 |
| Arithmetic | 08 | Picture Arrangement | 11 |
| Vocabulary | 08 | Block Design | 06 |
| Comprehension | 05 | Object Assembly | 06 |

| | | | |
|---|---|---|---|
| Verbal IQ | 84* | Verbal Comprehension Index | 84 |
| Performance IQ | 84 | Perceptual Organization Index | 86 |
| Full Scale IQ | 83 | | |

*Mean is 100, standard deviation 15.

T█████ █████                           5                    Rosemont Elementary

T█████'s subtest scores range from the fifth to sixty-third percentiles of his age group. He performed best, just above the mean for his age group, on the Picture Arrangement subtest, on which he was asked to use logical reasoning to sequence pictures in order to tell a story, and he showed a relative strength, just below the mean, in his abstract verbal reasoning. T█████ was able to perform a speed paper and pencil copying task, solve mental arithmetic problems and define common words all in an average way. He was less successful when asked to solve problems calling for visual perceptual and organizational skills, performing in the low average range, and he was least successful on the last subtest administered, Comprehension, which calls for an understanding of his social environment and how to cope with practical problems. However, by this stage T█████ was so restless that it is probable that he was not trying his best.

Assessment of Visual-Motor Integration:

To formally assess T█████'s visual-motor integration the Bender Gestalt Test was administered. This is a developmental test on which he is asked to copy nine separately shown geometric shapes. T█████ drew the figures overly large and on both sides of the page in a manner typical of impulsive or acting-out children. He made seven errors, a number which would be more appropriate for a youngster of less than seven years of age, although, twenty percent of children T█████'s age would be expected to make this many errors. It is equivalent to a standard score of 83, which is consistent with his IQ scores.

It should be noted that three of T█████'s errors are ones that are more commonly made by children who have a neurologically based deficit in the area of visual-motor integration. Such a deficit would be expected to have some educational impact. It appears that the impact for T█████ occurs in his poorly formed handwriting.

From memory T█████ was able to reproduce four of the nine figures, albeit with errors, indicating that his visual-motor memory for shapes is within normal limits.

SUMMARY AND RECOMMENDATIONS:

T█████ is an eight year old, third grade boy, who was in special education, self-contained classes, from kindergarten through second grade, and is now in a regular third grade class with liberal support and small group, pull-out instruction in Reading, Language Arts, and Math.

Since Head Start T█████ has been perceived by his teachers to be highly distractible, overly active, and lacking in self-control. His off-task behavior has consistently interfered with T█████'s ability to do independent seat work. With the exception of writing, his academic skills appear to be within normal limits.

T█████ ██████                        6                    Rosemont Elementary

While he was in Head Start T█████ was assessed and found to
be functioning well below average in most cognitive areas
and he was diagnosed with a speech and language disorder,
for which he continues to receive therapy.

According to this testing, T█████ is now able to function
intellectually in the average to low average range, with a relative
strength in his ability to apply logical reasoning to solve problems
involving picture cues.

T█████'s difficulty in the area of written language appears to be, in
part at least, due to a deficit in his visual-motor integration.
Distractibility and fatigue, due to an inability to fall asleep at
night, also appear to impact his writing.

T█████'s behavior since commencing school has resembled that of a
child with an attention deficit disorder.

The school IEP team reviewed all the data, 11/13/00, and ruled out a
learning disability.  However, due to continued concern over T█████'s
handwriting it was suggested that an occupational therapy review be
requested.

In addition, the school health nurse agreed to gather data appropriate
for Mrs. Douglas to take to T█████'s doctor to help to rule out an
attention deficit disorder.  The nurse also mentioned that, in the
past, T█████ had been reported to have some eye muscle imbalance.
Mrs. Douglas agreed to follow up on this. While she is at the doctor's
it might be helpful to ask advice about T█████'s sleeping pattern.

Because T█████ is easily distracted by what he sees, his work
environment should be free of unnecessary visual stimuli and his work
sheets should be clearly laid out.

A behavior management technique that reinforces on task behavior and
work completion should be used at home and at school.

Margaret R. Rifkind
School Psychologist

MRR 11/15/00

CC. Parent
    Principal Rosemont Elementary
    Upcounty Field Office
    Pupil Services



# Rosemont Elementary School

## Educational Assessment Report

Student Name: T██████ ████████          Student ID: 766481
Date of Birth: ████/92                   Chronological Age: 8.● yrs
School: Rosemont Elementary               Date(s) of Assess: 11/2/00
Grade: 3                                  Date of Report: 11/13/00
County/ State:   Montgomery, Maryland     Examiner: Margo Kline
Student's Native Language: English

*Margo Kline*

## Purpose:

This assessment is being conducted as part of the legally mandated process to be followed when confirming whether or not a student is educationally disabled and eligible for special education services.

The assessment information included in this report contributes to answering T██████ ████████' diagnostic question.   The diagnostic question is, "Does T█████ need special education services for written language?".

Written authorization for this assessment has been given by Mrs. Theresa Douglas, T█████'s mother.

## Background  Information:

T█████ is a third grade student in the LAD program at Rosemont Elementary School.   He currently receives support in all curricular areas. T█████ has a very difficult time controlling his behavior.   He often calls out and acts on impulses.   When T█████ does stay focused for short periods of time, he works very hard.

**TG4**

## Assessment Information and Analysis:

Formal Testing

Test Behavior:

T⬛ was very cooperative during the testing. I feel that T⬛ worked to the best of his ability. The testing was completed in one session of a half hour.

Wood-cock-Johnson Psycho-Educational Battery

This test is an individually administered achievement test that measures a student's academic performance in relation to their peer group based on age and/or grade. Each cluster is composed of subsets that provide diagnostic information and gives insight into a student's strengths in reading, mathematics, and writing.

|  | Standard Score | Percentile |
|---|---|---|
| 26  Dictation | 7 7 | 7 % |
| 27  Writing Samples | 7 6 | 6 % |
| BROAD WRITTEN LANGUAGE | 7 9 | 8 % |

The BROAD Written Language cluster subtests measure the subject's skill in providing written responses to a variety of questions requiring knowledge of letter forms, spelling, capitalization, punctuation, and word usage, and in written responses to a variety of demands.

T⬛ performed below average on both the dictation and writing samples of the assessment. T⬛ earned a standard score of 77 in the dictation subtest and a 76 in the writing samples subtest. Overall, T⬛ earned a 79 on the BROAD Written Language. He had the most difficulty with usage (forming plurals: man - men) and punctuation. In the writing samples subtest, T⬛ reversed letters and did not use proper capitalization or punctuation. He also demonstrated needs in spelling. T⬛ would benefit from small group instruction in spelling, letter spacing, punctuation, capitalization and letter formation.

Writing Samples

This quarter, T█████ has been focusing on writing complete sentences in response to follow-up questions to books that he reads during Book Club. T█████ is not reluctant to complete the follow-up activities, however his writing process is very slow due to his high level of distractibility. He can verbally answer a comprehension question from the reading but when he writes the response, T█████ often leaves words out of the sentences. T█████ does not proofread for capital letters at the beginning of his sentences, periods, or complete thoughts. He uses the word wall or any other words that are displayed in the room as a resource for his writing. He also uses invented spelling to write.

From looking at T█████'s writing samples from the second week of school to the present time he does not demonstrate much progress. I am very concerned for T█████s learning because his high level of distractibility really disrupts his learning process. He often hums or makes noises throughout activities and it is very difficult for T█████ to stay focused. He usually slouches in his seat or lays his head on his desk.

In summary, from looking at T█████'s performance on the Woodcock-Johnson and with his writing samples, he could benefit from small group instruction in the area of writing. T█████ is a very sweet child and he wants to do well but he tends to get lost in his own world. Small group instruction would give T█████ the opportunity to strengthen the areas of writing where he has needs .



**Physical Disabilities Program**
Department of Special Education
8001 Lynnbrook Drive • Bethesda • Maryland 20814

Telephone: 301-657-4959                    Fax: 301-657-4989

CONFIDENTIAL

# OCCUPATIONAL THERAPY EVALUATION

Name: T██████                              I.D. Number: 766481

Date of Birth: 10/16/92                     Home School: Rosemont ES

Date of Evaluation: 4/02/01                 School: Rosemont ES

Chronological Age: 8-█                      Program: LAD

Address:  186614 Sandpiper Lane            Referral Source: IEP Mtg.
          Gaithersburg, Md.  20879

## BACKGROUND AND REFERRAL INFORMATION

T████ is an eight year, ████ month old boy attending a LAD third grade program, although he is in a general education class part of the day.  He has attended Rosemont ES since Head Start.  Medical history reveals that he was born full term and there were no complications during pregnancy, birth, or following birth.  His early motor milestones were achieved within the average time frames.  T████ has suffered frequent cough's and ear infections, according to his chart.  He was enrolled in Head Start in 9/96 and underwent a Speech evaluation in 1/97.  He was found to have a "moderate articulation disorder" and a "severe language disability."  By second grade, teachers were concerned about T████'s lack of impulse control and severe difficulty remaining on task.  A Psychological Assessment was performed in 11/00, and the report stated that T████'s behavior "resembled that of a child with ADD."  The report also stated that T████ had difficulty with written language, possibly due to decreased visual-motor integration skills.  An Educational Assessment was also performed in 11/00, and his score on a standardized test of visual motor integration was within the average range.  T████'s high level of distractibility was considered a hindrance to his writing process. In 11/00, a school IEP team ruled out a learning disability.

T████ was referred for an Occupational Therapy Assessment due to using an inappropriate pencil grasp, producing poor quality handwriting, difficulty with copying, slumping, and falling frequently. This assessment will evaluate his need for therapy as a support to his educational program.

**TG5**

                                                                    2

## TEST PROCEDURES

Review Referral Information
Review Confidential File
Classroom Observation
Informal Conference with Teacher
Individual Testing
Clinical Observations

## EVALUATION MATERIALS VERIFICATION

The test materials were selected and administered so as not to be discriminatory on a racial or cultural basis. The evaluation was provided and administered in the student's native language or other mode of communication unless it was clearly not feasible to do so.

Tests were selected and administered so as best to ensure that if a test is administered to a student with impaired sensory, manual, or speaking skills, the test results accurately reflect the child's aptitude or achievement level or whatever other factors the test purports to measure, rather than reflecting his/her impaired sensory, manual, or speaking skills (unless those skills are the factors that the test purports to measure).

The test instruments are technically sound and provide relevant information. They were validated for the specific purposes for which they were used and they were administered by trained and knowledgeable personnel in accordance with any instructions provided by the producers of the tests.

## CLASSROOM OBSERVATIONS

T▮▮ was observed after formal testing had been completed. He entered the classroom and sat at his desk. He was told to get out an article, but he appeared not to have it. The students he was sitting with were instructed to work as a group, so the boy sitting next to T▮▮ was told to share with him. T▮▮ was observed to lay his head on his desk, lean onto the boy sitting beside him, and play with his pencil. He continued to behave as if he was not attending for the duration of the observation.

## INFORMAL CONFERENCE WITH TEACHER

T▮▮'s teacher is concerned about his pencil grip, which she feels is inefficient. She also feels that his handwriting could be better. Apparently, T▮▮ trips and falls a lot, and his teacher is also concerned about this. She reports that he has trouble sitting erectly, and is constantly laying his head on the table. T▮▮'s teacher stated that he does not have a problem with fine motor coordination.

 T

## TEST DATA

### Bruininks-Oseretsky Test of Motor Proficiency
*(Normed for ages 4-14.5 years. The subtests in this assessment instrument are designed to evaluate fine/gross motor development.)*

| Age Equivalency | Standard Score (Average Range) 8-12 | Description of Performance (Low-High) | |
|---|---|---|---|
| 7-5 | 13 | Average | **Bilateral Coordination**- Using upper/lower, right/left extremities together in a coordinated manner. |
| 9-2 | 18 | Average | **Upper Limb Coordination** – Visual tracking and coordination of arms for throwing, catching, and precise movements of arms, hands and fingers. |
| 7-11 | 13 | Average | **Visual Motor Control** – Cutting and drawing lines within narrow boundaries – copying geometric forms. |
| 7-5 | 11 | Below Average | **Upper Limb Speed and Dexterity** - Arm and hand speed and control with pegs, coins, cards, beads, and quick pencil tasks. |

Comments: T▇▇ scored within the average range on three out of four subtests on this standardized test. On the Bilateral Coordination subtest he was at the low end of average, demonstrating difficulty using his arms and legs in a synchronized fashion. On the Upper Limb Coordination subtest, T▇▇ scored solidly in the average range and demonstrated good control of a ball, and was also able to perform precise movements of his hands and fingers. On the Visual Motor Control subtest, he had some difficulty cutting out a circle accurately, but was able to draw lines through small pathways with minimal to no errors. He was also able to adequately copy geometric figures. On the last subtest, Upper Limb Speed & Dexterity, T▇▇ scored below average. He had difficulty manipulating small objects and a pencil, quickly.

## VISUAL MOTOR PERCEPTION

### Developmental Test of Visual Motor Integration (Beery)
*(Normed for ages 2 yrs - 17 yrs. 11 mos. This test measures the visual and motor components of perception on an integrated level as it requires one to reproduce geometric forms increasing in complexity and spatial layout). Average range of standard score is 85-115. Interpretation ranges from very low to very high\**

| | Visual-Motor Integration |
|---|---|
| **Raw Score** | 17 |
| **Age Equivalent** | 7-6 |
| **Standard Score\*** | 96 |
| **Percentile** | 39% |
| **Interpretation\*** | Average |

T

Comments: On this test of visual motor integration, T▮▮ scored within the average range. He was able to copy all but two age appropriate figures, i.e. an adjacent circle and diamond, and a single diamond shape.

### Motor Free Visual Perception Test - Revised
*(Normed for children 4 yrs. - 11 years. 11 mos. This tests 5 areas of perception with the motor component eliminated as it requires one to choose the correct form from among 4 similar forms).*

Perceptual Age: 8-8

Perceptual Quotient (Average Range = 85 –115): 100

Comments: T▮▮ scored within the average range on this test of visual perception. He appeared to be able to attend for the duration of the test.

## CLINICAL OBSERVATIONS

**Test Behaviors:** T▮▮ was very quiet and cooperative during testing. He followed directions well, and appeared to be doing his best. By the end of the session, T▮▮ appeared to be having trouble maintaining his attention, but he responded well to redirection.

**Muscle tone and strength:** T▮▮ was able to perform 5 sit-ups and five push-ups. He was also able to assume and maintain the supine flexion position for 30 seconds. He was able to assume the prone extension position, but only able to hold if for approximately 5 seconds, indicating decreased back extensor strength. T▮▮ appeared to have decreased strength in his shoulders and elbows, but not in his hands.

**Postural alignment:** T▮▮ had no asymmetries of posture.

**Postural stability (standing and/or desk posture):** T▮▮ was observed to fall occasionally after performing jumping activities. He was not observed to trip or fall spontaneously. During tabletop activities, T▮▮ generally maintained an erect posture, although he was observed to lean down towards his paper.

**Advanced ambulation skills (hopping, skipping, jumping, running, crab walking):** T▮▮ was able to hop, skip, jump, run, and crab walk, all with good quality.

**Gait pattern observed (heel-toe pattern/functional):** No gait deviations were noted.

**Transitional movements:** T▮▮ was able to execute transitional movements with fair quality. As noted previously, T▮▮ fell during gross motor testing. His sitting balance during testing was adequate. T▮▮ was able to transition from sitting on the floor to standing without the use of his hands.

 T████

**Execution of novel tasks (motor planning):** T████ did not appear to have any significant issues with motor planning.

**Body awareness (right/left discrimination, position in space, etc.):** T████ was unable to consistently discriminate his right from his left. He appeared to have slightly decreased position in space sense.

**Visual tracking:** T████ was able to perform fairly smooth pursuits. When convergence was tested, T████'s left eye did not maintain focus on the object.

**Prehension patterns:**

- pencil – T████ held his pencil in his right hand with his middle digit on the shaft and his thumb in opposition. He held his index finger up in the air, not touching the pencil. Occasionally, T████ would place his index finger on the pencil, wrapped over his thumb.
- scissors – T████ held a pair of scissors in an adequate grasp, but omitted his index finger.

## FUNCTIONAL SKILLS WITHIN THE SCHOOL ENVIRONMENT

**Mobility (e.g. open doors, negotiate stairs and hallways):** T████ was independent in opening doors, and negotiating the stairs and hallways.

**Classroom independence (e.g. use of classroom materials, participation in program, managing personal belongings):** T████'s teacher reported that he is independent in the use of classroom materials. When in his special education class, he participates in class about 75% of the time, according to his teacher. She also reported that T████ has difficulty maintaining organization of his belongings, and is frequently unable to find things.

**School independence (e.g. lunchroom, bathroom, managing clothing):** T████'s teacher reported that he is independent in the lunchroom, bathroom, and in managing his clothing.

## WRITTEN OUTPUT

### Reading and Spelling Levels
T████ is reading and spelling at a first grade level, by teacher report.

### Writing alphabet and numbers from memory
T████ wrote the alphabet in upper case. His letters were legible and well formed. He did reverse the "J", but erased it and wrote it correctly. T████ also wrote the numbers 1 through 20. Again, they were legible and well formed.

### Copying pre-printed 9 word sentence and/or alphabet and number reproductions

- **pencil control:** T████ appeared to have adequate pencil control despite his unusual grasp.
- **size/proportion of letter and/or words:** T████'s letters were slightly large. His letter proportions were generally appropriate.

████ T████

- **letter formation/motor planning:** T████ used appropriate letter formation the majority of the time.
- **spacing/alignment:** T███ spaced his words somewhat close together, but the separate words could be discerned. T████ consistently aligned his letters and numbers on the baseline.
- **directionality/reversals:** T███ made one error in directionality, i.e. a cursive "q." He made one reversal, but as mentioned above he self corrected.
- **stabilization of written work:** T████ did not consistently stabilize his paper with his left hand.
- **speed:** T███ wrote somewhat slowly.

## Self-Initiated Sentence

T███ wrote the sentence; "I like friend." His writing was clear and legible.

## Classwork Sample

Four samples were analyzed. T███'s letter size was large, but for the most part legible. He aligned his letters on the baseline, and generally left adequate spaces. T███'s letter formation was adequate.

## ACCOMMODATIONS CURRENTLY IN PLACE

T███'s teachers provide repetition of directions, and verbal cues to remain focused.

## SUMMARY

| Strengths | Needs |
|---|---|
| Upper Limb Coordination | |
| Visual Perception | |

## CONCLUSION

T███ is an eight year, ███ month old boy attending Rosemont ES. He was cooperative with testing and appeared to do his best. On standardized subtests of gross and fine motor coordination, T████ scored within the average range. On standardized tests of visual motor integration and visual perception, T███ also scored within the average range. T███ did score in the below average range on one subtest measuring fine motor speed. This score, along with his slow writing speed during testing, would indicate that T███ might have difficulty completing written assignments on time. On Clinical Observation, T███ demonstrated decreased muscle strength in his back extensors and shoulders, which would correlate with difficulty maintaining erect desk posture. His mobility around the school was functional, however. He was observed to loose his balance only when jumping. On informal testing of his visual tracking, T███ appeared to have difficulty maintaining convergence. Further testing by a vision professional might be helpful. T███'s handwriting during testing was generally legible, with adequate proportions, letter formation, spacing, and alignment. His classwork samples were also acceptable. He does have an unusual pencil grasp, but he appears to be able to produce legible writing despite it. Based on these findings, it is felt that T███ has the motor and perceptual skills necessary to produce appropriate handwriting, but that his speed is slow. Use of a keyboard might be beneficial in increasing the speed of his written production.

 T

7

## RECOMMENDATION

Occupational Therapy is not indicated at this time.

1) Encourage heavy shoulder work for strength and stability, such as working out with weights, raking leaves, shoveling snow, carrying trash out, carrying groceries, setting the table, emptying the dishwasher, erasing and washing the blackboard, putting chairs up on desks.

2) Encourage back strengthening exercise, such as swimming and karate.

3) Train in keyboarding, and provide a keyboard for school use.

*Elizabeth M. English, OTR/L*

Elizabeth M. English, OTR/L
MCPS OT/PT Assessment Team

EME

Copy to:
Principal Rosemont ES
Classroom Teacher
Ms. English
Parents
OT/PT Confidential File

**SPEECH AND LANGUAGE PROGRAMS**
**Division of Programs and Services**
**Department of Special Education**
**Office of Instruction and Program Development**
**MONTGOMERY COUNTY PUBLIC SCHOOLS**
**Rockville, Maryland**

**REPORT OF SPEECH/LANGUAGE ASSESSMENT**

**STUDENT:** T███ ████████

**MCPS ID#:** 766481

**ADDRESS:**  7528 Mattingly Lane
Gaithersburg
Maryland 20879

**DATE OF BIRTH:** ███/92

**CHRONOLOGICAL AGE:** 9.█

**HOME PHONE:** 301-977-8678

**CURRENT GRADE:** 4

**CURRENT SCHOOL:** Judith A. Resnik E. S.

**DATE OF EVALUATION:** 1/8, 11/02, 2/26/02, 4/8, 9/02

**HOME SCHOOL:** Same

**DATE OF REPORT:** 4/12/02

**PRIMARY LANGUAGE:** English

**NAME OF EXAMINER:** Rhoda J. Stackhouse

---

**Authorization for this assessment was given on January 8, 2001 by Teresa Douglas and is on file.**

---

**PURPOSE OF ASSESSMENT:**

The purpose of this assessment is to reassess speech/language needs, review progress, and determine whether continued speech/language services are warranted.

**REASON FOR REFERRAL:**

The assessment is being completed as part of the standard three year re-evaluation of students in special education programs. T████ is being assessed reconfirm or deny the existence of a speech/language disability. Its impact on education, and the need for special education services.

**SIGNIFICANT BACKGROUND INFORMATION:**

T████ has attended Montgomery County Public Schools (MCPS) since September of 1996 when he entered Head Start at Strawberry Knoll Elementary School. In January of 1997, while at Strawberry Knoll, T████ was assessed by the speech/language pathologist. He was found to have a moderate articulation disorder and a severe language disability. His weaknesses were listed in the areas of vocabulary, concept development, auditory comprehension and verbal output. In September of 1997, he entered kindergarten at Rosemont Elementary School and remained there through the third grade. Educational background is somewhat spotty at that point. Apparently T████ attended Gaithersburg Elementary School for a few weeks prior to moving to D.C. with his dad for a period of time. He arrived

1

**TG6**

at Resnik Elementary School on December 20, 2001. It was at that point that I discovered how long over due T███ was for his triennial speech/language assessment. A psychological was completed at Rosemont in November of 2000. An educational assessment was completed in March of 2000 and an occupational therapy assessment was completed in April of 2001. No speech/language assessment was completed yet T████ had been coded 04 for several years.

T███ is the product of a normal pregnancy and delivery weighing 6 pound 13 ounces at birth. Developmental milestones were reached at age appropriate times. He does, however, have a history of frequent colds and ear infections.

T███ lives at home with his mother and younger brother and older sister.

**OBSERVATIONS:**

During the lengthy evaluation sessions, T███ was very cooperative and polite. Though he was somewhat shy initially, rapport was established quickly. Throughout the testing, he appeared to be doing his best demonstrating interest in the activities. In order to maintain attention throughout all the presented tasks, short breaks were built into our sessions. T███ was communicative and pleasant with me responding well to biographical questions.

**ASSESSMENT TECHNIQUES AND ANALYSIS:**

Formal and informal measures were used to assess speech and language skills. The evaluation material was used in a manner that was not racially or culturally biased, and was validated or chosen to provide relevant speech and language information. It is felt that the data obtained from this assessment is a valid reflection of T███'s current speech and language skills.

The **Test for Auditory Comprehension of Language - Revised** was used to measure comprehension of specific vocabulary, grammatical structures, and sentences of increasing complexity.
(Deviation Quotient Mean = 100 and Standard Deviation = 15)
(Subtest Standard Score = 10 and Standard Deviation = 3)

| Subtest | Standard Score | Percentile |
|---|---|---|
| Word Classes and Relations | 6 | 9th |
| Grammatical Morphemes | 8 | 25th |
| Elaborated Sentences | 7 | 16th |

T███'s performance indicates an auditory quotient of 81, which places him in the 10th percentile with an age equivalency of 7 years 4 months. At the time of testing, his chronological age was 9 years ▌ months. This indicates that T███'s auditory comprehension is 22 months below his chronological age, which is considered in the below average range.

Using the MCPS Severity Rating Scale, T███ scored as follows:
1. Understanding the literal and most common meaning of word classes such as nouns, verbs, adjectives, and adverbs was in the below average range.
2. Understanding the meaning of grammatical morphemes such as prepositions and pronouns was in the low average range.
3. Understanding the meaning of elaborated sentence constructions was in the below average range.

2

The **Receptive One-Word Picture Vocabulary Test** was administered to assess one word receptive vocabulary. (Mean = 100 and Standard Deviation = 15) T⬛achieved a standard score of 96 which places him in the 39th percentile with a stanine of 5. His age equivalency was 8 years 7 months. At the time of testing, his chronological age was 9 years ⬛ months. His performance indicates receptive vocabulary to be 8 months below his chronological age but still within the average range. Some of the vocabulary unfamiliar to him included:

| | | |
|---|---|---|
| faucet | shaggy | hazardous |
| distress | wreath | tame |
| inscription | enclose | checker |
| sob | competitive | feline |
| layers | stitching | empress |

Expressive one word vocabulary skills were measured using the **Expressive One Word Picture Vocabulary Test**. (Mean = 100 and Standard Deviation = 15) T⬛'s performance yielded a standard score of 78 (poor range), which places him in the 7th percentile with a stanine of 2. His age equivalency was 6 years 3 months. At the time of testing, T⬛'s chronological age was 9 years ⬛ months. His performance indicates expressive vocabulary to be 3⬛ months below his chronological age. Some of the vocabulary unfamiliar to him included:

| | | |
|---|---|---|
| raccoon | beverages | fireplace |
| furniture | cactus | statues |
| binoculars | stool | ostrich |
| United States | saddle | trumpet |
| wheelbarrow | percentage | windmill |

A **Speech Mechanism Examination** indicated a slight over and open bite. Eventually T⬛ may need orthodontia attention .

The **Weiss Comprehensive Articulation Test** was administered to provide diagnostic information relative to determining whether an articulation disorder was present and to identify the kinds of misarticulation patterns that may be present. T⬛'s speech contained the following substitutions and/or distortions:

[d] or [f] for voiceless [th]. Examples: thumb, birthday, and bath
[d] or [v] for voiced [th]. Examples: this, mother, and bathe
Unless he concentrates, T⬛ uses his upper teeth and lower lip for bilabials: [p], [b], and [m].
[s] and [z] need to be monitored. At times, T⬛ produces these with a lateral lisp quality. When he concentrates, the air flow exits through the center, rather than sides, of the mouth. His sibilant sounds are then correct.
[sh] for [ch]. Examples: chew, matches, and beach
[zh] for [j]. Examples: jump, pajamas, cage

Vocal quality, pitch, volume, fluency, and breath support were all within the normal limits.

Pragmatic skills (e.g. turn-taking, topic maintenance, willingness to communicate) were judged to be appropriate in a small group situation.

The **Test of Auditory-Perceptual Skills** was administered to evaluate T⬛'s skills in short-term auditory memory, auditory discrimination, interpretation of oral directions, and processing questions.

3

(Mean Composite Score = 100 and Standard Deviation = 15)
(Mean Subtest Score = 10 and Standard Deviation = 3)

| Subtest | Standard Score | Percentile Rank | Stanine |
|---|---|---|---|
| Auditory Number Memory | | | |
| Forward | 6 | 9 | 2 |
| Reversed | 8 | 25 | 4 |
| Auditory Sentence Memory | 6 | 9 | 2 |
| Auditory Word Memory | 7 | 16 | 3 |
| Auditory Interpretation of Directions | 8 | 25 | 4 |
| Auditory Word Discrimination | 14 | 91 | 8 |
| Auditory Processing | 9 | 37 | 4 |

T███'s auditory quotient on this test was 88 placing him in the 21st percentile.  To be within the average range, standard scores need to be between 7 and 13.  One of the subtests was within the above average range, that of auditory word discrimination.  T███ was asked to tell whether two presented words were the same or different.  Four other subtests were in the low average to average ranges.  These included repetition of digits in reversed order, repetition of words and directions and auditory processing (responding to "wh" questions.)  T███'s short term memory skills for digits in forward order and verbatim repetition of sentences were below average.

The **Language Processing Test-Revised** was administered to assess T███'s verbal reasoning skills.  Tasks included naming an associated word, identifying members of a given category, explaining how noun pairs were similar and different, identifying words with multiple meanings and describing attributes of given nouns.  (Mean = 100 and Standard Deviation = 15)

| Subtest | Standard Score | Percentile Rank |
|---|---|---|
| Associations | 108 | 66 |
| Categorization | 112 | 75 |
| Similarities | 98 | 35 |
| Differences | 100 | 38 |
| Multiple Meanings | 82 | 11 |
| Attributes | 108 | 71 |
| Total Test | 105 | 63 |

Scores on this test indicate language processing skills to be well within the average range in all areas with the exception of identifying words with multiple meanings.

**The Listening Test** was administered to assess T███'s ability to identify the main idea in stories heard, offer details, respond to conceptual questions, demonstrate verbal reasoning and comprehension skills.  (Mean = 100 and Standard Deviation = 15)

| Subtest | Standard Score | Percentile Rank |
|---|---|---|
| Main Idea | 76 | 8 |
| Details | 87 | 20 |
| Concepts | 61 | 1 |
| Reasoning | 81 | 12 |
| Story Comprehension | 93 | 25 |
| Total Test | 78 | 8 |

T███ responded well to questions about details in paragraphs read to him.  His story comprehension was in the

4

average range.   He struggled, however, with questions about the main idea, concepts, and verbal reasoning.

**The Token Test for Children** was administered to assess skills in following oral directions of increasing length and linguistic complexity using large and small colored squares and circles.  (Mean = 500 and Standard Deviation = 5)

| Subtest | Standard Score |
|---------|---------------|
| Part I | 501 |
| Part II | 502 |
| Part III | 503 |
| Part IV | 493 |
| Part V | 490 |
| Overall Score | 493 |

Average scores are within 495 and 505.  T████'s overall score of 493 places him in the second negative standard deviation range.  Three subtests were within the average range, but two subtests were significantly below average. Examples of some of the directions confusing to T████ included:

> Touch the small yellow circle and the large green square.
> Touch the small blue square and the small green circle.
> Put the white square behind the yellow circle.
> Put the green square away from the yellow square.
> Except for the green one, touch the circles.
> Together with the yellow circle, take the blue circle.

## SUMMARY AND RECOMMENDATIONS:

T████ was referred for a speech language assessment as part of the standard re-assessment every three years for students receiving special education services.

Strengths were noted in receptive vocabulary, responding to questions about details, story comprehension, simple one and two step directions, and auditory word discrimination.  T████ had no difficulty making associations, categorizing items, identifying similarities and differences, and giving attributes of presented nouns.

Weaknesses were noted in expressive vocabulary, identifying words with multiple meanings, and following directions with conditionals.  T████ had difficulty with short term auditory memory for repetition of digits, words, sentences and directions.  His thinking and reasoning skills were weak.  T████ had difficulty identifying the main idea in stories heard, and responding to conceptual questions.  There are also errors with articulation and grammar.

Using the MCPS Speech/Language Severity Rating Scale, T████ does meet the criteria as having a moderate to severe speech and language disability.

Based on classroom observations, teacher reports, and this evaluation, this speech and language disorder appears to impact T████'s communication and comprehension in the educational setting.  It is felt that he would benefit from speech/language services to address the following goals:

* Increase understanding of spoken language.
* Improve ability to state intended meanings.
* Increase use of appropriate sentence structures.
* Improve articulation.

5

It is recommended that the IEP Team consider direct speech/language support to meet T████'s needs in the least restrictive environment.  Program components should include direct pull-out, small group and individual sessions, consultations with teachers, specialists, and parents.

It has been my pleasure evaluating T████.  He appears to be a very caring, gentle, and thoughtful young student who tries hard to do his best.  Throughout the sessions, he was always curious, polite, and cooperative.  Given the support needed, I feel confident that many excellent gains can be made.

*Rhoda J. Stackhouse*

Rhoda J. Stackhouse, M.S., CCC., SLP
Speech-Language Pathologist
Montgomery County Public Schools

Copies:  Speech-Language File
         Confidential
         Parent

Office of Special Education and Student Services
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850

INDIVIDUALIZED EDUCATION PROGRAM
TEAM MEETING INFORMATION
CONFIDENTIAL

## PART I: IDENTIFYING INFORMATION

Student name ▊▊▊▊                    T▊▊▊                                          Current grade 9
                     Last                        First                    MI        Date of Birth ▊/▊/92    ID # 766481

Current special education program LAD                        Location Gaithersburg High School    Home school Gaithersburg High School

Meeting date 12 / 1 / 06

## PART II: MEETING INFORMATION

**A. Type of IEP team meeting**
- ☐ Screening
- ☐ Evaluation
- ☐ Transition discussion
- ☒ School

- ☐ IEP development/revision
- ☐ Periodic review
- ☒ ESY discussion
- ☐ Central office

- ☒ Annual review
- ☐ Re-evaluation planning

- ☐ Other

- ☐ Re-evaluation
- ☐ Manifestation determination

**B. Additional discussions**

**C. Meeting location**

**D. Participants in attendance**

| | NAME | | Other Participants/Positions : |
|---|---|---|---|
| 1. Parent | ▊▊▊▊ | 11. | Maria Curtis - guidance |
| 2. Student | ▊▊▊▊ | | |
| 3. General education teacher | Michelle Hayworth | | |
| 4. Special education teacher/service provider | Melanie Wilson | | |
| | Barbara Shamp, RISE | | |
| 5. MCPS representative | | | |
| 6. Occupational therapist | | | |
| 7. Physical therapist | | | |
| 8. School psychologist | Irene White | | |
| 9. Speech/language pathologist | | | |
| 10. Pupil personnel worker | | | |

**E. General**

1. "Parent" means ☒ parent ☐ legal guardian ☐ parent surrogate (a person appointed by the MCPS Superintendent of Schools to act in place of a parent of a child in the educational decision-making process).

2. ☐ Parent is not present, but on ___ / ___ / ___ he/she gave permission to proceed with the meeting. See student's confidential folder.

3. ☒ Ten days' written notice was provided.
   ☐ Less than ten days' written notice was provided because an expedited meeting is being held:
   ☐ to address disciplinary issues  ☐ to determine placement because the student is not currently receiving education services
   ☐ at parent request  ☐ to meet other urgent needs of the student to ensure the provision of FAPE

4. ☒ Parent was provided an annual copy of the procedural safeguards on 12/1/06

MCPS Form 336-40, Rev. 11/05                    DISTRIBUTION: COPY 1/Confidential Folder; COPY 2/Parent; COPY 3/Case Manager

TG7

Office of Student and Community Services
Department of Special Education
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850

**INDIVIDUALIZED EDUCATION PROGRAM**
**CONFIDENTIAL**

Page 1 of 2

**DIRECTIONS: Use this form for recording most recent assessment information.**

Student Name ▬▬▬▬     T▬▬     ▬▬     ID# ▬▬▬▬     Meeting Date 11 / / 06
Last          First          MI

**Part I: CURRENT ASSESSMENT INFORMATION:** Record the student's most recent assessment data. List data from psychological testing. Include results of the most recent standardized tests, curriculum-based assessments, vocational assessments, and Statewide assessments. For each area assessed, summarize strengths and areas of need. Summarize strengths and areas of need from all copies of MCPS *Teacher Referral/Reports* and include pertinent information from any functional behavioral assessment. Standard scores should be reported for standardized tests. (Use additional copies of page 1, if needed, and mark them 1A, 1B, etc., in the top right-hand corner.)

| EVALUATOR/ OBSERVER | DATE | DATA SOURCE AND SCORES/LEVELS OF PERFORMANCE | INDICATED STRENGTHS | INDICATED AREAS OF NEED |
|---|---|---|---|---|
| B. Ducas, SET | 11/06 | Reading (component in LAD English class): | | |
| | | I. Vocabulary quizzes (matching word w/ definition): | Acquiring new vocabulary | |
| | | C average | Analyzing Greek and Latin word parts | |
| | | II. Literature comprehension quizzes: | Able to make inferences in discussion of the literature | Factual recall of plot elements |
| | | E average | | Narrative comprehension Expository comprehension |
| | | "Be a Better Reader" Placement test: Below 4th grade level | | |
| | | Written language (component in LAD English class): Writing sample - BCR (character analysis) | Staying on topic Support for topic sentence | Mechanics |
| | | Grade of B (40/50) | | Writing complete sentences |

MCPS Form 336-51, Rev. 12/02     DISTRIBUTION: COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent     Page 1 of 14

**Office of Student and Community Services**
**Department of Special Education**
**MONTGOMERY COUNTY PUBLIC SCHOOLS**
Rockville, Maryland 20850

**INDIVIDUALIZED EDUCATION PROGRAM**
**CONFIDENTIAL**

Page 1 ___ b

**DIRECTIONS: Use this form for recording most recent assessment information.**

Student Name __Last__ / __First__ / __MI__   ID# __766481__   Meeting Date __12__ / __1__ / __06__

**Part I: CURRENT ASSESSMENT INFORMATION:** Record the student's most recent assessment data. List data from psychological testing. Include results of the most recent standardized tests, curriculum-based assessments, vocational assessments, and Statewide assessments. For each area assessed, summarize strengths and areas of need. Summarize strengths and areas of need from all copies of MCPS *Teacher Referral/Reports* and include pertinent information from any functional behavioral assessment. Standard scores should be reported for standardized tests. (Use additional copies of page 1, if needed, and mark them 1A, 1B, etc., in the top right-hand corner.)

| EVALUATOR/ OBSERVER | DATE | DATA SOURCE AND SCORES/LEVELS OF PERFORMANCE | INDICATED STRENGTHS | INDICATED AREAS OF NEED |
|---|---|---|---|---|
| M.Wilson Special Educator GHS | 11/06 | Read 180 Reading (LAD class)<br><br>Modified Reading Curriculum- Literacy skills (comprehension, spelling, speaking, listening)<br><br>8th Grade Reading MSA 361 (Basic)<br><br>Scholastic Reading Inventory (SRI)<br>Lexile of 290<br>This SRI was administered in 10/06 and indicates that T____ is reading at a 1st grade level.<br><br>Reading Zone Status<br>Level 1<br>Comprehension 5/5<br>Vocabulary 5/5<br><br>Word Zone<br>Assessment Score 89%<br><br>Spelling Zone<br>Assessment Score 73% | Motivation<br>Letter word identification<br>Decoding skills | written language skills<br>reading comprehension<br>reading fluency |

MCPS Form 336-51, Rev. 12/02          DISTRIBUTION: COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent          Page 1 of 14

Office of Student and Community Services
Department of Special Education
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850

INDIVIDUALIZED EDUCATION PROGRAM
CONFIDENTIAL

Page 1 __ c

**DIRECTIONS: Use this form for recording most assessment information.**

Student Name _____ T_____     MI     ID# __766481__     Meeting Date 12 / 1 / 06

Last          First

**Part I: CURRENT ASSESSMENT INFORMATION:** Record the student's most recent assessment data. List data from psychological testing. Include results of the most recent standardized tests, curriculum-based assessments, vocational assessments, and Statewide assessments. For each area assessed, summarize strengths and areas of need. Summarize strengths and areas of need from all copies of MCPS *Teacher Referral/Reports* and include pertinent information from any functional behavioral assessment. Standard scores should be reported for standardized tests. (Use additional copies of page 1, if needed, and mark them 1A, 1B, etc., in the top right-hand corner.)

| EVALUATOR/ OBSERVER | DATE | DATA SOURCE AND SCORES/LEVELS OF PERFORMANCE | INDICATED STRENGTHS | INDICATED AREAS OF NEED |
|---|---|---|---|---|
| M.Wilson Special Educator GHS | 11/06 | Math- MAPS (LAD class)<br><br>Modified curriculum based on MSA skills and Maryland Voluntary State curriculum<br><br>8th Grade MSA score<br>Math 240 (Basic)<br><br>T_____ was administered the Math Level Indicator Test on 11/29/06 and answered 34 questions correctly. The results are below:<br><br>Math grade equivalent score 5th grade. | Basic math facts<br>Solving word problems<br>Calculator use<br>Fractions, decimals, and percentages | Mathematical problem solving |

MCPS Form 336-51, Rev. 12/02          DISTRIBUTION: COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent

Page 1 of 14

**Office of Special Education and Student Services**
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850

**INDIVIDUALIZED EDUCATION PROGRAM**
CONFIDENTIAL

Student Name _____ T___ _____
                Last        First        MI

ID# 766481          Meeting Date 12 / 1 / 06

③ **PART II: ELIGIBILITY**

A. At least every 3 years or more frequently if conditions warrant and when considering dismissal from special education services prior to graduation, the IEP team must conduct a re-evaluation. If the team determines that a re-evaluation is needed, the team completes Part I of MCPS Form 336-35: *Re-evaluation Planning.* If re-evaluation is not needed, the IEP team proceeds with Part B (below).  ☐ Re-evaluation planning is needed  ☑ Re-evaluation planning is not needed at this time.

B. 1. EDUCATIONAL IMPACT: Explain how the student's disability affects his/her involvement and progress in the general curriculum. For a preschool child explain how the disability affects his/her participation in appropriate activities. Note: Not required for Developmental Delay (code 15):

T___'s language processing speed deficits impact his ability to acquire skills in reading, written language, and math and affects his ability to succeed in the

general education curriculum.

B. 2. ☑ The student needs special education (and related service) and **is eligible for special education.** Record disability code(s) on page 13 of MCPS Form 336-51: *Summary of IEP Decisions,* and continue with the IEP team meeting.

DISABILITY CODE(S): _04_

☐ The student no longer requires specialized instruction; dismiss from special education. Record on page 13 of MCPS Form 336-51: *Summary of IEP Decisions* and complete page 14 of MCPS Form 336-51: *Follow-Up.* Complete pages 3 and 4, Transition Services.

☐ The student will graduate/age out of school. Record on page 13 of MCPS Form 336-51: *Summary of IEP Team Decisions* and complete page 14 of MCPS Form 336-51: *Follow-Up.* Complete pages 3 and 4, Transition Services.

④ **Part III: PARENT INFORMATION**

A. Document parent input for enhancing the student's education for purposes of the IEP team's consideration.

B. Identify any documents provided by the parent and considered at the meeting.

⑤ **PART IV: PROGRESS ON IEP GOALS AND OBJECTIVES/BENCHMARKS:**

**Directions:** ☐ The IEP team discusses and records the student's progress on current IEP goals and objectives.

NOTE: After this form is completed and discussed at the IEP team meeting, complete pages 3 and 4 of MCPS Form 336-51: *Transition Services,* for all students who will turn at least age 14 during this IEP cycle, IEPs for all other students continue on page 5 of MCPS Form 336-51.

MCPS Form 336-51, Rev. 12/05          DISTRIBUTION: COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent          Page 2 of 14

Office of Special Education and Student Services
Department of MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850

**INDIVIDUALIZED EDUCATION PROGRAM**
**TRANSITION SERVICES**
*CONFIDENTIAL*

Student Name _____ Last _____ First _____ MI

Date of birth __/__/92  ID# 766481   Meeting Date 12 / 1 / 06

Is the student present? ☑ Yes ☐ No    If "No," who is representing his/her preferences and interests at the IEP team meeting?

Name _____   Position _____

☐ Upon reaching age 17, the student was informed of the postsecondary school outcomes being considered at the present time.

**PART I: OUTCOME-ORIENTED CONSIDERATIONS: Check any postsecondary school outcomes being considered at the present time.**

| | |
|---|---|
| ☑ Postsecondary Education | University, college, community/junior college, vocational school, technical institute, hospital school of nursing, or other program leading to a degree or career certification. |
| ☑ Vocational Training | Specific set of activities that enable a person to acquire the skills necessary to obtain and keep employment. |
| ☑ Integrated Employment | Full or part time competitive employment in the open labor market with competitive wages and responsibilities. Includes supported employment provisions for technical assistance or other services (e.g., training, transportation, job coaching) necessary for individuals with disabilities to secure and sustain work. |
| ☐ Continuing and Adult Education | Instruction that is not college level. Includes, but is not limited to, vocational courses, parent education courses, personal growth and enrichment courses, preparation for GED, and ESOL instruction. |
| ☐ Adult Services | Postsecondary special services provided to individuals with disabilities after high school that enable the individual to work, live, and/or participate in the community. |
| ☐ Independent Living | Living options which include the services that enhance the ability of individuals with disabilities to live within their community. Options may include but are not limited to, living alone, living at home, or living with others. |

**PART II: SECONDARY TRANSITION SERVICE NEEDS AND ACTIVITIES: Check the special education transition services that the student will need during the next school year to achieve the postsecondary school outcomes identified in Part I. For students who will turn 16 during the duration of this IEP, include on page 5, annual postsecondary goals related to training, education, employment, and, where appropriate, independent living skills.**

| | |
|---|---|
| ☑ Instruction | Direct teaching by a special or general educator of specific academic or vocational skills that are identified in a course syllabus or on the student's IEP. |
| ☐ Related Services | Only if needed to benefit from transition services. |
| ☐ Community Experience | Direct teaching by a special or general educator of specific academic or vocational skills that are identified in a course syllabus or on the student's IEP that are conducted in an appropriate community setting. Preparation for the activity and follow-up must be provided for all instruction provided in a community setting. |
| ☐ Employment/Postschool Adult Living | Identification and development of specific skills included in a course syllabus or on the student's IEP that can enhance the opportunities to find gainful employment in a self-selected career when the student leaves the entitlement system and enters adult living. |
| ☐ Daily Living Skills | Identification and development of specific skills that can promote the highest level of independent functioning in a postschool environment. The diversity of skills required to maintain the highest level of independent functioning impacts on all areas of curriculum and service delivery. These skills may range from, but are not limited to, mathematics (budgeting) to self-help (dressing) and communication (taking or giving directions). |
| ☐ Functional Vocational Evaluation | Ongoing assessment of the student's interests, aptitudes, learning styles, and skills to enhance successful career development. |
| ☐ Other | |

MCPS Form 336-51, Rev. 1/05    DISTRIBUTION: COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent    Page 3 of 14

6

# MARYLAND DIPLOMA REQUIREMENTS

The State of Maryland authorizes one kind of diploma for all high school graduates, based upon successful fulfillment of the following five kinds of requirements: enrollment, credit, courses, Student Service Learning, and competencies. MCPS requirements are designated below with a double asterisk "**." All requirements are summarized below:

## Enrollment Requirement

Students must satisfactorily complete four years beyond Grade 8. (For exceptions, consult guidance office.)

## Credit Requirement

**22 (At least 4 credits must be earned after the completion of Grade 11 unless a preapproved MCPS alternative is satisfied.)

## Course Requirements

English – 4 credits

Fine Arts – 1 credit (Selected courses in Art, Dance, Drama/Theater, and Music that satisfy the Fine Arts requirement are marked with a dagger "†" in the 2003-2004 *High School Course Bulletin*.)

Technology Education – 1 credit (Courses in Industrial and Technology Education, Business Management and Finance, and Information Technology/Computer Science and Family and Consumer Sciences that satisfy the Technology Education requirement are marked with "#" in the 2003-2004 *High School Course Bulletin*.)

Mathematics – **4 credits (1 credit algebra, 1 credit geometry). Students who have successfully completed a calculus course offered by MCPS may be exempted from the 4-credit requirement in mathematics.

Science – 3 credits (one biology credit and one physical science credit must be included in the 3 credits).

Social Studies – 3 credits (1 credit U.S. History, 1 credit World History, and 1 credit National, State, and Local Government)

Physical Education – **1 credit

Health Education – ½ credit

## Additional Requirements

In addition to meeting the specific credit requirements, a student is required to earn at least one of the following:

a. Foreign Language – 2 credits or

b. Advanced Technology Education – 2 credits (Courses in Career and Technology Education and Information Technology/Computer Science that satisfy the Advanced Technology requirement are marked with "‖"), or

c. Career Development Program – successful completion of a state approved Career Development Program (Career Development Programs are marked with "+" in the 2003-2004 *High School Course Bulletin*).

## STUDENT SERVICE LEARNING REQUIREMENT

Maryland State Department of Education graduation requirements contain a student service learning (SSL) component. MCPS students are required to complete a minimum of 60 SSL hours. Middle school students complete 30 SSL hours through the infusion of service learning experiences in the middle school curriculum. The remaining 30 hours may be earned in middle or high school. New students enrolling in MCPS as second semester juniors are required to accumulate 15 SSL hours; those enrolling anytime during the senior year are required to complete 10 SSL hours. All documented SSL hours from any school system will be accepted toward the MCPS graduation requirement. Students who earn 260 or more SSL hours are eligible to receive a certificate of Meritorious Service.

Hours may be accumulated through the following:

**Curriculum** – Courses with service learning outcomes and activities are identified in the 2003-2004 *High School Course Bulletin*. Students may earn all, part, or none of the identified hours based upon evidence of attainment of the service learning outcomes for the course.

**Co-curricular** – A list of approved school activities and organizations that include SSL is available in schools.

**Community Organizations** –Students may complete SSL hours through activities offered by approved organizations outside the school setting and day. A listing of approved organizations is available to students in media centers, career centers, and guidance offices, from the SSL coordinator in each high school and on the Internet at *http:// www.montgomeryvolunteer.org*

**Special Student Service Activities** – A student must present a written proposal for approval to the school service learning committee before performing service learning activities not approved, as described above.

**Verification** of service is required for hours earned through co-curricular activities, community organizations, and special activities. For additional information, see the student service learning coordinator or guidance counselor at the home school.

## Competency Prerequisite Requirements

Competency prerequisites are part of the Maryland School Performance Program and involve the demonstration of competencies in several areas through program participation and by passing statewide competency tests. The competency tests required are reading, writing, mathematics, and citizenship. The citizenship test remains a requirement only for students who entered Grade 9 in school year 1996-1997.

Students are given their first chance to pass these tests at these levels: mathematics and reading, Grade 7; and writing, Grade 8. Students who do not pass are given assistance and are given further opportunities to pass the test.

Competency prerequisite requirements in the other competency areas – arts/physical education, survival, and the world of work – are met by all students through their participation in the instructional programs covering these areas.

Refer to the 2003-2004 *High School Course Bulletin* for information on Maryland High School Assessments and Maryland certificates.

**Office of Student and Community Services**
**Department of Special Education**
**MONTGOMERY COUNTY PUBLIC SCHOOLS**
**Rockville, Maryland 20850**

**INDIVIDUALIZED EDUCATION PROGRAM**
**TRANSITION SERVICES**

**CONFIDENTIAL**

Student Name ▸ _____  _____  ___
                    Last              First         MI

Date of Birth ▸ __/__/92   ID# _766481_   Meeting Date _12_/_1_/_06_

**Part III: ANTICIPATED POSTSECONDARY SERVICES:** Identify the student's projected exit day from school and exit category. Check the postsecondary transition services the student may need during the first year following his/her exit from school. See reverse for definitions. Eligibility criteria of the outside agencies will apply. Report annually to SEDS.

**A. STUDENT'S PROJECTED EXIT DATE:** _06_/_/_10_

**PROJECTED EXIT CATEGORY:** ☑ Maryland HS diploma  ☐ Maryland HS certificate at age 21  ☐ Maryland HS certificate prior to age 21

**B. POSTSECONDARY TRANSITION SERVICES:**

☐ **No Services Needed:** There are no General, Further Education/Training, Division of Rehabilitation, Development Disabilities Administration, and/or Mental Hygiene Administration service needs identified.

**General Postsecondary Services**
☐ Public Income Maintenance
☐ Transportation

**Further Education/Training**
☑ Continuing and Adult Education
☑ Higher Education Support Services
☑ Career School Support Services

**Division of Rehabilitation Services (DORS):** DORS provides short term funding to programs for individuals with disabilities found eligible to meet employment and independence goals. Provision of services is based on funding availability.

☑ Assessment and Evaluation
☐ Vocational Rehabilitation Counseling and Guidance
☐ Job Search, Placement Assistance and Follow-Up Services
☐ Medical Rehabilitation
☐ Vocational and Other Training Services
☐ Rehabilitation Technology Services
☐ Support Services

**Development Disabilities Administration (DDA):** DDA provides long term funding for individuals eligible for adult day, residential or support services for individuals with developmental disabilities, such as mental retardation, autism, and cerebral palsy to work and live as independently as possible in the community. Eligibility is based on priority, availability of needed services and funding, and acceptance by the agency of the client's application.

☐ Day Habilitation
☐ Community Residential Services
☐ Supported Employment
☐ Family and Individual Support Services
☐ Behavior/Support Services
☐ Community Supported Living Arrangements

**Mental Hygiene Administration (MHA):** MHA provides services through the Public Mental Health System. Individuals and families must meet eligibility criteria.

☐ Mental Health Evaluation and Treatment
☐ Psychiatric Rehabilitation Programs
☐ Residential Rehabilitation Programs
☐ Support Employment
☐ Respite Care

**Part IV:TRANSITION LINKAGES:** For students aged 16 years, or younger, if appropriate, list referrals/applications for postsecondary services and the person(s) responsible for the referrals.

Referral/Application Made to:

_DORS_

Person(s) Responsible for Referral:

_TST_

_____

_____

MCPS Form 336-51, Rev. 12/99    DISTRIBUTION: COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent    Page 4 of 14

# DEFINITIONS – POSTSECONDARY TRANSITION SERVICES

## GENERAL

Public Income Maintenance – Supplemental Security Income (SSI), Social Security Disability Income (SSDI), welfare, Medicaid, public health insurance, etc.

Transportation – Specialized transportation including paratransit.

## FURTHER EDUCATION/TRAINING

Continuing and Adult Education – Including Adult Basic Ed (ABE), General Education Development (GED), adult high school diploma and adult compensatory education.

Higher Education Support Services – Notetakers, educational technology, modified testing time, mentoring and guidance, study skills and self-advocacy training.

Career School Support Services – Support services in programs such as career schools, Job Training Partnership Act programs, Job Corps.

## DIVISION OF REHABILITATION SERVICES (DORS)

Assessment and Evaluation – Determine eligibility for services, types of services and vocational options. The process may include counselor observations, review of existing school, psychological, functional and vocational information, use of assistive technology devices and worksite assessments.

Vocational Rehabilitation Counseling and Guidance – Assists the individual with focusing on and identifying employment outcomes, taking into consideration the needs and individual choices of the individual with a disability.

Job Search, Placement Assistance and Follow-up Services – Provides job seeking skills, referral for specific jobs, job coaching, and coordination with other placement agencies for competitive employment placements (including supported employment) and the provision of post-employment services. Supported employment services are designed for students who require supports for the rest of their work lives and are coordinated with the Mental Hygiene Administration and/or the Developmental Disabilities Administration.

Medical Rehabilitation – Includes assistive devices, physical, occupational, speech or hearing therapy, psychological services, and other medically related services.

Vocational and Other Training Services – Coordination and provision of higher education, career and technology education training needs (including applications for financial aid and need for college support services); other training such as personal and vocational adjustment training needed to improve attitudes toward work, adjustment to recently acquired disability, and to strengthen work habits.

Rehabilitation Technology Services – Application of assistive technologies and rehabilitation engineering to reduce barriers posed by functional limitations in communication, vision, motor and/or cognitive skills. These services may include architectural, vehicle, communication and computer modification.

Support Services – Services individually designed to assist the individual to complete his or her rehabilitation program. These services may include resources for transportation expenses, maintenance expenses, personal assistance and services to family members.

## DEVELOPMENTAL DISABILITIES ADMINISTRATION (DDA)

Day Habilitation – Includes individuals participating in structured activities designed to increase or maintain motor skills; communication skills; personal hygiene; leisure abilities; and community integration. Services need to be available 6 hours per day (not including commuting time), 5 days a week, and 220 days per year.

Community Residential Services – Community residential models are designed to give preference to small and individualized settings. The Administration respects personal choice regarding decisions about where and with whom individuals with developmental disabilities may live. Current community residential service models include: alternative living units (ALU), group homes and individual family care homes.

Supported Employment – Individuals seeking to obtain and maintain work in the community are free to choose preferred types of work. Supported employment includes: individuals working in community businesses for pay with licensee funded supports or any work program that includes training necessary for the individual to achieve the desired outcomes established in the Individual Plan. Note: initial job coaching funded by DORS.

Family and Individual Support Services – Array of services to individuals and their families residing in the community.

Behavioral/Support Services – Designed to assist individuals who exhibit challenging behaviors in acquiring skills, gaining social acceptance, and becoming full participants in the community. Services include: behavioral consultation, temporary augmentation of staff, training and respite services.

Community Supported Living Arrangements (CSLA) – Services to assist an individual in nonvocational activities to enable the individual to live in his/her own home, apartment, family home, or rental unit with no more than 2 other nonrelated CSLA clients, including personal assistance services, supports for community participation and self determination, 24 hour emergency assistance, assistive technology, resource coordination, environmental modifications, respite services. (Do not include both this and "Community Residential Services.")

## MENTAL HEALTH SERVICES

Mental Health Evaluation and Treatment – Provided in wide variety of settings by approved providers such as individual practitioners, group practices, outpatient mental health centers, mobile treatment, partial hospitalization, psychiatric hospitalization and other specialized services. Diverse treatments include medication management and family, group and individual therapy.

Psychiatric Rehabilitation Programs – Rehabilitation and support to develop and enhance community and independent living skills provided in variety of settings.

Residential Rehabilitation Programs – Residential services for individuals with mental illness; rehabilitation services provided in the residence.

Supported Employment – Vocational assessment, referral and vocational counseling, competitive employment with intensive job coaching, and extended support and counseling. Note: initial job coaching may be funded by DORS.

Respite Care – Temporary alternative living situation to provide temporary relief to care giver from the responsibility of care and support.

Office of Special Education and Student Services
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850

INDIVIDUALIZED EDUCATION PROGRAM
INSTRUCTIONAL GOALS AND OBJECTIVES
CONFIDENTIAL

Page 5 a

Student Name _____    T_____    ID# 766481    MI    Meeting Date 12 / 1 / 06

Last    First

**PART I: INSTRUCTIONAL AREA** Reading Comprehension
(Refer to MCPS Form 336-51, page 1, for present levels of academic achievement and functional performance.)

**Part II: ANNUAL GOAL:** Identify one annual goal per page that the student can reasonably be expected to accomplish within one school year 2006 through 2007
*Note.* The goals and objectives/benchmarks are considered draft recommendations until approved.

**GOAL** (as measured by the following short-term objectives. T____will read to acquire personal insights, gain information, and derive pleasure.

**PART III: SHORT-TERM OBJECTIVES/BENCHMARKS:** Describe what the student is expected to accomplish, under what circumstances, to what level of mastery, and the procedure for evaluating achievement. (Use additional copies of page 5, if needed, and mark them 5A, 5B, etc., in the top right-hand corner.)

| | PROGRESS (Indicate date and code) | | | |
|---|---|---|---|---|
| | Q1 | Q2 | Q3 | Q4 |
| | | | | |

1. Given an anchor text, T____will discern the main idea of the story with 70% comprehension as measured by teacher made comprehension quizzes.

2. Given a peer collaboration session, T____will analyze at least three literary characters from the anchor text with 80% accuracy as indicated by a teacher checklist.

3. Given a reading passage, T____will summarize information gleaned in a paragraph with 80% accuracy as measured by a grading rubric.

Service provider(s) General and Special Educators

**PROGRESS CODES:** Progress toward each annual goal is measured by the attainment of evaluation criteria for specific short-term objectives under that goal. Each marking period parents will be notified in writing concerning progress on annual IEP goals. CODES: 4=Achieved; 3=Making sufficient progress to meet goal; 2=Not making sufficient progress to meet the goal; 1=Goal not addressed during this reporting period.

MCPS Form 336-51, Rev. 12/05          DISTRIBUTION: COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent          Page 5 of 14

INDIVIDUALIZED EDUCATION PROGRAM
INSTRUCTIONAL GOALS AND OBJECTIVES
CONFIDENTIAL

Office of Special Education and Student Services
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850

Page 5   b

Student Name _____    T_____    ID# _766481_    Meeting Date _12_/_1_/_06_
              Last              First        All

**PART I: INSTRUCTIONAL AREA** _Writing_
(Refer to MCPS Form 336-51, page 1, for present levels of academic achievement and functional performance.)

**Part II: ANNUAL GOAL:** Identify one annual goal per page that the student can reasonably be expected to accomplish within one school year _2006_ through _2007_
*Note:* The goals and objectives/benchmarks are considered draft recommendations until approved.

**GOAL** (as measured by the following short-term objectives. T___ will use writing to inform, persuade, and express personal ideas.

**PART III: SHORT-TERM OBJECTIVES/BENCHMARKS:** Describe what the student is expected to accomplish, under what circumstances, to what level of mastery, and the procedure for evaluating achievement. (Use additional copies of page 5, if needed, and mark them 5A, 5B, etc., in the top right-hand corner.)

1. Given a writing assignment, T___ will use a pre-writing strategy such as a web, outline, or list to organize writing 100% of the time as measured by teacher observation and assignment grades.

2. Given the pre-writing organizer, T___ will write a rough draft that includes an introduction, a body, and a conclusion 100% of the time as measured by teacher observation and assignment grades.

3. Given the edited draft, T___ will make all corrections with 75% accuracy as measured by teacher observation and assignment grades.

| PROGRESS (Indicate date and code) | | | |
|---|---|---|---|
| Q1 | Q2 | Q3 | Q4 |
| | | | |
| | | | |

Service provider(s) ___General and Special Educators___

**PROGRESS CODES:** Progress toward each annual goal is measured by the attainment of evaluation criteria for specific short-term objectives under that goal. Each marking period parents will be notified in writing concerning progress on annual IEP goals. **CODES: 4**=Achieved; **3**=Making sufficient progress to meet goal; **2**=Not making sufficient progress to meet the goal; **1**=Goal not addressed during this reporting period.

MCPS Form 336-51, Rev. 12/05

DISTRIBUTION: COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent

Page 5 of 14

Office of Special Education and Student Services
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850

INDIVIDUALIZED EDUCATION PROGRAM
INSTRUCTIONAL GOALS AND OBJECTIVES
CONFIDENTIAL

Page 5 c

Student Name _____    ID# 766481    Meeting Date 12 / 1 / 06
             Last            First       MI

**PART I: INSTRUCTIONAL AREA** Education
(Refer to MCPS Form 336-51, page 1, for present levels of academic achievement and functional performance.)

**Part II: ANNUAL GOAL:** Identify one annual goal per page that the student can reasonably be expected to accomplish within one school year ____2006____ through ____2007____
*Note:* The goals and objectives/benchmarks are considered draft recommendations until approved.

**GOAL** (as measured by the following short-term objectives). T___ will demonstrate an understanding of his strengths/needs and interests.

**PART III: SHORT-TERM OBJECTIVES/BENCHMARKS:** Describe what the student is expected to accomplish, under what circumstances, to what level of mastery, and the procedure for evaluating achievement. (Use additional copies of page 5, if needed, and mark them 5A, 5B, etc., in the top right-hand corner.)

1. T___ will identify program completer options that relates to his personal needs and interest as measured by Transition Support Teacher worksheet and/or participation in transition planning.

2. T___ will identify personal strengths and needs through the completion of a self-advocacy letter and/or participation in transition planning.

| PROGRESS (Indicate date and code) | | | |
|---|---|---|---|
| Q1 | Q2 | Q3 | Q4 |
|  |  |  |  |

Service provider(s) Transition Support Teacher and Special educator

**PROGRESS CODES:** Progress toward each annual goal is measured by the attainment of evaluation criteria for specific short-term objectives under that goal. Each marking period parents will be notified in writing concerning progress on annual IEP goals. **CODES: 4**=Achieved; **3**=Making sufficient progress to meet goal; **2**=Not making sufficient progress to meet the goal; **1**=Goal not addressed during this reporting period.

MCPS Form 336-51, Rev. 12/05          DISTRIBUTION: COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent          Page 5 of 14

**Office of Special Education and Student Services**
**MONTGOMERY COUNTY PUBLIC SCHOOLS**
Rockville, Maryland 20850

**INDIVIDUALIZED EDUCATION PROGRAM**
**INSTRUCTIONAL GOALS AND OBJECTIVES**
**CONFIDENTIAL**

Page 5 of __d__

Student Name ▬▬▬▬  ▬▬▬▬  ▬▬▬▬    ID# __766481__    Meeting Date __12__ / __1__ / __06__
                Last            First            MI

(7)

**PART I: INSTRUCTIONAL AREA** Social/Emotional (organization)
(Refer to MCPS Form 336-51, page 1, for present levels of academic achievement and functional performance.)

**Part II: ANNUAL GOAL:** Identify one annual goal per page that the student can reasonably be expected to accomplish within one school year __2006__ through __2007__
*Note:* The goals and objectives/benchmarks are considered draft recommendations until approved.

**GOAL** (as measured by the following short-term objectives: ▬▬▬ will demonstrate knowledge of strategies for organizing school tasks.

**PART III: SHORT-TERM OBJECTIVES/BENCHMARKS:** Describe what the student is expected to accomplish, under what circumstances, to what level of mastery, and the procedure for evaluating achievement. (Use additional copies of page 5, if needed, and mark them 5A, 5B, etc., in the top right-hand corner.)

| PROGRESS (indicate date and code) | | | |
|---|---|---|---|
| Q1 | Q2 | Q3 | Q4 |
| | | | |

1. Using a lesson/assignment notebook, ▬▬▬ will record assignments, homework, due dates, and completion dates for all school subjects daily 90% of the time as measured by teacher observation and passing report card grades.

2. Given the weekly assignment load and graphic organizers, ▬▬▬ will set priorities, estimate task completion time, seek assistance from teachers or peers as needed, self-monitor progress, and maintain work effort as evidenced by 90% task completion rate.

Service provider(s) __General and Special Educators__

**PROGRESS CODES:** Progress toward each annual goal is measured by the attainment of evaluation criteria for specific short-term objectives under that goal. Each marking period parents will be notified in writing concerning progress on annual IEP goals. CODES: 4=Achieved; 3=Making sufficient progress to meet goal; 2=Not making sufficient progress to meet the goal; 1=Goal not addressed during this reporting period.

MCPS Form 336-51, Rev. 12/05            DISTRIBUTION: COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent            Page 5 of 14

Office of Special Education and Student Services
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850

INDIVIDUALIZED EDUCATION PROGRAM
INSTRUCTIONAL GOALS AND OBJECTIVES
CONFIDENTIAL

Page 5 の

Student Name _____    T◖_____    ID# 766481    Meeting Date 12 / 1 / 06
                Last              First      MI

**PART I: INSTRUCTIONAL AREA** Math/Prealgebra
(Refer to MCPS Form 336-51, page 1, for present levels of academic achievement and functional performance.)

**Part II: ANNUAL GOAL:** Identify one annual goal per page that the student can reasonably be expected to accomplish within one school year ___2006___ through ___2007___
*Note:* The goals and objectives/benchmarks are considered draft recommendations until approved.

**GOAL (as measured by the following short-term objectives:** T◖ will demonstrate a knowledge of the concepts and skills of prealgebra.

**PART III: SHORT-TERM OBJECTIVES/BENCHMARKS:** Describe what the student is expected to accomplish, under what circumstances, to what level of mastery, and the procedure for evaluating achievement. (Use additional copies of page 5, if needed, and mark them 5A, 5B, etc., in the top right-hand corner.)

| | PROGRESS (Indicate date and code) | | |
|---|---|---|---|
| Q1 | Q2 | Q3 | Q4 |
| | | | |

1. Given a variety of word problems, T◖ will solve these problems by writing one and/or step equations using one variable with 75% accuracy as measured by class assignments.

2. Given different sets of data, T◖ will solve equations requiring the use of distributive property, combining like terms, and variables on both sides of the equation with 75% accuracy as measured by class grades.

3. Given different sets of data, T◖ will organize this data to find mean, median, mode, and range with 75% accuracy as measured by class grades.

Service provider(s) _General and Special Educators_

**PROGRESS CODES:** Progress toward each annual goal is measured by the attainment of evaluation criteria for specific short-term objectives under that goal. Each marking period parents will be notified in writing concerning progress on annual IEP goals. **CODES: 4**=Achieved; **3**=Making sufficient progress to meet goal; **2**=Not making sufficient progress to meet the goal; **1**=Goal not addressed during this reporting period.

MCPS Form 336-51, Rev. 12/05        DISTRIBUTION: COPY 1/Students Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent        Page 5 of 14

**INDIVIDUALIZED EDUCATION PROGRAM**
**INSTRUCTIONAL GOALS AND OBJECTIVES**
**CONFIDENTIAL**

Office of Special Education and Student Services
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850

Page 5 ⸢

Student Name _____ _____ _____    ID# 766481    Meeting Date 12 / 1 / 06
                    Last              First              MI

**PART I: INSTRUCTIONAL AREA** Math/Algebra
(Refer to MCPS Form 336-51, page 1, for present levels of academic achievement and functional performance.)

**Part II: ANNUAL GOAL:** Identify one annual goal per page that the student can reasonably be expected to accomplish within one school year  2006  through  2007
*Note:* The goals and objectives/benchmarks are considered draft recommendations until approved.

**GOAL** (as measured by the following short-term objectives: T_____ will demonstrate a knowledge of the concepts and skills of Algebra.

**PART III: SHORT-TERM OBJECTIVES/BENCHMARKS:** Describe what the student is expected to accomplish, under what circumstances, to what level of mastery, and the procedure for evaluating achievement. (Use additional copies of page 5, if needed, and mark them 5A, 5B, etc., in the top right-hand corner.)

1. Given a variety of word problems, T_____ will solve these problems by writing multistep equations using one or more variables with 75% accuracy as indicated by class grades.

2. Given a problem worksheet, T_____ will solve linear systems of equations using graphing, addition method, and/or substitution with 75% accuracy as indicated by class grades.

3. Given a problem worksheet, T_____ will simplify polynomials requiring the use of distributive property, combining like terms and having variables on both sides of the equations with 75% accuracy as measured by class grades.

| PROGRESS (Indicate date and code) | | | | | | | |
|---|---|---|---|---|---|---|---|
| Q1 | | Q2 | | Q3 | | Q4 | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Service provider(s)  General and Special Educators

**PROGRESS CODES:** Progress toward each annual goal is measured by the attainment of evaluation criteria for specific short-term objectives under that goal. Each marking period parents will be notified in writing concerning progress on annual IEP goals. CODES: 4=Achieved; 3=Making sufficient progress to meet goal; 2=Not making sufficient progress to meet the goal; 1=Goal not addressed during this reporting period.

**DISTRIBUTION:** COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent

MCPS Form 336-51, Rev. 12/05                                                    Page 5 of 14

**Office of Special Education Student and Services**
**MONTGOMERY COUNTY PUBLIC SCHOOLS**
Rockville, Maryland 20850

**INDIVIDUALIZED EDUCATION PROGRAM**

*CONFIDENTIAL*

Student Name ~~Last~~    ~~First~~    T■    ID# 766481    MI    Meeting Date 12 / 1 / 06

**PART 1: SUPPLEMENTARY AIDS AND SERVICES. Directions:** Based on the student's unique needs and IEP goals and objectives, the following supplementary aids and services are to be provided to the student or on behalf of the student. (See reverse for directions.) (Note: Page 6 is followed by 6A.)

| SUPPLEMENTARY AIDS AND SERVICES | ANTICIPATED FREQUENCY/RECOMMENDED USE |
|---|---|
| **A. Provide instructional accommodations and modifications by:** <br> - reduced complexity of language in reading and writing assignments <br> - paraphrasing of reading passages <br> - guided questioning to generate responses in reading <br> - repeat/rephrase directions <br> - reduced amount of reading and writing assignments <br> - provide copies of teacher notes <br> ☐ Not required | T■ requires these instructional accommodations for all reading and writing assignments. <br><br> *-need to read passages in the curriculum areas to Terrell* |
| **B. Adapt materials by:** <br> Provide examples of finished models <br><br><br> ☐ Not required | Adapt materials for all writing and math assignments. |
| **C. Provide environmental/physical adaptations by:** <br> T■ needs to be seated away from distractions <br><br><br> ☐ Not required | Seat T■ away from distractions during classroom instruction and for all tests and quizzes. |
| **D. Modify assignments by:** <br> Allow extended time to complete reading and written assignments <br> Partial mastery of essential objectives in a modified curriculum in Reading <br><br> ☐ Not required | Modify assignments for all tasks that require large amounts of reading and written language. |

MCPS Form 336-51, Rev. 12/05    DISTRIBUTION: COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent

Page 6 of 14

Office of Special Education Student and Services
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850

INDIVIDUALIZED EDUCATION PROGRAM
CONFIDENTIAL

Student Name _____ T____ _____
              Last        First        MI

ID# 766481    Meeting Date 12 / 1 / 06

**PART I (Continuation):    SUPPLEMENTARY AIDS AND SERVICES TO BE PROVIDED TO THE STUDENT OR
ON BEHALF OF THE STUDENT (Note: Page 6A is followed by page 7.)**

| | ANTICIPATED FREQUENCY/ RECOMMENDED USE |
|---|---|
| **E.** Consider any unique communication needs, including the need for assistive technology (AT): | |
| ☑ AT devices or services or other communication services are required (specify) Calculator _____ | |
| ☐ Trial AT devices or services are recommended (specify) _____ | |
| ☐ Considered but not required | |
| **F.** Manage behavior by: | |
| ☐ Conducting a functional behavioral assessment to be completed by ___/___/___ | |
| ☐ Developing a behavioral intervention plan to be completed by ___/___/___ | |
| ☐ Continuing implementation of current behavioral intervention plan | |
| ☐ Identifying IEP goals and objectives | |
| ☐ Other _____ | |
| ☑ Not required | |
| **G.** Provide alternative communication systems for students who are blind or visually impaired or deaf or hard of hearing. | |
| ☐ Braille (attach MCPS Form 336-82) | |
| ☐ Sign language | |
| ☐ Cued speech | |
| ☐ Auditory/oral | |
| ☐ Large print | |
| ☐ Other _____ | |
| ☑ Not required | |
| **H.** Provide English language learner support by: _____ | |
| ☑ Not required | |
| **I.** Provide support for school personnel by: | |
| ☐ Conducting staff training _____ | |
| ☐ Providing consultation _____ | |
| ☐ Other, e.g., mentoring, co-teaching _____ | |
| ☑ Not required | |

MCPS Form 336-51, Rev. 1/05

DISTRIBUTION: COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent

Page 6A of 14

| Office of Special Education and Student Services<br>MONTGOMERY COUNTY PUBLIC SCHOOLS<br>Rockville, Maryland 20850 | TESTING ACCOMMODATIONS |
|---|---|

Student's Name ▆▆▆▆     T▆▆▆     ▆▆▆▆     I.D. # 766481     Meeting Date 12 / 1 / 06
    Last    First    MI

**PART I (continuation) Supplementary Aids and Services to Be Provided to the Student or on Behalf of the Student**

J. **Test Accommodations.** The identified test accommodations must align with the student's specific areas of need and educational impact documented at the most recent IEP team meeting and identified in Sections A to I of this Part. Check the appropriate boxes below. (Note: The MSDE codes listed to the left of the accommodations (e.g., 1-A) are to be entered into the mainframe.) (*Note:* Page 7 is followed by page 7A.)

### 1. PRESENTATION ACCOMMODATIONS

| | |
|---|---|
| ☐ 1-A Large print | ☐ 1-K Recorded books |
| ☐ 1-B Magnification devices | ☐ 1-L Video tape and descriptive video |
| ☐ 1-C Sign language | ☐ 1-M Screen reader for verbatim reading of entire test |
| ☐ 1-D Braille | ☐ 1-N Screen reader for verbatim reading of selected sections of test |
| ☐ 1-E Tactile graphics | |
| ☑ 1-F Human reader, audio tape, or compact disk recording for verbatim reading of entire test | ☐ 1-O Visual cues |
| | ☐ 1-P Notes, outlines, and instructions |
| ☑ 1-G Human reader, audio tape, or compact disk recording for verbatim reading of selected sections of test | ☐ 1-Q Talking materials |
| | ☐ 1-R Other presentation accommodations determined on a case-by-case basis in consultation with MSDE |
| ☐ 1-H Audio amplification devices | |
| ☐ 1-J* Books on Tape | Explain _____ |
| ☐  None required (no code) | _____ |
| *1-I omitted | _____ |

### 2. RESPONSE ACCOMMODATIONS

| | |
|---|---|
| ☐ 2-A Scribe | ☑ 2-J* Calculation devices |
| ☐ 2-B Speech-to-text | ☐ 2-K Spelling and grammar devices |
| ☐ 2-C Large print response booklet | ☐ 2-L Visual organizers |
| ☐ 2-D Brailler | ☐ 2-M Graphic organizers |
| ☐ 2-E Electronic note-takers, word processors, or augmented communication devices | ☐ 2-N Bilingual dictionaries |
| | ☐ 2-O Other response accommodations determined on a case-by-case basis in consultation with MSDE |
| ☐ 2-F Tape recorder | |
| ☐ 2-G Respond on test booklet | Explain _____ |
| ☐ 2-H Monitor test response | _____ |
| ☐  None required (no code) | _____ |
| *2-I omitted | _____ |

### 3. TIMING AND SCHEDULING ACCOMMODATIONS

| | |
|---|---|
| ☑ 3-A Extended time | ☐ 3-E Other timing and scheduling accommodations determined on a case-by-case basis in consultation with MSDE |
| ☐ 3-B Multiple or frequent breaks | |
| ☐ 3-C Change schedule or order of activities—Extend over multiple days | Explain _____ |
| ☐ 3-D Change schedule or order of activities—Within one day | _____ |
| ☐  None required (no code) | _____ |

### 4. SETTING ACCOMMODATIONS

| | |
|---|---|
| ☑ 4-A Reduce distractions to the student | ☐ 4-E Other setting accommodations determined on a case-by-case basis in consultation with MSDE |
| ☐ 4-B Reduce distractions to other students | |
| ☐ 4-C Change location to increase physical access or to use special equipment—Within school building | Explain _____ |
| ☐ 4-D Change location to increase physical access or to use special equipment—Outside school building | _____ |
| ☐  None required (no code) | _____ |

MCPS Form 336-51, Rev. 2/06            7 of 14

**Office of Special Education and Student Services**
**MONTGOMERY COUNTY PUBLIC SCHOOLS**
Rockville, Maryland 20850

**INDIVIDUALIZED EDUCATION PROGRAM**
**CONFIDENTIAL**

Student name ▮▮▮▮▮▮ _____ ▮▮▮▮▮▮ _____
  Last                                    First              MI

ID# 766481        Meeting date 12 / 1 / 06

**Part II: NONPARTICIPATION WITH NONDISABLED PEERS**

⑨ A. **Academic Activities, Meals, and Recess:** Given the recommended supplementary aids and services (pages 6-7), identify the percentage of time in which the student will not participate with nondisabled peers in the general education environment. Refer to the chart on the reverse 77 1/62 % If full participation is not possible, explain why:

  ▮▮▮▮'s language processing ▮▮ : ▮ deficits require the needs of special education services in order for him to be successful in the general education curriculum.
  _____
  _____

B. **General School and Extracurricular Activities:** Given the recommended supplementary aids and services (pages 6-7), can the student participate with nondisabled peers in:

  General school activities?  ☑ Yes  ☐ No. Explain why: _____
  Extracurricular activities?  ☑ Yes  ☐ No. Explain why: _____

C. **Participation in County and State Assessments**

| COUNTY ASSESSMENTS | STATE ASSESSMENTS |
| --- | --- |
| ☐ MCPS Assessment Program (MCPSAP) | ☐ Maryland School Assessment (MSA) |
| ☐ TerraNova (2nd ed.) | ☐ Alternate Maryland School Assessment (Alt-MSA)* |
| ▮▮▮▮▮▮ | ☐ Maryland Model of School Readiness (MMSR) for Kindergarten students only) |
|  | ☑ Modified Maryland School Assessment (Mod-MSA)* *high* |
|  | ☐ Maryland High School Assessment (HSA) |

*Requires an explanation of why the particular assessment is appropriate for the student

⑩ **Part III: RECOMMENDED SPECIAL EDUCATION AND RELATED SERVICES.** Based on the student's unique needs and present levels of performance, the following specially designed instruction and related services are recommended. NOTE: For elementary students, total hours for A and B may not exceed 30 hours.

A. **Primary Special Education Services:** Check only one:       **ANTICIPATED FREQUENCY**

  ☑ Classroom instruction in the following subject areas: *Spring '07 Eng 9A(SE), 15 Unit(SE)* ☐ Preschool/Elementary Student ____ hours per week.
  *Applied Sci (SE), Reading (SE), Internship (SE) + Entv-07(SE) At the* ☐ Secondary Student ____ periods per week OR ____ hours per week OR
  ☐ Speech/language services   OR  ☐ Adaptive PE   OR   ☐ Travel training *Earth 9B (SE) Reading (SE)* ☐ ____ periods per day OR 6/5 blocks per day

B. **Related Services To Support Instruction:**

| SERVICE | ANTICIPATED FREQUENCY |
| --- | --- |
| ☑ Speech/language services | 45 min, 3 times per month |
| ☐ Occupational therapy | |
| ☐ Physical therapy | |
| ☐ Other | |
| ☐ Other | |
| ☐ School health services | As per Individual Health Care Plan |
| ☐ None required | |

MCPS Form 336-51, Rev. 12/05          DISTRIBUTION: COPY 1/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent          Page B of 14

## PERCENTAGE OF TIME THE STUDENT WILL NOT PARTICIPATE IN GENERAL EDUCATION:

| Hours/Week | % Per Week | Hours/Week | % Per Week | Hours/Week | % Per Week | Hours/Week | % Per Week | Hours/Week | % Per Week | Hours/Week | % Per Week | Hours/Week | % Per Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0.5 | 2 (1.67) | 8.5 | 28 | 12.5 | 42 | 16.5 | 55 | 20.5 | 68 | 24.5 | 82 | 28.5 | 95 |
| 1.0 | 3 | 9.0 | 30 | 13.0 | 43 | 17.0 | 57 | 21.0 | 70 | 25.0 | 83 | 29.0 | 97 |
| 1.5 | 5 | 9.5 | 32 | 13.5 | 45 | 17.5 | 58 | 21.5 | 72 | 25.5 | 85 | 29.5 | 99 |
| 2.0 | 7 | 10.0 | 33 | 14.0 | 47 | 18.0 | 60 | 22.0 | 73 | 26.0 | 87 | 30.0 | 100 |
| 2.5 | 8 | 10.5 | 35 | 14.5 | 48 | 18.5 | 62 | 22.5 | 75 | 26.5 | 89 | | |
| 3.0 | 10 | 11.0 | 37 | 15.0 | 50 | 19.0 | 63 | 23.0 | 77 | 27.0 | 90 | | |
| 3.5 | 12 | 11.5 | 38 | 15.5 | 52 | 19.5 | 65 | 23.5 | 78 | 27.5 | 92 | | |
| 4.0 | 13 | 12.0 | 40 | 16.0 | 53 | 20.0 | 67 | 24.0 | 80 | 28.0 | 94 | | |

Percent of Time for Seven-Period Day:  1=14%  2=29%  3=42%  4=57%  5=71%  6=85%  7=100%

Percent of Time for Eight-Period Day:  1=12.5%  2=25%  3=37.5%  4=50%  5=62.5%  6=75%  7=87.5%  8=100%

## PRIMARY SPECIAL EDUCATION SERVICES:

**TYPES: Identify one only:**   Classroom Instruction: list the subject areas in which the student will receive special education
Speech/language Services
Adaptive PE
Travel Training

**ANTICIPATED FREQUENCY:**   For preschool/elementary students, identify the hours of service per week.
For secondary students, identify either the periods of special education per week OR periods/blocks of special education per day.

## RELATED SERVICES TO SUPPORT INSTRUCTION:

**TYPES:**   Audiology services              Occupational therapy              Physical therapy              School health services
Counseling services          Orientation and mobility       Psychological services       Speech/language pathology
Medical services for diagnostic purposes only       Parent counseling services       Recreation       Vision

**ANTICIPATED FREQUENCY:**   Identify the periods or hours per week of service or, if needed, describe frequency.

Office of Student and Community Services
Department of Special Education
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850

**INDIVIDUALIZED EDUCATION PROGRAM**
**LEAST RESTRICTIVE ENVIRONMENT: AGES 6–21 ONLY**
*CONFIDENTIAL*

Student Name _____    _____    _____    ID# 766481    Meeting Date 12 / 1 / 06    Birth Date _____ / _____ / 92
                  Last              First              MI

(11) **PART IV: LEAST RESTRICTIVE ENVIRONMENT:** LRE reflects the setting where the student will receive special education instruction. LRE is not determined by the amount of special education services recommended. See reverse for definitions of each LRE option.

Directions: For each child who, on the last Friday of the October that is covered by this IEP, is/will be between the ages of 6–21, consider each option in the order listed until the IEP team recommends an option as the LRE. See definitions on reverse. (Use page 9A for students ages 3–5.) If the parent suggests a more restrictive environment, discuss the suggestion and document the consideration on page 14, Part I.

Given the student's IEP goals and objectives and the recommended supplementary aids and services, can the student be educated in:

☐ Yes ☐ No  Outside the General Education Class Less Than 21% (LRE Code A)     ☐ Yes ☐ No  Public Separate Day School (LRE Code F)
☐ Yes ☐ No  Outside the General Education Class Between 21 and 60% (LRE Code B)  ☐ Yes ☐ No  Private Separate Day School (LRE Code G)
☑ Yes ☐ No  Outside the General Education Class More Than 60% (LRE Code C)     ☐ Yes ☐ No  Public Residential Facility (LRE Code H)
☐ Yes ☐ No  Homebound Placement (LRE Code D)                                 ☐ Yes ☐ No  Private Residential Facility or Center (LRE Code I)
☐ Yes ☐ No  Hospital Placement (LRE Code E)

Explain the rationale for the recommended LRE and the reasons for rejecting any lesser restrictive environment(s), including the benefits and harmful effects:

_____'s language processing deficits requires special education interventions in order for her to be successful in the general education curriculum.

_____
_____
_____
_____

(12) **Part V: PLACEMENT DECISION:** The placement is based on present levels of performance, IEP goals, and recommended special education and related services.

Program I AD _____    Location of services G43 _____

Anticipated duration of services: Start date 12 / 1 / 06   End date 11 / 30 / 07    Start date 12 / 1 / 06   End date 11 / 30 / 07   Annual review date 12 / 1 / 07

(13) **Part VI: REFERRAL FOR CONSIDERATION OF ALTERNATIVE PLACEMENT:**

☑ N/A ☐ Yes: Interim program _____   Location _____   Start date ___/___/___

(14) **Part VII SPECIALIZED TRANSPORTATION:**

☐ Specialized transportation because program is not at student's home school
☐ Specialized transportation to meet the needs of the student's disability ☐ Child restraint ☐ Attendant ☐ Wheelchair lift
☑ N/A

(15) **Part VIII: ESY CONSIDERATIONS: Is ESY being considered?** ☐ Yes ☑ No. If "Yes," go to page 10 of MCPS Form 336-51. If "No," go to page 13 of MCPS Form 336-51.

MCPS Form 336-51, Rev. 12/03    DISTRIBUTION: COPY I/Student's Confidential Record; COPY 2/Service Provider(s); COPY 3/Parent    **Page 9B of 14**

# LEAST RESTRICTIVE ENVIRONMENT FOR STUDENTS AGE 6 - 21

## Least Restrictive Environment Descriptions

| LRE CODES | Students Aged 6-21 Only (as of the fourth Friday of the October covered by this IEP) |
|---|---|
| A | Outside the General Education Class Less Than 21%, includes students who receive special education and related services outside the general education setting for less than 21% of the school day. |
| B | Outside the General Education Class Between 21 and 60%, includes students who receive special education and related services outside the general education classroom for at least 21%, but no more than 60% of the school day. |
| C | Outside the General Education Class More Than 60%, includes students who receive special education and related services outside the general education classroom for more than 60% of the school day. |
| D | Homebound Placement, includes students who receive special education instruction at home. |

## Least Restrictive Environment Descriptions

| LRE CODES | Students Aged 3-21 Only (as of the fourth Friday of the October covered by this IEP) |
|---|---|
| E | Hospital Placement, includes students who receive special education in a medical treatment facility on an in-patient basis. |
| F | Public Separate Day School, includes students who receive special education and related services for greater than 50% of the school day in a public separate day facility that does not house programs for students without disabilities. |
| G | Private Separate Day School, includes students who receive special education and related services for greater than 50% of the school day in a private separate day facility that does not house programs for students without disabilities. |
| H | Public Residential Facility, includes students who receive special education and related services greater than 50% of the school day in a public residential facility. |
| I | Private Residential Facility or Center, includes students who receive special education and related services for greater than 50% of the school day in a private residential facility. |

# INFORMATION NEEDED FOR COMPLETING  SUMMARY OF IEP DECISIONS

**DISABILITY CODES:** Note: Code 11 (child in need of assessment) may not be used. Students who are in the process of being screened and evaluated for eligibility under IDEA should be entered on the Special Education Data System under the MCPS code 190. Code 15, Developmental delay, may be used only for children age 3 through 5, or the end of Kindergarten, whichever comes first.

| | | |
|---|---|---|
| 01 Mental retardation | 07 Orthopedic impairment | 10 Multiple disabilities |
| 02 Hearing Impairment | 08 Other health impairment | 12 Deaf/blindness |
| 03 Deafness | 09 Specific learning disability | 13 Traumatic brain injury |
| 04 Speech/language Impairment | | 14 Autism |
| 05 Visual Impairment | | 15 Developmental delay |
| 06 Emotional disturbance | | |

**SERVICES:**

**PRIMARY SPECIAL EDUCATION:** Classroom instruction  OR  Speech/language services  OR  Adaptive PE  OR  Travel training

**RELATED SERVICES:**

| | | |
|---|---|---|
| Audiology services | Orientation and mobility | Recreation |
| Counseling services | Parent counseling services | School health services |
| Medical services for diagnostic purposes only | Physical therapy | Specialized transportation |
| Occupational therapy | Psychological services | Speech/language pathology |
| | | Vision |
| | | Other |

## PERCENTAGE OF TIME THE STUDENT WILL NOT PARTICIPATE IN GENERAL EDUCATION

| Hours/Week | % Per Week | Hours/Week | % Per Week | Hours/Week | % Per Week | Hours/Week | % Per Week | Hours/Week | % Per Week | Hours/Week | % Per Week | Hours/Week | % Per Week | Hours/Week | % Per Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0.5 | 2 (1.67) | 4.5 | 15 | 8.5 | 28 | 12.5 | 42 | 16.5 | 55 | 20.5 | 68 | 24.5 | 82 | 28.5 | 95 |
| 1.0 | 3 | 5.0 | 17 | 9.0 | 30 | 13.0 | 43 | 17.0 | 57 | 21.0 | 70 | 25.0 | 83 | 29.0 | 97 |
| 1.5 | 5 | 5.5 | 18 | 9.5 | 32 | 13.5 | 45 | 17.5 | 58 | 21.5 | 72 | 25.5 | 85 | 29.5 | 99 |
| 2.0 | 7 | 6.0 | 20 | 10.0 | 33 | 14.0 | 47 | 18.0 | 60 | 22.0 | 73 | 26.0 | 87 | 30.0 | 100 |
| 2.5 | 8 | 6.5 | 22 | 10.5 | 35 | 14.5 | 48 | 18.5 | 62 | 22.5 | 75 | 26.5 | 89 | | |
| 3.0 | 10 | 7.0 | 23 | 11.0 | 37 | 15.0 | 50 | 19.0 | 63 | 23.0 | 77 | 27.0 | 90 | | |
| 3.5 | 12 | 7.5 | 25 | 11.5 | 38 | 15.5 | 52 | 19.5 | 65 | 23.5 | 78 | 27.5 | 92 | | |
| 4.0 | 13 | 8.0 | 27 | 12.0 | 40 | 16.0 | 53 | 20.0 | 67 | 24.0 | 80 | 28.0 | 94 | | |

**Percent of Time for Seven-Period Day:** 1 = 14%  2 = 28%  3 = 42%  4 = 57%  5 = 71%  6 = 85%  7 = 100%

**Percent of Time for Eight-Period Day:** 1 = 12.5%  2 = 25%  3 = 37.5%  4 = 50%  5 = 62.5%  6 = 75%  7 = 87.5%  8 = 100%

## LEAST RESTRICTIVE ENVIRONMENT DESCRIPTORS

**Students Aged 3–5 Only**
Home
Itinerant setting
Reverse mainstreaming
Early childhood setting
Early childhood special education setting
Part-time early childhood/part-time early childhood special education setting

**Students Aged 3–21 Only**
Hospital placement
Public separate day school
Private separate day school
Public residential facility
Private residential facility

**Students Aged 6–21 Only**
Outside general education settings less than 21%
Outside general education settings between 21 and 60%
Outside general education settings more than 60%
Homebound placement (HHT)

| Office of Student and Community Services<br>Department of Special Education<br>MONTGOMERY COUNTY PUBLIC SCHOOLS<br>Rockville, Maryland 20850 | FOLLOW-UP<br>INDIVIDUALIZED EDUCATION PROGRAM<br>TEAM MEETING<br>*CONFIDENTIAL* |
|---|---|

Student Name _____ Last _____ First _____ MI        ID# *766481*

School *GHS*                                      Meeting date *12/1/06*

**Directions:** At the conclusion of the meeting, complete the appropriate parts below.

**PART I: PRIOR NOTICE:** Describe any requests for services that parents wanted included in the IEP that were not considered appropriate by the IEP team or any other options considered but rejected by the IEP team. Indicate the IEP team's rationale and identify the basis for the decision (e.g., assessment report, progress report, etc.).

*The team discusses eligibility for mod HSA. Parent agrees.*

☐ Not Applicable

**PART II: DISCUSSION OF DUE PROCESS RIGHTS**

☐ Explain the parent's appeal rights, including those associated with ESY; answer any questions they may have about other due process rights or refer them to the appropriate MCPS administrative office

**PART III: FOLLOW-UP REQUIRED:** Identify the persons responsible and due dates.

☐ Refer to central IEP team _____
☐ Forward ESY packet to the central office _____
☐ Forward referrals to _____ : _____
☐ Forward Medicaid authorization to central office _____
☐ Notify _____ to review private assessment _____
☐ Notify _____ to review private assessment _____
☐ Schedule any required IEP team meeting _____
☐ Other _____
☐ Other _____

| MCPS Form 336-51, Rev. 1/03 | DISTRIBUTION: COPY 1/Student's confidential folder;<br>COPY 2/Service provider(s); COPY 3/Parent | Page 14 of 14 |
|---|---|---|

| Office of Special Education and Student Services<br>**MONTGOMERY COUNTY PUBLIC SCHOOLS**<br>Rockville, Maryland 20850 | FOLLOW-UP<br>**INDIVIDUALIZED EDUCATION PROGRAM TEAM**<br>**TEAM MEETING**<br>*CONFIDENTIAL* |
| --- | --- |

Student Name ▬▬▬▬                    ▬▬▬▬                              ID# 766481
            *Last*                                    *First*                              *MI*

School  Gaithersburg High School                                              Meeting date 12 / 1 / 06

---

**PART IV: MEDICAL ASSISTANCE AUTHORIZATION**

The purpose of this section is to obtain parental authorization for MCPS to seek federal reimbursement for case management services to students with disabilities who are or become eligible for Medical Assistance (Medicaid) during the period covered by the IEP. Currently, for reimbursement purposes under the law, case management requires once-a-month contact by the designated case manager with either the student or the parent concerning the student's progress on IEP goals. This service is routinely provided to special education students and will not require any additions to a student's IEP. Reimbursement, however, will ultimately benefit all MCPS special education students.

**At the Conclusion of the Annual Review or Initial Eligibility IEP Team Meeting**

When the student is first identified as eligible for special education and thereafter at the annual review, the IEP team chair (or other designated IEP team member) should ask the parent to write his/her initials in the space provided below. Parents should be assured that authorizing such reimbursement does not affect their child's eligibility for Medical Assistance benefits. Likewise, there are no consequences for parents of children who are not now or do not become eligible for Medical Assistance during the course of the IEP's effectiveness. Initialing the form simply enables MCPS to reduce the paperwork needed to access federal reimbursement. It has no bearing on the IEP or its implementation. No further action will be required of the parent.

If any parent declines to initial the form, MCPS will not bill for any case management service, despite the student's Medical Assistance eligibility. Case management by the student's service coordinator will still be provided as part of implementation of the student's IEP; however, MCPS will not receive reimbursement for this service.

If parents have any questions concerning Medical Assistance, they may contact the MCPS Department of Special Education Operations at 301-279-3445 or 301-279-3170.

**After the Annual Review or Initial Eligibility IEP Team Meeting**

Detach this sheet (MCPS Form 336-51, page 14a) and send to the Department of Special Education Operations -- Room 225, CESC.

---

Under the Code of Maryland Regulations 10.09.52, public schools may seek reimbursement from federal sources for case management services provided to students with disabilities who are eligible under the State of Maryland Medical Assistance Program. Parents, as members of the IEP team, participate in the selection of a case manger for this service. This service does not restrict or otherwise affect a participant's eligibility for Medical Assistance.

**If my child is or becomes eligible, I authorize MCPS to seek reimbursement for case management:** _____
                                                               *Parent's initials*

If your child is eligible for Medical Assistance, his/her case Medical Assistance manager will be:

_____                    _____
*Name*                                                                      *Title*

---

MCPS Form 336-51, Rev. 12/05                                                      **Page 14a**

12/1/06                                                       766481

Office of the Deputy Superintendent of Schools          ADDENDUM TO MCPS FORMS
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850    annual rev    MCPS Form _____    ①

**INSTRUCTIONS:** Use this addendum when additional space is needed on an MCPS Form. Enter the number of the form in the space above and identify each item being continued. Attach this addendum to the form.

Intro
Procedural Safeguards

Missing teeth (upper front - 4 teeth) from
being punched last July repeatedly.
Medicaid - no insurance
Comm Health Serv. Program Dental - no bene
Howard Univ. Dental School - no bene.
needs implants. Started school late b/c
he was still healing. ████ has had some
behavior issues that team feels are unlike
him and may be as aftermath of the
beating. Ms. Carter will follow through
a mtg w/ ████ to see if he needs emotional support
Teacher Reports - Carter
Maps - D/D - Caballero - intelligent; concerns -
late; behavior, sdc writing, attention, org.
App Sci - Ives - "E/C", strengths - participae
off task, out of seat, attention, org. unprepared
not turning in work, interrupts class, easily
frustrated, test grades.
USH - Williams - C/E ████ doesn't
understand why he has an E. Concerns -
written language; behavior, late, reading,
grammar usage, distracted, unprepared,
work habits, org. habits.

MCPS Form 336-01, Rev. 3/01          DISTRIBUTION: Same as attached form.

12/1/06        766481

Office of the Deputy Superintendent of Schools      ADDENDUM TO MCPS FORMS
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850   *Annual Rev*   MCPS Form _____

**INSTRUCTIONS:** Use this addendum when additional space is needed on an MCPS Form. Enter the number of the form in the space above and identify each item being continued. Attach this addendum to the form.

Eng 9A - Ducas) "C/E"; strengths participation, sleeping, attendance, quiz grades 8 days absent concerns - Rdg, comprehension, writing, org. A's; capable - expresses thoughts/ideas; inc. assignments, test grades. PE - Staymates "A" - good sportsmanship Reading - Wilson - "C" actively participates, capable; respectful; concerns comprehension needs to retake tests/quizzes; incomplete classwork, homework. Dr. Read 180. written expression, unprepared.

Schedule

| Spring 07 | Fall 07 |
|---|---|
| Eng 9B SC | Eng 10 A SC |
| Maps B SC | Alg/Rel - dbl SC |
| US H B SC | NSL - SC |
| Rdg - SC | Rdg - SC |
| Appl Sci - SC | ESS - (TT) |
| PE B | Software Apps |
| Internship SC | |
| 6/75% | 6/62.5% |

Transition discussion
IEP goals for 06-07: Transition Rdg, Written Expression, Pre Alg, Algebra, Speech, organization    Speech/lang
Supplementary Aids/Services    45 min 3X
Eligible for mod. HSA - Rdg/Math    p/month

MCPS Form 336-01, Rev. 3/01        DISTRIBUTION: Same as attached form.

**Annual Review**

| Office of the Deputy Superintendent of Schools<br>**MONTGOMERY COUNTY PUBLIC SCHOOLS**<br>Rockville, Maryland 20850 | **SECONDARY TEACHER REFERRAL** |
|---|---|

To M. Wilson                    From R. Bortnick                    Return by Wednesday 11/29/06

Student's Name ~~[redacted]~~ _____ T~~[redacted]~~ _____ ID # 766481

                    _Last_                   _First_

School Gaithersburg High _____ Subject Developmental Reading _____ Grade 9    MI Type: ☐ advanced ☐ basic ☐ regular ☐ other

### SECTION I: Check Appropriate Referral and Provide Parent Contact Information

☐ EMT Referral    ☐ EMT Progress Report

Referral discussed with parent?  Yes ☐  No ☐  Date Discussed: ____/____/____

(Attach parent conference notes related to reason for referral)
☐ IEP Screening

### SECTION II

| Reason for Referral (Attach pertinent work samples) | Check any interventions you have used: |
|---|---|
| A.  Summary of student's strengths.<br><br>- Active participant in class<br>- Capable of doing well when he applies himself<br>- T____ is respectful to peers and teacher<br><br>B.  Summary of concerns.<br>- T____ can get distracted and off tasks at times<br>- T____ does not do well on tests/quizzes<br>- T____ does not complete all classwork and homework | ☐ Student conference<br>☐ Adjusted workload<br>☐ Counselor involvement<br>☐ Behavior management techniques<br>☐ Functional Behavioral Assessment<br>☐ Behavior Intervention Plan<br>☐ Parent contact(s) Date(s):_____<br>☐ Disciplinary reports<br>☑ Tutoring (peer, volunteer)<br>☑ Modifying methods, materials, and presentation<br>☐ Change of text/materials<br>  ☐ above grade level ☐ on grade level ☐ below grade level<br>☐ Change in schedule<br>☐ Consultation with specialists<br>☐ Consultation with colleagues<br>☑ Other praise and proximity control<br><br>Explain which interventions were most effective! |

*(left margin handwritten, vertical):* reading comprehension and knowledge of vocabulary

| Student's attendance (days absent) in your class:<br><br>1st Quarter _____  3rd Quarter _____<br><br>2nd Quarter _____  4th Quarter _____ | Please estimate the student's level compared to expectations for students in that grade. |
|---|---|

| | Above Average | Average | Below Average |
|---|---|---|---|
| Oral expression | ☐ | ☑ | ☐ |
| Basic reading skills | ☐ | ☐ | ☑ |
| Reading comprehension | ☐ | ☐ | ☑ |
| Written expression | ☐ | ☐ | ☑ |
| Math reasoning | ☐ | ☐ | ☐ |
| Math calculation | ☐ | ☐ | ☐ |

Has the student received any interim or academic progress reports in your class? ☑ Yes  ☐ No

If yes, when? Periodically

Report card grades for your subject:

1st Quarter E _____  3rd Quarter _____

2nd Quarter C _____  4th Quarter _____

---

MCPS Form 272-2B, Rev. 7/05     DISTRIBUTION: COPY 1/EMT or IEP Case Manager; COPY 2/Referring Teacher.     Page 1 of 2

Student Name _____    ____    Student ID# 766481

Based on your observation, please evaluate the student in comparison to other students in the same grade by recording a C for Concern or S for Strength frequently observed. Leave blank if not frequently observed or within expectations.

**LISTENING COMPREHENSION**
- S Understands spoken language
- ____ Follows verbal directions

**ORAL EXPRESSION**
- ____ Expresses thoughts and ideas
- ____ Speaking vocabulary

**READING**
- ____ Word recognition/decoding
- ____ Comprehension skills - literal
- ____ Comprehension skills - inferential
- ____ Comprehension - narrative
- ____ Comprehension - expository
- C Vocabulary skills
- ____ Written directions

**WRITTEN EXPRESSION**
- C Spelling
- ____ Writing speed
- C Capitalization, punctuation
- C Grammar/usage
- C Writes a sentence, edits, and proofreads
- C Organizes sentences and ideas into meaningful paragraphs
- C Organizes thoughts into reports or essays

**MATHEMATICS (if appropriate)**
- ____ Basic facts ( + - x / )
- ____ Calculator Use
- ____ Fractions, decimals, percentages
- ____ Practical applications (money, time, measurements)
- ____ Solving word problems

**MEMORY**
- SHORT TERM    ____ Visual ____ Auditory
- LONG TERM    ____ Visual ____ Auditory

**SPEECH**
- ____ Fluency    ____ Voice quality    ____ Articulation

**ATTENTION/ORGANIZATION/ACTIVITY LEVEL**
- C Maintains attention
- C Distractible
- C Has work and/or materials
- ____ On time for class
- ____ Underactive
- ____ Overactive
- C Organization

**SOCIAL PERCEPTION**
- ____ Interprets social cues
- ____ Makes and keeps friends
- C Accepts responsibility for own behavior
- ____ Influenced by others

**SOCIAL/EMOTIONAL**
- ____ Interrupts and disrupts class
- ____ Motivation
- ____ Changes in mood
- ____ Self-control
- ____ Consistent performance
- ____ Needs constant approval
- ____ Aggressive behavior
- ____ Shy or withdrawn
- S Easily frustrated
- ____ Gets along with adults

**GENERAL WORK HABITS**
- ____ Notetaking
- S Participates in class
- C Completes in-class assignments
- C Completes homework assignments
- C Test grades

**ADDITIONAL COMMENTS**

Signature: _Melanie Wilson_    Date ___/___/___

03/07/2008 FRI 13:12    【JOB NO. 6506】    ☑047

| Office of the Deputy Superintendent of Schools<br>MONTGOMERY COUNTY PUBLIC SCHOOLS<br>Rockville, Maryland 20850 | SECONDARY TEACHER REFERRAL |
|---|---|

To _M. Staymates_    From _R. Bortnick_    Return by _Wednesday 11/29/06_

Student's Name ▬▬▬▬      ▬▬▬    ID # _766481_

        Last                  First      MI   ☐ advanced ☐ basic

School _Gaithersburg High_    Subject _P. E._    Grade _9_    Type: ☐ regular ☐ other

## SECTION I: Check Appropriate Referral and Provide Parent Contact Information

☐ EMT Referral   ☐ EMT Progress Report

Referral discussed with parent? Yes ☐   No ☐   Date Discussed: ___/___/___

(Attach parent conference notes related to reason for referral)
☐ IEP Screening

## SECTION II

**Reason for Referral (Attach pertinent work samples)**

A. Summary of student's strengths.

*participate in class*
*good sportsmanship*
*respectful*

B. Summary of concerns.

**Check any interventions you have used:**

☐ Student conference
☐ Adjusted workload
☐ Counselor involvement
☐ Behavior management techniques
☐ Functional Behavioral Assessment
☐ Behavior Intervention Plan
☐ Parent contact(s) Date(s): _____
☐ Disciplinary reports
☐ Tutoring (peer, volunteer)
☐ Modifying methods, materials, and presentation
☐ Change of text/materials
   ☐ above grade level ☐ on grade level ☐ below grade level
☐ Change in schedule
☐ Consultation with specialists
☐ Consultation with colleagues
☐ Other _____

Explain which interventions were most effective:
_____
_____

**Student's attendance (days absent) in your class:**

1st Quarter ___2___    3rd Quarter _____

2nd Quarter _____    4th Quarter _____

Has the student received any interim or academic progress reports in your class? ☐ Yes   ☐ No

If yes, when: _____

**Report card grades for your subject:**

1st Quarter ___A___    3rd Quarter _____

2nd Quarter _____    4th Quarter _____

Please estimate the student's level compared to expectations for students in that grade.

| | Above Average | Average | Below Average |
|---|---|---|---|
| Oral expression | ☐ | ☐ | ☐ |
| Basic reading skills | ☐ | ☐ | ☐ |
| Reading comprehension | ☐ | ☐ | ☐ |
| Written expression | ☐ | ☐ | ☐ |
| Math reasoning | ☐ | ☐ | ☐ |
| Math calculation | ☐ | ☐ | ☐ |

| MCPS Form 272-2B, Rev. 7/05 | DISTRIBUTION: COPY 1/EMT or IEP Case Manager;<br>COPY 2/Referring Teacher. | Page 1 of 2 |
|---|---|---|

Student Name _____    T_____    Student ID# 766481

Based on your observation, please evaluate the student in comparison to other students in the same grade by recording a C for Concern or S for Strength frequently observed. Leave blank if not frequently observed or within expectations.

**LISTENING COMPREHENSION**
_____ Understands spoken language
_____ Follows verbal directions

**ORAL EXPRESSION**
_____ Expresses thoughts and ideas
_____ Speaking vocabulary

**READING**
_____ Word recognition/decoding
_____ Comprehension skills - literal
_____ Comprehension skills - inferential
_____ Comprehension - narrative
_____ Comprehension - expository
_____ Vocabulary skills
_____ Written directions

**WRITTEN EXPRESSION**
_____ Spelling
_____ Writing speed
_____ Capitalization, punctuation
_____ Grammar/usage
_____ Writes a sentence, edits, and proofreads
_____ Organizes sentences and ideas into meaningful paragraphs
_____ Organizes thoughts into reports or essays

**MATHEMATICS (if appropriate)**
_____ Basic facts ( + - x / )
_____ Calculator Use
_____ Fractions, decimals, percentages
_____ Practical applications (money, time, measurements)
_____ Solving word problems

**MEMORY**
SHORT TERM  _____ Visual _____ Auditory
LONG TERM   _____ Visual _____ Auditory

**SPEECH**
_____ Fluency  _____ Voice quality  _____ Articulation

**ATTENTION/ORGANIZATION/ACTIVITY LEVEL**
_____ Maintains attention
_____ Distractible
_____ Has work and/or materials
_____ On time for class
_____ Underactive
_____ Overactive
_____ Organization

**SOCIAL PERCEPTION**
_____ Interprets social cues
_____ Makes and keeps friends
_____ Accepts responsibility for own behavior
_____ Influenced by others

**SOCIAL/EMOTIONAL**
_____ Interrupts and disrupts class
_____ Motivation
_____ Changes in mood
_____ Self-control
_____ Consistent performance
_____ Needs constant approval
_____ Aggressive behavior
_____ Shy or withdrawn
_____ Easily frustrated
_____ Gets along with adults

**GENERAL WORK HABITS**
_____ Notetaking
_____ Participates in class
_____ Completes in-class assignments
_____ Completes homework assignments
_____ Test grades

**ADDITIONAL COMMENTS**

_____    11, 30, 0
Signature                           Date

Page 2 of 2

*Annual Review* *12-31-06*

| Office of the Deputy Superintendent of Schools<br>**MONTGOMERY COUNTY PUBLIC SCHOOLS**<br>Rockville, Maryland 20850 | **SECONDARY TEACHER REFERRAL** |
|---|---|

To W. Ducas          From R. Bortnick          Return by Wednesday 11/29/06

Student's Name ▮▮▮▮          T▮▮▮▮          ID # 766481
          Last                    First          MI Type: ☐ advanced ☐ basic ☐ regular ☐ other

School Gaithersburg High          Subject English 9A          Grade 9

**SECTION I: Check Appropriate Referral and Provide Parent Contact Information**

☐ EMT Referral   ☐ EMT Progress Report

Referral discussed with parent? Yes ☐ No ☐ Date Discussed: ___/___/___

(Attach parent conference notes related to reason for referral)
☐ IEP Screening

**SECTION II**

Reason for Referral (Attach pertinent work samples)

A. Summary of student's strengths.

- Participation

B. Summary of concerns.

- Classwork
- Sleeps in class
- Attendance
- Quiz grades (reading comp & vocab.)

Check any interventions you have used:

☑ Student conference
☐ Adjusted workload
☐ Counselor involvement
☑ Behavior management techniques
☐ Functional Behavioral Assessment
☐ Behavior Intervention Plan
☐ Parent contact(s) Date(s): ___
☐ Disciplinary reports
☐ Tutoring (peer, volunteer)
☑ Modifying methods, materials, and presentation
☑ Change of text/materials
    ☐ above grade level ☑ on grade level ☑ below grade level
☑ Change in schedule
☐ Consultation with specialists
☐ Consultation with colleagues
☐ Other ___

Explain which interventions were most effective:
Moderate success with each intervention

Student's attendance (days absent) in your class:

1st Quarter 4          3rd Quarter ___
2nd Quarter 4          4th Quarter ___

Has the student received any interim or academic progress reports in your class? ☐ Yes ☐ No
If yes, when: ___

Report card grades for your subject:

1st Quarter C          3rd Quarter ___
2nd Quarter E (11/27)          4th Quarter ___

Please estimate the student's level compared to expectations for students in that ~~grade~~. Class

| | Above Average | Average | Below Average |
|---|---|---|---|
| Oral expression | ☑ | ☐ | ☐ |
| Basic reading skills | ☐ | ☑ | ☐ |
| Reading comprehension | ☐ | ☐ | ☑ |
| Written expression | ☐ | ☐ | ☑ |
| Math reasoning | ☐ | ☐ | ☐ |
| Math calculation | ☐ | ☐ | ☐ |

**MCPS Form 272-2B, Rev. 7/05**          DISTRIBUTION: COPY 1/EMT or IEP Case Manager;<br>COPY 2/Referring Teacher.          Page 1 of 2

Student Name _____   T_____   Student ID# 766481

Based on your observation, please evaluate the student in comparison to other students in the same grade by recording a C for Concern or S for Strength frequently observed. Leave blank if not frequently observed or within expectations.

**LISTENING COMPREHENSION**
- _____ Understands spoken language
- _____ Follows verbal directions

**ORAL EXPRESSION**
- S Expresses thoughts and ideas — *Has great insights into connections between the texts and his experience*
- _____ Speaking vocabulary

**READING**
- C Word recognition/decoding
- C Comprehension skills - literal
- S Comprehension skills - inferential
- _____ Comprehension - narrative
- _____ Comprehension - expository
- _____ Vocabulary skills
- _____ Written directions

**WRITTEN EXPRESSION**
- _____ Spelling
- C Writing speed
- C Capitalization, punctuation
- C Grammar/usage
- _____ Writes a sentence, edits, and proofreads
- C Organizes sentences and ideas into meaningful paragraphs
- _____ Organizes thoughts into reports or essays

**MATHEMATICS (if appropriate)**
- _____ Basic facts ( + - x / )
- _____ Calculator Use
- _____ Fractions, decimals, percentages
- _____ Practical applications (money, time, measurements)
- _____ Solving word problems

**MEMORY**
SHORT TERM _____ Visual _____ Auditory
LONG TERM _____ Visual _____ Auditory

**SPEECH**
- _____ Fluency _____ Voice quality _____ Articulation

**ATTENTION/ORGANIZATION/ACTIVITY LEVEL**
- C Maintains attention
- _____ Distractible
- _____ Has work and/or materials
- _____ On time for class
- C Underactive
- _____ Overactive
- _____ Organization

**SOCIAL PERCEPTION**
- S Interprets social cues
- _____ Makes and keeps friends
- S Accepts responsibility for own behavior
- _____ Influenced by others

**SOCIAL/EMOTIONAL**
- _____ Interrupts and disrupts class
- C Motivation
- _____ Changes in mood
- _____ Self-control
- _____ Consistent performance
- _____ Needs constant approval
- _____ Aggressive behavior
- _____ Shy or withdrawn
- _____ Easily frustrated
- S Gets along with adults

**GENERAL WORK HABITS**
- _____ Notetaking
- S Participates in class
- C Completes in-class assignments
- _____ Completes homework assignments
- C Test grades

**ADDITIONAL COMMENTS**

_____   11, 28, 06
Signature                  Date

Page 2 of 2

**Annual Review**

| Office of the Deputy Superintendent of Schools<br>MONTGOMERY COUNTY PUBLIC SCHOOLS<br>Rockville, Maryland 20850 | SECONDARY TEACHER REFERRAL |
|---|---|

To J. Williams _____ From R. Bortnick _____ Return by Wednesday 11/29/06 _____

Student's Name ▮▮▮▮▮▮ _____ ▮▮▮▮▮ _____

     *Last*              *First*       ID # 766481

MI Type: ☐ advanced ☐ basic ☐ regular ☐ other

School Gaithersburg High _____ Subject U. S. History _____ Grade 9 _____

## SECTION I: Check Appropriate Referral and Provide Parent Contact Information

☐ EMT Referral    ☐ EMT Progress Report

Referral discussed with parent? Yes ☐ No ☐ Date Discussed: ___/___/___

(Attach parent conference notes related to reason for referral)
☐ IEP Screening

## SECTION II

**Reason for Referral** (Attach pertinent work samples)

A. Summary of student's strengths.

*Ability*

B. Summary of concerns.

*Behavior*
*Tardiness*
*Written Language*

**Check any interventions you have used:**

☑ Student conference
☑ Adjusted workload
☐ Counselor involvement
☐ Behavior management techniques
☐ Functional Behavioral Assessment
☐ Behavior Intervention Plan
☐ Parent contact(s) Date(s):
☐ Disciplinary reports
☐ Tutoring (peer, volunteer)
☑ Modifying methods, materials, and presentation
☐ Change of text/materials
     ☐ above grade level ☐ on grade level ☑ below grade level
☐ Change in schedule
☐ Consultation with specialists
☐ Consultation with colleagues
☐ Other _____

Explain which interventions were most effective:

_____
_____
_____

Student's attendance (days absent) in your class:

1st Quarter / (6 *Unexcused Tardies*) 3rd Quarter _____

2nd Quarter _____ 4th Quarter _____

Has the student received any interim or academic progress reports in your class? ☑ Yes ☐ No

If yes, when: _____

Report card grades for your subject:

1st Quarter ___ C ___ 3rd Quarter _____

2nd Quarter _____ 4th Quarter _____

Please estimate the student's level compared to expectations for students in that grade.

| | Above Average | Average | Below Average |
|---|---|---|---|
| Oral expression | ☐ | ☑ | ☐ |
| Basic reading skills | ☐ | ☐ | ☑ |
| Reading comprehension | ☐ | ☐ | ☑ |
| Written expression | ☐ | ☐ | ☑ |
| Math reasoning | ☐ | ☐ | ☐ |
| Math calculation | ☐ | ☐ | ☐ |

| MCPS Form 272-2B, Rev. 7/05 | DISTRIBUTION: COPY 1/EMT or IEP Case Manager;<br>COPY 2/Referring Teacher. | Page 1 of 2 |
|---|---|---|

Student Name _____    T_____    Student ID# 766481

Based on your observation, please evaluate the student in comparison to other students in the same grade by recording a C for Concern or S for Strength frequently observed. Leave blank if not frequently observed or within expectations.

**LISTENING COMPREHENSION**
- _C_ Understands spoken language
- _C_ Follows verbal directions

**ORAL EXPRESSION**
- _C_ Expresses thoughts and ideas
- _____ Speaking vocabulary

**READING**
- _C_ Word recognition/decoding
- _C_ Comprehension skills - literal
- _____ Comprehension skills - inferential
- _____ Comprehension - narrative
- _____ Comprehension - expository
- _____ Vocabulary skills
- _____ Written directions

**WRITTEN EXPRESSION**
- _____ Spelling
- _C_ Writing speed
- _C_ Capitalization, punctuation
- _C_ Grammar/usage
- _____ Writes a sentence, edits, and proofreads
- _____ Organizes sentences and ideas into meaningful paragraphs
- _____ Organizes thoughts into reports or essays

**MATHEMATICS (if appropriate)**
- _____ Basic facts ( + - x / )
- _____ Calculator Use
- _____ Fractions, decimals, percentages
- _____ Practical applications (money, time, measurements)
- _____ Solving word problems

**MEMORY**
SHORT TERM _____ Visual _____ Auditory
LONG TERM _____ Visual _____ Auditory

**SPEECH**
- _____ Fluency _____ Voice quality _____ Articulation

**ATTENTION/ORGANIZATION/ACTIVITY LEVEL**
- _C_ Maintains attention
- _C_ Distractible
- _C_ Has work and/or materials
- _C_ On time for class
- _____ Underactive
- _____ Overactive
- _C_ Organization

**SOCIAL PERCEPTION**
- _____ Interprets social cues
- _____ Makes and keeps friends
- _C_ Accepts responsibility for own behavior
- _C_ Influenced by others

**SOCIAL/EMOTIONAL**
- _C_ Interrupts and disrupts class
- _____ Motivation
- _____ Changes in mood
- _C_ Self-control
- _____ Consistent performance
- _____ Needs constant approval
- _____ Aggressive behavior
- _____ Shy or withdrawn
- _____ Easily frustrated
- _____ Gets along with adults

**GENERAL WORK HABITS**
- _C_ Notetaking
- _C_ Participates in class
- _C_ Completes in-class assignments
- _C_ Completes homework assignments
- _C_ Test grades

**ADDITIONAL COMMENTS**

_____ started off good, but now is uncooperative

Signature _____    Date 11/28/06

Page 2 of 2

| Office of the Deputy Superintendent of Schools<br>**MONTGOMERY COUNTY PUBLIC SCHOOLS**<br>Rockville, Maryland 20850 | **SECONDARY TEACHER REFERRAL** |
|---|---|

To _J. Ives_     From _R. Bortnick_     Return by _Wednesday 11/29/06_

Student's Name _____     T�community _____    ID # _766481_
     Last              First

School _Gaithersburg High_    Subject _Applied Science_    Grade _9_    MI Type: ☐ advanced ☐ basic   ☐ regular ☐ other

**SECTION I: Check Appropriate Referral and Provide Parent Contact Information**

☐ EMT Referral    ☐ EMT Progress Report

Referral discussed with parent? Yes ☐   No ☐   Date Discussed: ___/___/___

(Attach parent conference notes related to reason for referral)
☐ IEP Screening

**SECTION II**

Reason for Referral (Attach pertinent work samples)

A. Summary of student's strengths.

*Wants to please others Participates in class discussions*

B. Summary of concerns.

*Out-of-seat behavior Off-task*

Check any interventions you have used:

☑ Student conference
☑ Adjusted workload
☐ Counselor involvement
☑ Behavior management techniques
☐ Functional Behavioral Assessment
☐ Behavior Intervention Plan
☐ Parent contact(s) Date(s):_____
☐ Disciplinary reports
☐ Tutoring (peer, volunteer)
☐ Modifying methods, materials, and presentation
☑ Change of text/materials
   ☐ above grade level ☐ on grade level ☑ below grade level
☐ Change in schedule
☐ Consultation with specialists
☐ Consultation with colleagues
☐ Other

Explain which interventions were most effective:
*Beh mgmt - proximity, one-on-one*

Student's attendance (days absent) in your class:

1st Quarter _____ *unex.*    3rd Quarter _____

2nd Quarter _____    4th Quarter _____

Has the student received any interim or academic progress reports in your class? ☑ Yes ☐ No

If yes, when: *Progress report every Friday*

Report card grades for your subject:

1st Quarter _____    3rd Quarter _____

2nd Quarter _____    4th Quarter _____

Please estimate the student's level compared to expectations for students in that grade.

| | Above Average | Average | Below Average |
|---|---|---|---|
| Oral expression | ☐ | ☐ | ☑ |
| Basic reading skills | ☐ | ☐ | ☑ |
| Reading comprehension | ☐ | ☐ | ☑ |
| Written expression | ☐ | ☐ | ☑ |
| Math reasoning | ☐ | ☐ | ☑ |
| Math calculation | ☐ | ☐ | ☑ |

**MCPS Form 272-2B, Rev. 7/05**    DISTRIBUTION: COPY 1/EMT or IEP Case Manager; COPY 2/Referring Teacher.    Page 1 of 2

Student Name _____    T____    Student ID# 766481

Based on your observation, please evaluate the student in comparison to other students in the same grade by recording a C for Concern or S for Strength frequently observed. Leave blank if not frequently observed or within expectations.

**LISTENING COMPREHENSION**
_____ Understands spoken language
_____ Follows verbal directions

**ORAL EXPRESSION**
_____ Expresses thoughts and ideas
_____ Speaking vocabulary

**READING**
_____ Word recognition/decoding
_____ Comprehension skills - literal
_____ Comprehension skills - inferential
_____ Comprehension - narrative
_____ Comprehension - expository
_____ Vocabulary skills
_____ Written directions

**WRITTEN EXPRESSION**
_____ Spelling
_____ Writing speed
_____ Capitalization, punctuation
_____ Grammar/usage
_____ Writes a sentence, edits, and proofreads
_____ Organizes sentences and ideas into meaningful paragraphs
_____ Organizes thoughts into reports or essays

**MATHEMATICS (if appropriate)**
_____ Basic facts ( + - x / )
_____ Calculator Use
_____ Fractions, decimals, percentages
_____ Practical applications (money, time, measurements)
_____ Solving word problems

**MEMORY**
SHORT TERM _____ Visual _____ Auditory
LONG TERM _____ Visual _____ Auditory

**SPEECH**
_____ Fluency _____ Voice quality _____ Articulation

**ATTENTION/ORGANIZATION/ACTIVITY LEVEL**
C Maintains attention
C Distractible
C Has work and/or materials
_____ On time for class
_____ Underactive
_____ Overactive
C Organization

**SOCIAL PERCEPTION**
_____ Interprets social cues
_____ Makes and keeps friends
_____ Accepts responsibility for own behavior
_____ Influenced by others

**SOCIAL/EMOTIONAL**
C Interrupts and disrupts class
_____ Motivation
_____ Changes in mood
C Self-control    *staying in seat/*
_____ Consistent performance    *returning*
C Needs constant approval    *directly to*
_____ Aggressive behavior    *seat is an*
C Shy or withdrawn    *issue*
C Easily frustrated
_____ Gets along with adults

**GENERAL WORK HABITS**
S Notetaking
_____ Participates in class
_____ Completes in-class assignments
_____ Completes homework assignments
C Test grades

**ADDITIONAL COMMENTS**

_____    ___/___/___
Signature    Date

Page 2 of 2

| Office of the Deputy Superintendent of Schools<br>MONTGOMERY COUNTY PUBLIC SCHOOLS<br>Rockville, Maryland 20850 | SECONDARY TEACHER REFERRAL |
|---|---|

To _I. Clay_    From _____   Return by _____

Student's Name ▬▬▬▬▬▬     ▬▬▬▬▬▬    ID # _____

          Last              First

School _GtS_    Subject _Internship_   Grade _9_   MI Type: ☐ advanced ☐ basic   ☐ regular ☐ other

**SECTION I: Check Appropriate Referral and Provide Parent Contact Information**

☐ EMT Referral   ☐ EMT Progress Report

Referral discussed with parent? Yes ☐ No ☐ Date Discussed: _____/_____/_____

(Attach parent conference notes related to reason for referral)
☐ IEP Screening

**SECTION II**

| Reason for Referral (Attach pertinent work samples) | Check any interventions you have used: |
|---|---|
| A. Summary of student's strengths.<br><br><br><br><br><br>B. Summary of concerns.<br><br>Behavior<br>Staying on task<br>Following directions | ☐ Student conference<br>☐ Adjusted workload<br>☐ Counselor involvement<br>☐ Behavior management techniques<br>☐ Functional Behavioral Assessment<br>☐ Behavior Intervention Plan<br>☐ Parent contact(s) Date(s): _____<br>☐ Disciplinary reports<br>☐ Tutoring (peer, volunteer)<br>☐ Modifying methods, materials, and presentation<br>☐ Change of text/materials<br>    ☐ above grade level ☐ on grade level ☐ below grade level<br>☐ Change in schedule<br>☐ Consultation with specialists<br>☐ Consultation with colleagues<br>☐ Other _____<br><br>Explain which interventions were most effective:<br><br>_____<br>_____ |

| Student's attendance (days absent) in your class:<br><br>1st Quarter _____ 3rd Quarter _____<br><br>2nd Quarter _____ 4th Quarter _____ | Please estimate the student's level compared to expectations for students in that grade. |
|---|---|

| Has the student received any interim or academic progress reports in your class? ☐ Yes ☐ No<br><br>If yes, when: _____ | | Above Average | Average | Below Average |
|---|---|---|---|---|

| Report card grades for your subject:<br><br>1st Quarter _B_   3rd Quarter _____<br><br>2nd Quarter _C_   4th Quarter _____ |

| | Above Average | Average | Below Average |
|---|---|---|---|
| Oral expression | ☐ | ☐ | ☑ |
| Basic reading skills | ☐ | ☐ | ☐ |
| Reading comprehension | ☐ | ☐ | ☐ |
| Written expression | ☐ | ☐ | ☐ |
| Math reasoning | ☐ | ☐ | ☐ |
| Math calculation | ☐ | ☐ | ☐ |

| MCPS Form 272-2B, Rev. 7/05 | DISTRIBUTION: COPY 1/EMT or IEP Case Manager;<br>COPY 2/Referring Teacher. | Page 1 of 2 |
|---|---|---|

Student Name _____ Student ID# _____

Based on your observation, please evaluate the student in comparison to other students in the same grade by recording a C for Concern or S for Strength frequently observed. Leave blank if not frequently observed or within expectations.

**LISTENING COMPREHENSION**
- _S_ Understands spoken language
- _C_ Follows verbal directions

**ORAL EXPRESSION**
- _____ Expresses thoughts and ideas
- _____ Speaking vocabulary

**READING**
- _____ Word recognition/decoding
- _____ Comprehension skills - literal
- _____ Comprehension skills - inferential
- _____ Comprehension - narrative
- _____ Comprehension - expository
- _____ Vocabulary skills
- _____ Written directions

**WRITTEN EXPRESSION**
- _____ Spelling
- _____ Writing speed
- _____ Capitalization, punctuation
- _____ Grammar/usage
- _____ Writes a sentence, edits, and proofreads
- _____ Organizes sentences and ideas into meaningful paragraphs
- _____ Organizes thoughts into reports or essays

**MATHEMATICS (if appropriate)**
- _____ Basic facts ( + - x / )
- _____ Calculator Use
- _____ Fractions, decimals, percentages
- _____ Practical applications (money, time, measurements)
- _____ Solving word problems

**MEMORY**
SHORT TERM _____ Visual _____ Auditory
LONG TERM _____ Visual _____ Auditory

**SPEECH**
- _____ Fluency _____ Voice quality _____ Articulation

**ATTENTION/ORGANIZATION/ACTIVITY LEVEL**
- _C_ Maintains attention
- _C_ Distractible
- _____ Has work and/or materials
- _____ On time for class
- _____ Underactive
- _____ Overactive
- _____ Organization

**SOCIAL PERCEPTION**
- _____ Interprets social cues
- _____ Makes and keeps friends
- _____ Accepts responsibility for own behavior
- _____ Influenced by others

**SOCIAL/EMOTIONAL**
- _C_ Interrupts and disrupts class
- _C_ Motivation
- _____ Changes in mood
- _C_ Self-control
- _C_ Consistent performance
- _____ Needs constant approval
- _____ Aggressive behavior
- _____ Shy or withdrawn
- _____ Easily frustrated
- _____ Gets along with adults

**GENERAL WORK HABITS**
- _____ Notetaking
- _____ Participates in class
- _____ Completes in-class assignments
- _____ Completes homework assignments
- _____ Test grades

**ADDITIONAL COMMENTS**

_____ _____
Signature                          Date  12.4.06

**Annual Review**

| Office of the Deputy Superintendent of Schools<br>**MONTGOMERY COUNTY PUBLIC SCHOOLS**<br>Rockville, Maryland 20850 | SECONDARY TEACHER REFERRAL |
|---|---|

To C. Caballero _____ From R. Bortnick _____ Return by Wednesday 11/29/06 _____

Student's Name ~~████~~ ~~████~~ ID # 766481

    *Last*        *First*      *MI*

School Gaithersburg High   Subject ~~U.S. History~~ *MAPS*   Grade 9   Type: ☐ advanced ☐ basic ☐ regular ☐ other

**SECTION I: Check Appropriate Referral and Provide Parent Contact Information**

☐ EMT Referral   ☐ EMT Progress Report

Referral discussed with parent? Yes ☐ No ☐ Date Discussed: ___/___/___

(Attach parent conference notes related to reason for referral)

☐ IEP Screening

**SECTION II**

Reason for Referral (Attach pertinent work samples)

A. Summary of student's strengths.

*Very smart*
*polite most of the time*

*Currently has a -B/C+*

B. Summary of concerns.

- *not coming on time to class*
- *behavior*
- *study skills*
- *memory*

Check any interventions you have used:

☑ Student conference
☑ Adjusted workload
☐ Counselor involvement
☑ Behavior management techniques *(proximity control)*
☐ Functional Behavioral Assessment
☐ Behavior Intervention Plan
☐ Parent contact(s) Date(s): _____
☐ Disciplinary reports
☐ Tutoring (peer, volunteer)
☑ Modifying methods, materials, and presentation
☐ Change of text/materials
   ☐ above grade level ☐ on grade level ☐ below grade level
☐ Change in schedule
☐ Consultation with specialists
☐ Consultation with colleagues
☐ Other _____

Explain which interventions were most effective:
*self contained course so we include ma__ intervention__*

Student's attendance (days absent) in your class:

1st Quarter _____ 3rd Quarter _____

2nd Quarter _____ 4th Quarter _____

Has the student received any interim or academic progress reports in your class? ☑ Yes ☐ No

If yes, when: _____

Report card grades for your subject:

1st Quarter __B__ 3rd Quarter _____

2nd Quarter __B__ 4th Quarter _____

Please estimate the student's level compared to expectations for students in that grade.

| | Above Average | Average | Below Average |
|---|---|---|---|
| Oral expression | ☐ | ☐ | ☑ |
| Basic reading skills | ☐ | ☐ | ☑ |
| Reading comprehension | ☐ | ☐ | ☑ |
| Written expression | ☐ | ☐ | ☑ |
| Math reasoning | ☐ | ☑ | ☐ |
| Math calculation | ☐ | ☑ | ☐ |

**MCPS Form 272-2B, Rev. 7/05**    DISTRIBUTION: COPY 1/EMT or IEP Case Manager;<br>COPY 2/Referring Teacher.    Page 1 of 2

Student Name ▉▉▉▉     T▉▉▉     Student ID# 766481

Based on your observation, please evaluate the student in comparison to other students in the same grade by recording a C for Concern or S for Strength frequently observed. Leave blank if not frequently observed or within expectations.

**LISTENING COMPREHENSION**
- S Understands spoken language
- S Follows verbal directions

**ORAL EXPRESSION**
- S Expresses thoughts and ideas
- S Speaking vocabulary

**READING**
- ___ Word recognition/decoding
- ___ Comprehension skills - literal
- ___ Comprehension skills - inferential
- ___ Comprehension - narrative
- ___ Comprehension - expository
- ___ Vocabulary skills
- ___ Written directions

*reading is a concern*

**WRITTEN EXPRESSION**
- ___ Spelling
- ___ Writing speed
- ___ Capitalization, punctuation
- ___ Grammar/usage
- ___ Writes a sentence, edits, and proofreads
- ___ Organizes sentences and ideas into meaningful paragraphs
- ___ Organizes thoughts into reports or essays

*writing is concern*

**MATHEMATICS (if appropriate)**
- S Basic facts ( + - x / )
- S Calculator Use
- S Fractions, decimals, percentages
- S Practical applications (money, time, measurements)
- S Solving word problems

**MEMORY**
SHORT TERM  ___ Visual ___ Auditory
LONG TERM  ___ Visual ___ Auditory

**SPEECH**
- ___ Fluency ___ Voice quality ___ Articulation

*Maybe a problem Concern*

**ATTENTION/ORGANIZATION/ACTIVITY LEVEL**
- C Maintains attention
- C Distractible
- C Has work and/or materials
- N/A On time for class
- N/A Underactive
- N/A Overactive
- C Organization

**SOCIAL PERCEPTION**
- S Interprets social cues
- S Makes and keeps friends
- C Accepts responsibility for own behavior
- C Influenced by others

**SOCIAL/EMOTIONAL**
- S Interrupts and disrupts class
- S Motivation
- S Changes in mood
- S Self-control
- S Consistent performance
- S Needs constant approval
- S Aggressive behavior
- S Shy or withdrawn
- S Easily frustrated
- S Gets along with adults

**GENERAL WORK HABITS**
- S Notetaking
- S Participates in class  *most of time*
- S Completes in-class assignments  *most of time*
- S Completes homework assignments
- C Test grades

**ADDITIONAL COMMENTS**

*T▉▉▉ needs to study more and remain on task during class*

Signature ▉▉▉▉     Date 11, 28, 06

Page 2 of 2



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

March 11, 2008

Special Education Coordinator
Ballou High School
3401 4th Street, SE
Washington, DC 20032
By Fax: (202)645-3397

**Re:**    T█████ (█████) G███ (D.O.B. █████92)

Dear Special Education Coordinator:

This firm represents the parent of the above-referenced student. This correspondence serves as a second request that DCPS determine an appropriate placement for T█████. T█████ recently moved into the District of Columbia from Montgomery County, Maryland, where he was deemed eligible for special education services and had a current IEP.

T█████ father, Michael Gage, met with you last Thursday, March 6, 2008. During that meeting, you obtained a copy of T█████ IEP from his previous school, and determined that Ballou did not have the resources to implement T█████ IEP. However, an appropriate placement was offered for Terrell at that time, and none has been offered since.

Mr. Gage is requesting an immediate placement meeting to determine an appropriate placement for T█████.

Thank you for your attention to this matter.

Sincerely,

Zachary E. Nehass

**TG8**

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

JOB NO.              3782
DESTINATION ADDRESS  2026453397
PSWD/SUBADDRESS
DESTINATION ID
ST. TIME             03/11 13:00
USAGE T              00'42
PGS.                 2
RESULT               OK
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*      Especial Education Coordinator

*Fax Number:*     202-645-3397

*From:*           Zachary Nahass

*Regarding:*      T██████ (██████) G██████

*# of pages:*     2

*Notes:*

CONFIDENTIALITY NOTICE

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

April 1, 2008

Mr. Young
Special Education Coordinator
Ballou High School
3401 4th Street, SE
Washington, DC 20032
By Fax: (202)645-3397

**Re:**    T█████ (█████) G██ (D.O.B. █████92)

Dear Mr. Young:

We spoke last month regarding the above-referenced student. As I stated previously, Terrell's father is primarily concerned with determining an appropriate school placement for T████. When we last spoke, you told me that you were unable to make any determinations regarding T█████ educational needs, or provide any services until Mr. Gage registers and provides proof of residency.

I understand that Mr. Gage has now completed the registration and residency verification process. Please take all necessary steps to ensure that a placement determination is made for T████ as soon as possible, and that T████ is provided an appropriate school placement to meet his educational needs.

Please schedule all MDT/Placement meetings through this office.

Thank you for your attention to this matter.

Sincerely,

Zachary E. Nahass
Tyrka & Associates, LLC

**TG9**

```
************************
***   TX REPORT   ***
************************

TRANSMISSION OK

JOB NO.              4002
DESTINATION ADDRESS  2026453397
PSWD/SUBADDRESS
DESTINATION ID
ST. TIME             04/01 10:58
USAGE T              00'44
PGS.                    2
RESULT               OK
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Mr. Young ~ Special Education Coordinator |
| *Fax Number:* | 202- 645-3397 |
| *From:* | Zachary Nahass |
| *Regarding:* | T█████ G███ |
| *# of pages:* | 2 |
| *Notes:* | |



# TYRKA &

## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264
♦

April 2, 2008

Office of the Registrar
Ballou Senior High School
3401 4th Street, SE
Washington, DC 20032
By Fax: (202)645-3397

Re:    T█████ (███████) G██ (D.O.B. ██████92)

Dear Registrar:

This firm represents the father of the above-referenced student. I am enclosing the
immunization certificate for T███ to complete his registration requirements. I believe
this document was previously submitted, but in the interest of completeness and
efficiency, I am sending an additional copy.

Sincerely,

Zachary E. Nahass
Tyrka & Associates, LLC

Enclosure: Immunization Certificate

**TG10**

MARYLAND DEPT. OF HEALTH AND MENTAL HYGIENE                MARYLAND IMMUNIZATION CERTIFICATE
/#6, Rev. 4/96 Center for Immunization

CHILD'S NAME ███████         LAST                    T████         FIRST              MI

SEX:   MALE ☑   FEMALE ☐        BIRTHDATE ███  ███  92
                                          MO.   DAY   YR.

COUNTY _Montgomery_        SCHOOL _St. Rosemont Soll_   GRADE _Kind._

PARENT      NAME _Thilsa Douglas_                          PHONE NO. (301) 975-1011
OR
GUARDIAN    ADDRESS _18614 Sandpiper Lane_     CITY _Gaithersburg_ ZIP _20879_

## RECORD OF IMMUNIZATION

| DOSE # | DTP-DtaP MO/DAY/YR | DT-Td MO/DAY/YR | Polio MO/DAY/YR | Hib MO/DAY/YR | Hep B MO/DAY/YR | DOSE # | M-M-R MO/DAY/YR | MEASLES* MO/DAY/YR | RUBELLA* MO/DAY/YR | MUMPS* MO/DAY/YR |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 12-21-92 | 12-21-92 | 12-21-92 | 2-23-93 | 1 | 1-24-94 | | | |
| 2 | 2-23-93 | 2-23-93 | 2-25-93 | 4-27-93 | 2 | 4-15-97 | | | |
| 3 | 4-27-93 | 1-24-94 | 4-27-93 | 1-24-94 | | Varicella** MO/DAY/YR | OTHER VAX MO/DAY/YR | OTHER VAX MO/DAY/YR | OTHER VAX MO/DAY/YR |
| 4 | 1-24-94 | 4-15-97 | 1-24-94 | | 1 | | | | |
| 5 | 4-15-97 | | | | 2 | | | | |

* Blood test verification of immunity and date may be entered in lieu of vaccination date     ** Blood test verification of immunity or chickenpox disease date may be entered in lieu of vaccination date

Tine - 8-5-94

PHYSICIAN,              TO THE BEST OF MY KNOWLEDGE,     Signed _Fr. Stella Notcugar, MD_
HEALTH OFFICIAL,        THE VACCINES LISTED ABOVE WERE                    (Parent signature not valid)
SCHOOL OFFICIAL,        ADMINISTERED AS INDICATED.      Title _physician_
OR DAY CARE PROVIDER                                    Date _4-15-97_

**LOST OR DESTROYED RECORDS:** (Must Be Reviewed and Approved by Local Health Department.)

I hereby certify that the immunization records of this child have been lost, destroyed or are unobtainable.

Signed _____                          Date _____
                    Parent or Guardian

---

COMPLETE THE APPROPRIATE SECTION BELOW IF THE CHILD IS EXEMPT FROM IMMUNIZATION ON MEDICAL OR
RELIGIOUS GROUNDS. ANY IMMUNIZATIONS THAT HAVE BEEN RECEIVED SHOULD BE ENTERED ABOVE.

**MEDICAL CONTRAINDICATION:**
The physical condition of the above pupil is such that immunization at this time would constitute a serious threat to his/her health.
This is a permanent condition ☐   temporary condition ☐   until _____
                                                                    MO/DAY/YR

Check appropriate box, indicate vaccine(s) and reasons: _____

Signed _____                          Date _____
                Physician or Health Official

**RELIGIOUS OBJECTION:**
I am the parent/guardian of the child identified above. Because of my bona fide religious beliefs and practices, I object to any immunization
being given to my child.

Signed _____                          Date _____
                    Parent or Guardian

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

JOB NO.              4008
DESTINATION ADDRESS  2026453397
PSWD/SUBADDRESS
DESTINATION ID
ST. TIME             04/02 13:26
USAGE T              01'06
PGS.                 3
RESULT               OK
```

# TYRKA &
## ASSOCIATES, LLC

1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*      Office of the Registrar ~ Ballou Senior High School

*Fax Number:*     202-645-3397

*From:*           Zachary Nahass

*Regarding:*      T████ (██████) G███

*# of pages:*     3

*Notes:*          Immunization Certificate



Challenging Minds. Building Character.

Rock Creek Academy, Inc.
4401 Connecticut Ave., NW
Washington, DC 20008
202.378.1400

April 10, 2008

Mr. Doug Tyrka
1726 Connecticut Ave., N.W.
Suite 400
Washington, DC 20009

> Re: T███████-G███
>     DOB: ███/92

Dear Mr. Tyrka,

Thank you for referring T███ █████-G███ to Rock Creek Academy. We have reviewed this information and feel that Rock Creek Academy can provide the required and appropriate services for T███. We will contact Mr. Michael Gage to schedule a follow up interview and tour of our facility. Currently we have limited space available. We can enroll T███ upon receipt of funding, pending space availability. Funding may be secured through parent payment, a DCPS Notice of Placement, or the results of a due process hearing or court order.

A copy of this referral packet has been forwarded to the office of Ruth Blake, Executive Director of the Non-Public Unit at DCPS.

If you have any questions or concerns regarding this referral, please contact me at the above listed number. Thank you for considering Rock Creek Academy as a possible placement for your client.

Sincerely,

Kendra Hill, MA
School Services

Cc:    Ruth Blake, Director, Non Public, Charter, Interagency Program

**TG11**

04/10/2008  THU 15:15  【JOB NO. 6830】 ☑002



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

May 8, 2008

Mr. Young
Special Education Coordinator
Ballou High School
3401 4th Street, SE
Washington, DC 20032
By Fax: (202)645-3397

**RE: T██ G██ (D.O.B. ████92)**

Dear Mr. Young:

DCPS has not provided an appropriate educational placement for the above-referenced student despite his father's requests for DCPS to do so. DCPS has not provided any school at all for T███ since he moved into the District of Columbia in February, 2008. Accordingly, Mr. Gage has obtained a placement for T███ at Rock Creek Academy, where T███ will attend, beginning Monday, May 14, 2008.

Sincerely,

Zachary E. Nahass
Tyrka & Associates, LLC

TG12

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

JOB NO.            4488
DESTINATION ADDRESS 2026453397
PSWD/SUBADDRESS
DESTINATION ID
ST. TIME          05/08 15:51
USAGE T           00'41
PGS.                2
RESULT            OK
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*     Mr. Young ~ Special Education Coordinator

*Fax Number:*    202-645-3397

*From:*          Zachary Nahass

*Regarding:*     T██ G██

*# of pages:*    2

*Notes:*



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

May 9, 2008

Karen D. Shaw, Principal
Ballou Senior High School
3401 4th Street, SE
Washington, DC 20032
By Fax: (202)645-3397

**Re:** T██████████) G██ (D.O.B. ██████92)

Dear Ms. Shaw:

This firm represents the father of the above-referenced student. Our client has recently received voicemail from your school indicating that DCPS does not have immunization records on file for T█████

Please find enclosed an April 2, 2008 letter which was delivered to you, along with a record of T█████ immunizations. I believe that these records may have been delivered to you by T█████ former school as well.

Sincerely,

Zachary E. Nahass
Tyrka & Associates, LLC

Enclosure: April 2, 2008 Letter and Immunization Certificate

**TG13**

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

JOB NO.                4518
DESTINATION ADDRESS    2026453397
PSWD/SUBADDRESS
DESTINATION ID
ST. TIME               05/09 18:12
USAGE T                01'03
PGS.                   3
RESULT                 OK
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*     Karen D. Smith – Ballou Senior High School

*Fax Number:*    202-645-3397

*From:*          Zachary Nahass

*Regarding:*     T██ G██

*# of pages:*    5

*Notes:*

CONFIDENTIALITY NOTICE



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**May 14, 2008**

Attorney-Advisor
Office of the General Counsel
District of Columbia Public Schools
Washington, DC 20002-4232

**RE: T███ G██ (D.O.B ███92)**

Attorney-Advisor:

A hearing has been scheduled for **1:00 p.m. on May 27, 2008,** to adjudicate a due process complaint filed on behalf of the above-captioned student. Pursuant to 20 U.S.C. § 1415(h)(2); 34 C.F.R. § 300.512(a)(2); and D.C. Mun. Regs. tit. 5 § 3031.1(b), the Petitioner hereby compels the following necessary and material witnesses:

1. Any DCPS employee and/or agent who has drafted notes of any meeting or telephone conversation, which DCPS intends to submit as evidence at this hearing.
2. Any DCPS employee and/or agent possessing information relevant to any defense DCPS intends to assert at this hearing.

This notice to compel witnesses is being provided consistent with § 800.1(4), Student Hearing Office Standard Operating Procedures. In the event that any of the identified witnesses will be unavailable, the Petitioner respectfully requests advance notice so indicating. In the absence of a response indicating otherwise, the Petitioner intends to exercise her right at hearing to confront and cross-examine the necessary and material witnesses identified herein.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

**TG14**

```
************************
***   TX REPORT   ***
************************

TRANSMISSION OK

JOB NO.              4550
DESTINATION ADDRESS 2024425097
PSWD/SUBADDRESS
DESTINATION ID
ST. TIME            05/14 17:49
USAGE T             00'21
PGS.                   2
RESULT              OK
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | OGC |
| *Fax Number:* | 202-442-5098 |
| *From:* | Douglas Tyrka |
| *Regarding:* | T███ G██ |
| *# of pages:* | 2 |
| *Notes:* | Notice Compelling DCPS Witness(es) |

CONFIDENTIALITY NOTICE

# *District of Columbia*

## Office of the State Superintendent of Education
### Office of Compliance & Review
### *State Enforcement and Investigation Division*
### *<u>confidential</u>*

H. St. Clair, Esq., Due Process Hearing Officer
1150 Fifth Street, SE, First Floor, Washington, D.C. 20003
Facsimile: (202) 698-3825

| | | |
|---|---|---|
| **In the Matter of** | ) | **IMPARTIAL** |
| | ) | **DUE PROCESS HEARING** |
| T██████ G████, student | ) | |
| Date of Birth: ███████ 1992 | ) | **<u>PRE-HEARING</u>** |
| | ) | **<u>CONFERENCE ORDER</u>** |
| Petitioner, | ) | |
| | ) | |
| versus | ) | |
| | ) | **Request Date:** May 9, 2008 |
| **The District of Columbia Public Schools,** | ) | **Conference Date:** May 23, 2008 |
| Attending: Not Attending, | ) | |
| | ) | |
| Respondent. | ) | |

2008 MAY 27  AM 9: 35

**Parent:**  Michael Gage
2008 savannah place, SE
Washington, D.C. 20020

**Counsel for the Parent/Student:**  Douglas Tyrka, Esq.
**Tryka & Assocaites, LLC**
1726 Connecticut Avenue, NW  Suite 400
Washington, D.C. 20009

**District of Columbia Public Schools:**  Christal Mims Williams, Esq., Attorney-Advisor
**Office of the General Counsel, DCPS**
825 North Capitol Street, NE - 9th Floor
Washington, D.C. 20002

This cover page will be detached before release of this <u>PRE- HEARING  CONFERENCE ORDER</u> as a public record.

i

**1. Pre-Hearing Conference Participants:** The Pre-Hearing Conference (PHC) was completed telephonically during the afternoon of Friday, May 23, 2008. Counsel for the Parent, the assigned Asst. Attorney General and the undersigned participated.

**2. JURISDICTION:** The PHC convened under Public Law 108-446, The Individuals with Disabilities Education Improvement Act of 2004 (IDEIA), Title 34 of the Code of Federal Regulations, Part 300, and Title V of the District of Columbia Municipal Regulations.

**3. INTRODUCTION:** In late February 2008, the student moved into the District of Columbia from Montgomery County, Maryland. On, March 6, 2008, the parent went to Ballou SHS, informed the staff that the student was a child with a disability and requested a meeting to determine an appropriate placement; the student was not and, to date, is not enrolled at a DCPS school. Counsel for the Parent twice wrote to DCPS requesting a meeting to discuss placement. To date, DCPS has not responded. On May 9, 2008, Counsel for the Parent filed the herein Complaint with the District of Columbia Office of the State Superintendent of Education (OSSE) on behalf of the parent and student complaining the District of Columbia Public Schools (DCPS) denied a Free Appropriate Public Education (FAPE) to the student. Specifically, Counsel for the Parent complained of failure on the part of DCPS to provide special education services to the student and, for relief, requested a private placement at Rock Creek Academy.

**4. The Parties waive a resolution session.**

**5. The ISSUES:** During the PHC it was determined that no issue of fact was then presented. That the remaining issue was a legal one: **When does the obligation of DCPS to make FAPE available arise?**

**6. The hearing:** The Student Hearing Office, OSSE, scheduled a hearing in this matter for 1:00 P.M., Tuesday, May 27, 2008 at the Student Hearing Office, OSSE, 1150 Fifth Street, SE - First Floor.

**7. ORDER: The hearing is cancelled. The parties will each file a brief by the close of business May 30, 2008 and, if any party wishes, a reply brief by the close of business June 4, 2008.**

Date: _May 27, 2008_

H. St. Clair Esq., Hearing Officer

Issued: _____
         Student Hearing Office, OSSE

*-end of document-*

## OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION
## STATE ENFORCEMENT AND INVESTIGATION DIVISION

|  |  |  |
|---|---|---|
| In re T██████, G███, | ) | Herbert St. Clair, Esq., |
| Special Education Student. | ) | Impartial Hearing Officer |
|  | ) |  |

## PETITIONER'S MEMORANDUM ON THE OBLIGATION TO PROVIDE FAPE, AND MOTION FOR JUDGMENT ON THE PLEADINGS AND DOCUMENTS

### INTRODUCTION

Pursuant to the Hearing Officer's May 27, 2008 Pre-Hearing Conference Order, the Petitioner submits this Memorandum of Law. The Petitioner respectfully requests that the Hearing Officer grant his requested relief based on the documents filed in this matter, and that he issue an order requiring DCPS: (1) to place and fund T████ at Rock Creek Academy ("RCA"), with transportation, retroactive to the date of his enrollment; (2) to fund independent comprehensive psychological, speech and language, and occupational therapy evaluations of T████, each at market rate; (3) within 15 days of receiving the results of the last of the independent evaluations, to convene an MDT meeting to review all of T████'s current evaluations, review and revise T████'s IEP as appropriate, and discuss and determine an appropriate compensatory education plan to compensate T████ for DCPS' denials of FAPE. In support of his Motion, the Petitioner states as follows.

### PROCEDURAL BACKGROUND

The Petitioner filed a due process complaint ("Complaint") on May 9, 2008, alleging: (1) that DCPS had failed timely to implement or revise T████'s IEP; (2) that DCPS had failed timely to order re-evaluations of T████; and (3) that DCPS had failed to provide an appropriate placement for T████. DCPS did not file a response to the

Petitioner's May 9, 2008 Complaint. This matter was scheduled for hearing on May 27, 2008.

On May 20, 2008, the Petitioner filed 5-day disclosures in the present matter. DCPS did not file disclosures in this case.

The Hearing Officer convened a pre-hearing conference on May 23, 2008. During the pre-hearing conference, the parties agreed that there was no dispute regarding the factual allegations in the Petitioner's Complaint, and that the case could be resolved as a matter of law.

The Hearing Officer issued a Pre-Hearing Conference Order on May 27, 2008. Through his order, the Hearing Officer cancelled the scheduled hearing on this matter, and ordered the parties each to file a brief by the close of business on May 30, 2008, addressing the issue of when the obligation of DCPS to make FAPE available arises.

## UNDISPUTED FACTUAL BACKGROUND

The following facts were alleged in the Petitioner's Complaint, and were undisputed by DCPS. Except as otherwise noted, the undisputed facts as stated here are drawn from the Hearing Officer's Pre-Hearing Order. [1]

1.      T███ moved into the District of Columbia from Montgomery County Maryland in late February, 2008.

2.      T███ had been determined eligible as a qualified child with a disability by his previous school, and an IEP had been developed for him. TG 7. [2]

---

[1] Where the Hearing Officer did not make an explicit finding in his Pre-Hearing Order, the Petitioner will refer to an alternative source in the record, or to an exhibit accompanying this Motion.
[2] "TG" followed by a number refers to the identified exhibit in the Petitioner's 5-day disclosures.

3.    T████'s most recent IEP prescribes specialized instruction for all of T████'s

academic subjects and 45 minutes of speech and language therapy, three times monthly.

Id.

4.    T████'s most recent evaluations are:

    a.   a psychological report dated November 10, 2000 (TG 3);

    b.   an educational evaluation dated November 13, 2000 (TG 4);

    c.   an occupational therapy ("OT") evaluation dated April 2, 2001 (TG 5); and

    d.   a speech and language evaluation dated April 12, 2002 (TG 6).

5.    On March 6, 2008, the Petitioner went to his neighborhood school, Ballou Senior

High School ("Ballou"), informed the staff at Ballou that T████ was a child with a

disability, and requested a meeting to determine an appropriate placement for Terrell.

6.    The Petitioner's counsel twice wrote to DCPS, requesting a meeting to discuss

placement for T████.

7.    On May 8, 2008, the Petitioner notified DCPS that the Petitioner had obtained an

acceptance for T████ at RCA, and that the Petitioner intended to enroll T████ at RCA

on May 12, 2008. TG 12.

8.    To date, DCPS has not:

    a.   convened an MDT meeting for T████;

    b.   ordered any evaluations of T████;

    c.   proposed an appropriate placement for T████, or any school at all; or

    d.   responded to the Petitioner's requests to convene an MDT meeting and

determine an appropriate placement for T████.

9.      On May 14, 2008, the Petitioner enrolled T⬛ at RCA; T⬛ has been attending RCA since then. Exhibit 1.

10.     RCA is a private, special education school in the District of Columbia. <u>Id.</u>

11.     Through a review of T⬛'s records, and an interview with T⬛, the administration at RCA determined that RCA could meet T⬛'s educational needs, that RCA was appropriate for T⬛, and that RCA could provide T⬛ with educational benefits. <u>Id.</u>

12.     T⬛ has been successful so far in his time at RCA. <u>Id.</u>

**LEGAL FRAMEWORK**

**I.    Obligation to Provide FAPE**

The purpose of the Individuals with Disabilities Education Act ("IDEA") is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).

The IDEA requires each participating state to implement policies and procedures to ensure that a free and appropriate public education is available to each child with a disability, residing within the state, between the ages of 3 and 21. 20 U.S.C. § 1412(a)(1)(A).

Each state must implement proactive policies and procedures to identify, locate and evaluate each child with a disability residing within the state, and to determine whether every child with a disability is receiving needed special education and related services. <u>Id.</u> at 1412(a)(3)(A).

In the case of an eligible child who transfers school districts between states within the same academic year, the LEA must provide the child with a free appropriate public education in accordance with the previously existing IEP until such time as the LEA conducts evaluations and develops a new IEP. 20 U.S.C. § 1414(d)(2)(C)(i)(II).

## II.    Placement

The IDEA requires each local educational agency, State educational agency, or other State agency, to have in effect, for each child with a disability in the agency's jurisdiction, an individualized education program. 20 U.S.C. § 1414(d)(2)(A). An individualized education program includes, among other things, the identity of a particular school which is reasonably calculated to ensure that the child receives educational benefits. Id. at §1414(d)(1)(A)(i)(VII); A.K. v. Alexandria City Sch. Bd., 484 F.3d 672 (4th Cir. 2007), citing Bd. of Ed. of the Hendrick Hudson Central Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 207 (1982).

## III.    Evaluations

The LEA is required to ensure that an eligible child is evaluated in all areas of suspected disability at least once every three years, unless the parent and the local education agency agree that reevaluation is unnecessary. 20 U.S.C. § 1414(a)(2)(B)(ii).

## IV.    Relief

Where FAPE has been denied, the IDEA authorizes an award of "appropriate relief", and requires the award to be based on equitable considerations. 20 U.S.C. § 1415(i); School Comm. of Burlington v. Dept. of Ed. of Mass., 471 U.S. 359, 374 (1985). Where the LEA fails to provide appropriate educational services, the IDEA allows awards of reimbursement to parents who obtain services on their own, or awards for the

services themselves. <u>Bd. of Ed. of Oak Park & River Forest High School Dist. v. Ill. State</u>

<u>Bd. of Ed.</u>, 79 F.3d 654, 655-56. If the local education failed to comply with it's duties

under the IDEA, "appropriate relief" includes a prospective injunction directing the LEA

to comply. <u>Burlington</u> at 370.

### ARGUMENT

In this case, T███ was deemed eligible for specialized instruction and related

services by his former school in Montgomery County, Maryland. T███ moved into, and

became a resident of, the District of Columbia in February, 2008. However onerous the

law may be to the LEA, by virtue of his residency in the District of Columbia, and his

eligibility for specialized instruction and related services, T███ was owed, upon arrival

in the District, a free and appropriate public education by the District of Columbia Public

Schools.

Regardless of the LEA's obligation to seek out and provide services to each

qualified child with a disability, the Petitioner proactively sought to obtain services for

T███. Both in person and via multiple written requests, the Petitioner asked DCPS to

convene an MDT meeting to determine an appropriate placement for T███.

In neglect of its "child-find" duties, and despite the Petitioner's repeated requests,

DCPS has done nothing to ensure that T███ receives FAPE. DCPS has not implemented

T███'s current IEP, nor begun evaluations to develop a new IEP. DCPS has never

offered a school placement for T███ at all, much less a placement designed to meet his

unique needs.

Where DCPS has not offered an appropriate placement or done anything to ensure

that T███ receives FAPE, the Petitioner was within his rights to seek out and obtain

appropriate educational services independently. RCA is an appropriate placement which is providing educational benefits to T███.

T███'s evaluations are all quite outdated under the IDEA's triennial evaluation requirement. Much of the blame for the absence of any current evaluations may be attributed to T███'s former school district. Nevertheless, DCPS is now responsible, the evaluations are out of date, and in the almost three months since the Petitioner first visited Ballou, DCPS has taken no steps to obtain current assessments of T███'s needs and abilities.

Where DCPS has done nothing to ensure that T███ is reevaluated in all areas of suspected disability, the Hearing Officer should authorize the Petitioner to obtain independent evaluations at DCPS' expense.

## CONCLUSION

For the foregoing reasons, the Hearing Officer should find that DCPS denied FAPE to T███ by failing to perform timely re-evaluations in all areas of suspected disability, failing to implement or revise T███'s IEP, and failing to provide an appropriate placement for T███. The Hearing Officer should order DCPS:

1. to fund and place T███ at Rock Creek Academy, retroactive to the date of his enrollment, May 14, 2008;

2. to fund independent comprehensive psychological, speech and language, and OT evaluations of T███, each at market rate;

3. to convene an MDT meeting within 15 days of receiving the results of the independent evaluations to:

   i)  review all current evaluations;

ii) review and revise T█████'s IEP as warranted; and

iii) discuss and determine appropriate compensatory education for DCPS' denials

of FAPE described above.

**Respectfully Submitted,**

Zachary E. Nahass

Tyrka & Associates, LLC

1726 Connecticut Ave N.W.,

Suite 400

Washington, DC 20009

202-265-4260 phone

202-265-4264 fax

### Certificate of Service

I hereby certify that a copy of this Motion was sent via facsimile to Counsel for the Respondent on May 30, 2008.

**Respectfully Submitted,**

Zachary E. Nahass
Tyrka & Associates, LLC
1726 Connecticut Ave N.W.,
Suite 400
Washington, DC 20009
202-265-4260 phone
202-265-4264 fax

OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION
STATE ENFORCEMENT AND INVESTIGATION DIVISION

In re T█████, G████,                    )          Herbert St. Clair,
      Special Education Student.          )          Impartial Hearing Officer
                                         )
                                         )

## VERIFIED STATEMENT OF KEREN PLOWDEN

1.  I am over 18 and competent to testify regarding the matters described herein.

2.  I am the Executive Director of Student Services at Rock Creek Academy, a private special education school in the District of Columbia.

3.  I have reviewed T████ G███'s file, including his evaluations and most recent IEP, and have interviewed T████.

4.  Rock Creek Academy has accepted T████ for admission, and T████ has been attending Rock Creek Academy since May 14, 2008.

5.  T████ has been successful thus far at Rock Creek Academy.

6.  Rock Creek Academy has accepted students with educational profiles similar to T████'s in the past and those students have progressed here.

7.  DCPS has placed students at Rock Creek Academy in the past by means other than due process hearings.

8.  Rock Creek Academy is an appropriate educational placement for T████.

9.  Rock Creek Academy can meet T████'s needs and can provide him with educational benefit.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Exhibit 1**

Executed on __5/39/08__

Keren Plowden

```
************************
***  MULTI TX/RX REPORT  ***
************************
```

JOB NO.            4737
PGS.               12
TX/RX INCOMPLETE   -----
TRANSACTION OK     [001] 2026983825              SHO
                   [002] 2024425098              OGC

ERROR              -----

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**_Recipient:_**     SHO ~ Hearing Officer St. Clair
                     & OGC ~ Christal Williams
**_Fax Number:_**

**_From:_**          Zachary Nahass

**_Regarding:_**     T████ G████

**_# of pages:_**

**_Notes:_**         Petitioner's Closing Memorandum

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all

# *District of Columbia*

## Office of the State Superintendent of Education
### Office of Compliance & Review
### *confidential*

H. St. Clair, Esq., Due Process Hearing Officer
1150 Fifth Street, SE, First Floor, Washington, D.C. 20003
Facsimile: (202) 698-3825

| | | |
|---|---|---|
| **In the Matter of** | ) | **IMPARTIAL** |
| | ) | **DUE PROCESS HEARING** |
| T_____, G____, student | ) | |
| Date of Birth: _____, 1992 | ) | |
| | ) | **DECISION & ORDER** |
| Petitioner, | ) | |
| | ) | |
| versus | ) | |
| | ) | Request Date: May 9, 2008 |
| **The District of Columbia Public Schools,** | ) | Conference Date: May 23, 2008 |
| Attending: Not Attending, | ) | |
| | ) | |
| Respondent. | ) | |

**Parent:**  Michael Gage
2008 savannah place, SE
Washington, D.C. 20020

**Counsel for the Parent/Student:**  Douglas Tyrka, Esq.
**Tryka & Assocaites, LLC**
1726 Connecticut Avenue, NW    Suite 400
Washington, D.C. 20009

**District of Columbia Public Schools:**  Christal Mims Williams, Esq., Attorney-Advisor
**Office of the General Counsel, DCPS**
825 North Capitol Street, NE - 9th Floor
Washington, D.C. 20002

An INDEX of NAMES is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant witnesses. The index will be detached before release of this DECISION & ORDER as a public record.

## BACKGROUND

In late February 2008, the student, a child with a disability, moved into the District of Columbia from Montgomery County, Maryland. On March 6, 2008, the Petitioner/parent went to Ballou SHS, informed the staff that the student was a child with a disability and requested a meeting to determine an appropriate placement; the student was not and, to date, is not enrolled at a DCPS school. Counsel for the Parent twice wrote to DCPS requesting a meeting to discuss placement. To date, DCPS has not responded. On May 9, 2008, Counsel for the Parent filed the herein Complaint with the District of Columbia Office of the State Superintendent of Education (OSSE) on behalf of the parent and student complaining the District of Columbia Public Schools (DCPS) denied a Free Appropriate Public Education (FAPE) to the student. Specifically, Counsel for the Parent complained of failure on the part of DCPS to provide special education services to the student and, for relief, requested a private placement at Rock Creek Academy.

The Student Hearing Office, OSSE, scheduled a hearing in this matter for 1:00 P.M., Tuesday, May 27, 2008 at the Student Hearing Office, OSSE, 1150 Fifth Street, SE - First Floor. During the Pre-hearing Conference it was decided that this matter did not present any factual issues. Only the below setout legal issue remained. The hearing was cancelled and the parties were each ordered to file a brief by the close of business May 30, 2008; if any party wished, a reply brief could have been filed by the close of business June 4, 2008. Petitioner filed a brief on June 2, 2008.

## JURISDICTION

The hearing convened under Public Law 108-446, The Individuals with Disabilities Education Improvement Act of 2004, Title 34 of the Code of Federal Regulations, Part 300, and Title V of the District of Columbia Municipal Regulations.

## ISSUE: When does the obligation of DCPS to make FAPE available arise?

## FINDINGS of FACT

By facsimile dated May 20, 2008, the Petitioner disclosed 7 witnesses and 14 documents. The Petitioner's documents were placed into the record and are referenced/footnoted herein where relevant.

The Petitioner filed a brief on June 2, 2008.

In consideration of the documents and the Petitioner's brief, the hearing officer found the following facts:

1. The Student was identified as a child with a disability by the Montgomery County, Maryland Public School System and received special education

1 of 3 pages

services there before moving to the District of Columbia.[1]

2. The student moved into the District of Columbia in late February 2008.

3. On March 6, 2008, the Petitioner went to the neighborhood DCPS school, Ballou Senior High School and informed the school staff that the student was a child with a disability; that the student had recently moved into the District of Columbia from Montgomery County, Maryland. Petitioner by mail twice requested the school staff to arrange an MDT/IEP meeting for the student to attend a DCPS school as a child with disability.[2]

4. DCPS never attempted to arrange an MDT/IEP meeting for the student.

5. The student was never enrolled as a student at a DCPS school.

# DISCUSSION and CONCLUSIONS of LAW

### DCPS was obligated to make FAPE available to the student when he enrolled at a DCPS school.

*IDEIA 2004* requires DCPS to fully evaluate every child suspected of having a disability within the jurisdiction of the District of Columbia, ages 3 through 21, determine eligibility for special education services and, if eligible, provide same through an appropriate IEP and Placement.

Regulation 34 CFR 300.111, "child find," was not applicable in this matter, as the student had been identified as a child with a disability when he moved into the District of Columbia in February 2008; he was identified while attending school in Montgomery County, Maryland.

Petitioner requested an MDT/Placement meeting to determine an appropriate educational placement for the student. The Petitioner and Counsel for the Petitioner communicated with the neighborhood school, Ballou SHS, about "registering" the student, but the student was never enrolled or "registered" at a DCPS school.

The controlling regulation is 34 CFR 300.323(f).[3] When a child with a disability moves from one state to another state, ". . . and enrolls in a new school . . ." the new school must make FAPE available with services "comparable" to those setout in the IEP from the previous public agency until the new public agency, if necessary, conducts evaluations and develops, adopts and implements a new IEP, if appropriate. The student must attend the new school so the new school staff can actually observe him and his functioning in the new school environment; that did not happen here.

2 of 3 pages

---

[1] Petitioner Document No 7
[2] Petitioner Documents Nos 8-14
[3] 20 U.S.C. 1414(d)(2)(c)(i)(II)

Petitioner incorrectly stated that DCPS was obligated to make FAPE available to the student " . . . upon arrival in the [District of Columbia] . . . ."[4]  In this case, DCPS is not obligated to make FAPE available to the student until he has enrolled at a DCPS school and has actually begun to attend.

The student should enroll at a DCPS school and prefect his right a FAPE in the District of Columbia.

Lastly, the District of Columbia Compulsory School Attendance law, D.C. Code 38-202(a), required the 15-year-old student to attend school immediate after his arrival in the District of Columbia in February 2008.

In consideration of the foregoing, the hearing officer made the following

## ORDER

The herein May 9, 2008 Complaint is DISMISSED.

**This is THE FINAL ADMINISTRATIVE DECISION. Appeal can be made to a court of competent jurisdiction within ninety (90) days of the issue date of this decision.**

Date: _June 6, 2008_

_____
H. St. Clair, Esq., Hearing Officer

Issued: _____
Student Hearing Office, OSSE

3 of 3 pages

---

[4] Petitioner's brief, page 6, paragraph 1 of ARGUMENT

# H. St. Clair, Esq.
## Attorney at Law

215 Ninth Street, SE    Suite 102

Washington, D.C.  20003-2113

Tel. & Facsimile  (202) 543-2409

## CERTIFICATION of RECORD

RE:    The matter of  T_____, G_____, DOB:_____, 1992

TO:    Student Hearing Office, OSSE

FROM:  H. St. Clair, Esq., IHO    Date: June 6, 2008

    Having rendered a decision in the above referenced matter, I am returning herewith the administrative record made before me as the assigned independent hearing officer.

This administrative record includes:

    1. The Pre-Hearing Conference Order (PHC) completed by me and dated May 27, 2008.

    2. The Hearing Officer Decision/Determination (HOD) completed by me and dated June 6, 2008.

    3. A packet of Petitioner Exhibits 1 thru 14 dated May 20, 2008.

    4. A copy of Petitioner's brief filed June 2, 2008.

    As only a legal issue remained after the PHC, the hearing was cancelled.

    Hereby, I certify that the above numbered administrative record in this matter was made before me and that it is true, correct and complete.

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL GAGE,                    )
                  Plaintiff,    )
                                )
v.                              )
                                )
DISTRICT OF COLUMBIA,           )
                  Defendant.    )
                                )

### VERIFIED STATEMENT OF RICHARD PUTNEY

1. I am over 18 years of age and competent to testify regarding the matters described herein.

2. I am the director of the high school program at Rock Creek Academy ("Rock Creek"), a private special education school in the District of Columbia.

3. Michael Gage's son T.G. was accepted to Rock Creek and has been attending classes here since May 14, 2008.

4. Rock Creek accepted T.G. for admission with the expectation that funding for his tuition, retroactive to his date of admission, would be secured from the District of Columbia Public Schools through an administrative hearing or otherwise.

5. Since May 14, 2008, T.G. has received educational benefits and has been successful in Rock Creek's academic program.

6. Absent a source of funding for his tuition, Rock Creek will only permit T.G. to attend through the end of our school year, in the beginning of August, 2008.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                         Richard Putney

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **MICHAEL GAGE,**   ) | |
|            **Plaintiff,**   ) | |
| ) | **Civil Action No. 08-1159 (EGS)** |
| **v.**   ) | |
| ) | |
| **DISTRICT OF COLUMBIA,**   ) | |
|            **Defendant.**   ) | |

**ORDER**

On consideration of the Plaintiff's motion for a preliminary injunction and any opposition

thereto, it is, this _____ day of _____, 2008 hereby

**DECLARED** that DCPS denied FAPE to T.G. by failing timely to perform re-evaluations of

      T.G. in all areas of suspected disability, failing timely to implement or revise T.G.'s IEP,

      and failing to provide an appropriate placement for T.G.; and it is

**ORDERED** that DCPS shall fund and place T.G. at Rock Creek Academy, retroactive to the

      date of his enrollment; and it is further

**ORDERED** that DCPS shall fund independent comprehensive psychological, speech and

      language, and OT evaluations of T.G., each at market rate; and it is further

**ORDERED** that DCPS shall convene an MDT meeting within 15 days of receiving the results of

      the independent evaluations, and at that meeting shall review all of T.G.'s current

      evaluations, review and revise his IEP as appropriate, and discuss and determine

      appropriate compensatory education to compensate T.G. for DCPS' denials of FAPE

      identified above.

 

                                      _____
                                      Emmet G. Sullivan
                                      United States District Judge