**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

**MICHAEL GAGE,**

        **Plaintiff,**

        **v.**

**DISTRICT OF COLUMBIA,**

        **Defendant.**

_____

**Civil Action No. 1:08-cv-01159 (EGS)**

## DEFENDANT'S (1) OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND (2) MOTION TO DISMISS

The Defendant, by counsel, hereby responds to Plaintiff Michael Gage's ("Plaintiff's") Motion for a Preliminary Injunction (the "Motion"), filed herein on July 3, 2008.  For the reasons set forth in the accompanying Memorandum of Points and Authorities, there is no merit to the Motion and the action herein should be dismissed forthwith.

## PRELIMINARY STATEMENT

On July 1, 2008, Plaintiff filed his Complaint for Injunctive and Declaratory Relief ("Complaint") with this Court, pursuant to the Individuals With Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400 *et seq.* ("IDEIA").  Plaintiff appeals a Hearing Officer's Decision ("HOD"), issued June 6, 2008, that found that the District of Columbia Public Schools ("DCPS") were not obligated to make a free appropriate public education ("FAPE") available to plaintiff's fifteen-year-old son, T.G., until after T.G. enrolled at a DCPS school and had actually begun to attend.  Compl. ¶ 29.

On July 3, 2008, Plaintiff filed his Motion, alleging that T.G. will suffer irreparable harm if the Court does not grant plaintiff preliminary relief in the form of funding for T.G.'s placement at Rock Creek Academy.  Motion, p. 2.  Such monetary relief, however, is outside the scope of the HOD's ruling on a purely legal question, thus depriving this Court of jurisdiction.  In effect, Plaintiff seeks to subvert the administrative framework provided by IDEIA by requiring this Court, rather than DCPS, to make a placement decision for T.G. at Rock Creek Academy.  Notably, Plaintiff has delayed DCPS' processing of T.G.'s enrollment because T.G.'s immunizations are outstanding, and D.C. law requires immunizations before a student may attend a DCPS school.  *See* District of Columbia Public School's Response to Parent's Administrative Due Process Complaint Notice ("DCPS Response"), attached as Exhibit 1; *see also* 22 D.C. Mun. Regs. §§ 130-136.

I.     **The Statutory Framework Involved in This Action**.

The purpose of IDEIA is "to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs. . . ." 20 U.S.C. § 1400(d)(1)(A). The Act requires school districts to adopt procedures to ensure appropriate educational placement of disabled students.  *See* 20 U.S.C. § 1413.  School districts must also develop comprehensive plans for meeting the special educational needs of disabled students.  *See* 20 U.S.C. § 1414(d)(2)(A).  These plans, known as Individualized Educational Plans ("IEPs"), must include a written "statement of the child's present levels of educational performance, . . . a statement of the measurable annual goals, [and] a statement of the special education and related services . . . to be provided to the child." *See* 20 U.S.C. § 1414(d)(1)(A).

A student's eligibility for a FAPE under IDEIA is determined by the results of testing and evaluating the student, and the findings of a "multidisciplinary team" and/or "individualized educational plan team" ("MDT/IEP team"). Such a team consists of the parents and teachers of the disabled student, as well as other educational specialists, who meet in a collaborative process to determine how best to accommodate the needs of the student and provide a FAPE. *See* 20 U.S.C. § 1414(d)(1)(B).

The IDEIA also guarantees parents of disabled children the opportunity to participate in the evaluation and placement process. *See* 20 U.S.C. §§ 1414(f), 1415(b)(1). "The IEP team shall conduct an initial evaluation of a child within a reasonable time of receiving a written referral and parental consent to proceed within timelines consistent with Federal law and D.C. Code § 38-2501(a)." 5 D.C. Mun. Regs. § 3005.2. The regulations require DCPS to use "a variety of assessment tools and strategies" to gather "relevant functional and developmental information about the child." *Id.* § 3005.9(b). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, *see* 20 U.S.C. §§ 1415 (b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel." 20 U.S.C. § 1415(h)(1). A qualified impartial hearing officer conducts the due process hearing in accordance with IDEIA.

Parents "aggrieved by" a hearing officer's findings and a decision may bring a civil action in either state or federal court. 20 U.S.C. § 1415(i)(2); 5 D.C. Mun. Regs. § 3031.5. The district court has remedial authority under the Act, and broad discretion to grant "such relief as the court determines is appropriate" under IDEIA as guided by the goals of the Act. 20 U.S.C. § 1415(i)(2)(B)(iii).

II.     **The Factual Background to This Complaint and Motion.**

The timeframe immediately pertinent here began in late February, 2008, when

Plaintiff and his fifteen-year-old son, T.G., moved into the District of Columbia from

Montgomery County, Maryland.  HOD ¶ 2.  The Montgomery County Public Schools had

identified T.G. as a child with a disability and developed an IEP for him.  HOD ¶ 1.  On

March 6, 2008, Plaintiff alleges he went to his neighborhood DCPS school, Ballou Senior

High School, and requested a meeting regarding placement for T.G.  HOD ¶ 3.  Plaintiff

further alleges that he twice requested, by mail, Ballou's staff to arrange an MDT/IEP

meeting for T.G., but that the staff never arranged such a meeting.  HOD ¶¶ 3-4.  Plaintiff

was never enrolled as a student at any DCPS school.  HOD ¶ 5.

On May 9, 2008, Plaintiff initiated administrative proceedings pursuant to the

Individuals With Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400 *et

seq.* ("IDEIA"), by filing an administrative "due process complaint" with the District of

Columbia Office of the State Superintendent of Education.  Compl. ¶ 23.   Plaintiff alleged

that DCPS had failed to provide a free appropriate public education to his fifteen-year-old

son, T.G.  Compl. ¶¶ 12-23.  At the pre-hearing conference on May 23, 2008, the parties

agreed that there were no issues of fact and that the only remaining issue was a legal

question: "When does the obligation of DCPS to make FAPE available arise?"  HOD, p. 1;

Compl. ¶¶ 24-25.  The HOD, issued June 6, 2008, found that "DCPS is not obligated to

make FAPE available to the student until he has enrolled at a DCPS school and has actually

begun to attend."  HOD, pp. 2-3; Compl. ¶ 29.  The HOD further instructed plaintiff to

enroll his son in a DCPS school to perfect his right to a FAPE in the District of Columbia.

HOD, p. 3.

On July 1, 2008, Plaintiff filed his Complaint, and on July 3, 2008, Plaintiff filed his Motion, alleging that T.G. will suffer irreparable harm if the Court does not grant plaintiff preliminary relief in the form of funding for T.G.'s placement at Rock Creek Academy, a private school in which plaintiff unilaterally enrolled T.G. at on May 12, 2008.  Motion, p. 2.  Yet the HOD answered only a narrow legal question and did not even discuss placement options for T.G.  Therefore, this action – and even more peremptorily, this Motion – seek to subvert the statutory and administrative framework of IDEIA by having this Court, rather than DCPS, determine a placement for T.G.  In addition, Plaintiff improperly seeks a monetary award in his Motion, which is not a form of injunctive relief.

## ARGUMENT

The Complaint herein seeks a declaratory judgment that DCPS violated the IDEIA and denied FAPE to T.G., as well as injunctive relief requiring DCPS (1) to fund T.G. at a private institution, Rock Creek Academy, with transportation, retroactive to the date of his enrollment on May 12, 2008; (2) to fund independent evaluations of T.G.; and (3) to convene a multidisciplinary team ("MDT") meeting to review those evaluations to review and revise, if appropriate, T.G.'s current Individualized Educational Plan ("IEP") and resultant placement.  Compl. p. 1.  The Motion herein seeks the same relief.

## I.     The Applicable Standards for Injunctive Relief.

In order to obtain injunctive relief, Plaintiff must satisfy *each* prong of the following four-part test: (1) that there is a substantial likelihood of success on the merits; (2) that there is an imminent threat of irreparable harm should the relief be denied; (3) that more harm will result to Plaintiff from the denial of the injunction than will result to the Defendant from its grant; and (4) that the public interest will not be disserved by the issuance of the requested

order.  *District of Columbia v. Group Ins. Admin.*, 633 A.2d 2, 21–24 (D.C. 1993); *Barry v.*

*Washington Post Co*., 529 A.2d 319, 320–321 (D.C. 1987); *In re Antioch Univ*., 418 A.2d

105, 109 (D.C. 1980); *Wieck v. Sterenbuch*, 350 A.2d 384, 387 (D.C. 1976); *Washington*

*Metro. Area Transit Comm'n v. Holiday Tours, Inc*., 559 F.2d 841, 843 (D.C. Cir. 1977);

*Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir.

1958).

II.    **The Plaintiff Is Not Entitled To Injunctive Relief In This Case.**

A.    **Prong 1: Plaintiff will not succeed on the merits of his claims and his complaint should be dismissed because he is seeking relief that is outside the scope of the HOD and that, if granted, would circumvent the statutory and administrative framework of IDEIA.**

In *Spencer v. District of Columbia*, 416 F. Supp.2d 5 (D.D.C. 2006), this Court held

that the plaintiff had not met the first prong of the preliminary injunction analysis –

likelihood of success on the merits – because she had not exhausted her administrative

remedies and because she had not shown that exhaustion would be futile or inadequate.[1]

*Spencer*, 416 F. Supp.2d at 10.  The *Spencer* opinion provides an excellent summary of

relevant IDEIA procedures, including the administrative procedures required to be

exhausted before resort to this Court:

> Congress enacted IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." *Calloway v. Dist. of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000 (quoting 20 U.S.C. §1400(d)(1)(A)).  Under IDEA, school districts must develop IEPs to meet the special educational needs of disabled students.  *Id.* (citing 20 U.S.C §1414(d).  The IEP must include "a statement of the child's present levels of educational performance[,] a statement of measurable

---

[1] The defendants in *Spencer* had cancelled the plaintiff's resolution session after she requested that her complaint be withdrawn, and then after the plaintiff renewed her administrative complaint, she alleged that the defendants had missed the deadline for conducting a resolution session.  *Spencer*, 416 F. Supp.2d at 10-12.

annual goals, [and] a statement of the special education and related services . . . to be provided to the child." *Id.* As a procedural safeguard, IDEA affords parents the right to examine all records regarding their child's disability and to participate in meetings regarding the child's identification, evaluation, and educational placement. 20 U.S.C. § 1415(1). If a parent objects to the child's identification, evaluation, or educational placement, the parent may request a due-process hearing before a hearing officer. *Calloway,* 216 F.3d at 3 (citing 20 U.S.C. §§ 1415(b)(6), (f)(1)). A parent who is aggrieved by a hearing officer's determination ("HOD") may bring suit in state or federal court. *Id.* (citing 20 U.S.C. §1415(i)(2).

       The administrative process set forth by IDEA as not "just an optional stop on the way to court." *Andersen by Andersen v. Dist. of Columbia*, 877 F.2d 1018, 1025 (D.C. Cir. 1989). Rather, the philosophy underpinning IDEA requires a plaintiff to exhaust administrative remedies before turning to the court. *Cox v. Jenkins*, 878 F.2d 414, 418 (D.C. Cir. 1989). As the D.C. Circuit has pointed out,

> [t]he exhaustion doctrine serves several important purposes: it prevents courts from interrupting the administrative process permanently; it allows the agency to apply its specialized expertise to the problem; it gives the agency an opportunity to correct its own errors; it ensures that there will be a complete factual record for the court to review; and it presents the parties from undermining the agency by deliberately flouting the administrative process.

*Id*. at 419. Under IDEA, a plaintiff's failure to exhaust administrative remedies deprives the court of authority to hear the suit. 20 U.S.C. §1415(c), (e); *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003) (noting that the circuit treats exhaustion as a jurisdictional requirement in IDEA cases); *Cox*, 878 F.2d at 422 (concluding that the district court "had no authority to hear" a suit in which the plaintiffs had failed to exhaust their remedies); *Lemon v. Dist. of Columbia*, 920 F. Supp. 8, 10 (D.D.C. 1996) (stating that exhaustion "is a jurisdictional prerequisite to any claim for judicial relief arising out of the IDEA"). Only "where exhaustion would be futile or inadequate: may a plaintiff bypass the administrative process and proceed to court. *Cox,* 878 F.2d at 419 (citing *Honig v. Doe*, 484 U.S. 305, 326-27 (1988)). The plaintiff bears the burden of showing futility or inadequacy. *Id.*; *Moss v. Smith*, 794 F. Supp. 11, 13 (D.D.C. 1992).

*Spencer*, 416 F. Supp.2d at 9-10.

       In this case, to the extent Plaintiff is asking this Court to place T.G. at Rock Creek Academy, the Plaintiff has not exhausted his administrative remedies. At the administrative pre-hearing conference on May 23, 2008, the parties agreed that the only remaining issue was a legal one, unconnected to the appropriate placement for T.G. HOD, p. 1. The HOD

decision found only that DCPS' obligation to make FAPE available to T.G. arises only after

T.G. enrolls in a DCPS school.  HOD pp. 2-3.  The HOD makes no mention of any IEP or

appropriate placements for T.G.  This Court has no subject matter jurisdiction over an

IDEIA claim that has not first been pursued through administrative channels.  20 U.S.C.

§§1415(c), (e); *Rann*, 346 F.3d at 195; *Cox*, 878 F.2d at 422; *Lemon v. Dist. of Columbia*,

920 F. Supp. at 10.  Therefore, because this Court's jurisdiction is limited to the narrow

legal issue addressed in the HOD, Plaintiff's request for funding for his unilaterally chosen

placement of T.G. at Rock Creek Academy is outside the scope of the HOD and should be

denied.

    Plaintiff's challenge to the narrow legal question decided by the HOD is equally

unlikely to succeed.  The Hearing Officer based his decision on 34 C.F.R. § 300.323(f),

which states that when a child with a disability moves from one state to another state "and

enrolls in a new school . . .", the new school must make FAPE available with services

"comparable to those set out in the IEP from the previous public agency until the new

school conducts its own evaluations, if necessary, and implements a new IEP, if

appropriate.  34 C.F.R. § 300.323(f).  Plaintiff fails to address the merits of the HOD

decision – specifically, the language of the regulation and the fact that T.G> was never

enrolled in a D.C.P.S. school.

     Furthermore, the cases Plaintiff cites are inapposite because they address the

situations of students who were already enrolled at the time.  In *District of Columbia v.*

*Abramson*, 493 F. Supp.2d 80 (D.D.C. 2007), the student's parents took the child out of a

DCPS school, where he was already enrolled, and placed him in a private school without

the consent of DPCS.  The *Abramson* court held that (1) the student's private placement did

not relieve DCPS of its obligation to continue its MDT/IEP evaluation of the student; and (2) the parents would be entitled to reimbursement only if DCPS had violated IDEA, the private school placement was an appropriate placement, and the cost of the private education was reasonable. *Abramson*, 493 F. Supp.2d at 86-87; *see also* 20 U.S.C. § 1412(a)(10)(C). Accordingly, the *Abramson* Court remanded the case back to the Hearing Officer with respect to the tuition reimbursement issue.

Similarly, in *Hawkins v. District of Columbia*, 539 F. Supp.2d 108 (D.D.C. 2008), the student had been registered at and attending the Center for Mental Health Head Start ("the Center"), a DCPS provider, and had been referred to DCPS for an evaluation and determination of whether the child was eligible to receive special education services. However, after four due process hearings and four HODs, DCPS still had not conducted an MDT/IEP meeting to determine whether the child was eligible. *Hawkins*, 539 F. Supp.2d at 110-111. At the fourth hearing, plaintiff asserted the DCPS had failed to comply with the previous HOD, and DCPS responded that it could not set up the MDT/IEP meeting because the child could not be located, due to the child's failure to register at his neighborhood elementary school. *Hawkins*, 539 F. Supp.2d at 111. DCPS did not challenge the underlying referral and compliance with the appropriate regulations at any of the due process hearings. The *Hawkins* court held that DCPS did, in fact, violate the HOD by failing to conduct an MDT/IEP meeting. *Hawkins*, 539 F. Supp.2d at 112. Furthermore, the *Hawkins* court found that DCPS had an obligation under the "child-find" provisions of IDEIA, 20 U.S.C. § 1412(a)(3)(A) and 34 C.F.R. § 300.111, to locate and complete the evaluation process. *Hawkins*, 539 F. Supp.2d at 114-115.

Finally, in *Nesbit v. District of Columbia*, 2003 U.S. Dist. LEXIS 26306 (D.D.C. March 31, 2003), the student was enrolled at a public charter school in the District of Columbia, and the Court held that DCPS' responsibility to identify, locate and evaluate children in need of services extended to children enrolled in public charter schools in the District of Columbia.

In this case, unlike the students in *Abramson*, *Hawkins* and *Nesbit*, T.G.'s enrollment is incomplete because T.G.'s immunizations are still outstanding, and D.C. law requires current immunizations before a student may attend any DCPS school. *See* DCPS Response, ¶¶ 4-6 (attached as Ex. 1); *see also* 22 D.C. Mun. Regs. §§ 130-136. Rather than complete this enrollment step or raise this issue before the Hearing Officer, Plaintiff filed this action. Moreover, unlike the *Hawkins* case, the HOD in this case specifically states that the "child-find" regulation does not apply because T.G. had previously been identified as a child with a disability before he moved into the District of Columbia. Consequently, Plaintiff's quoted language from the *Hawkins* opinion, concerning the Court's discussion of DCPS' obligations to provide a FAPE to children as young as three years old, as well as the "child find provisions," is distinguishable from the facts in this case:

> And even if [the child] was not registered there as of that date, DCPS cites to no law to support its position that this alone would simply make all of its IDEA obligations disappear as to [the child]. In fact, the IDEA seems to contemplate the possibility that a student may not be enrolled in school at all prior to an initial evaluation since a FAPE is guaranteed to children as young as three years old. 20 U.S.C. § 1412(a)(1). . . . Thus, even the possibility that [the child] may not have been registered in any school does not, <u>by itself</u>, eradicate DCPS's IDEA obligations since [the child] was previously identified for an eligibility determination.

*Hawkins*, 539 F. Supp.2d at 114-115 (emphasis added). Therefore, Plaintiff is unlikely to prevail on his claims, and his Motion must be denied.

**B.    Prong 2: There has been no demonstration that the student will suffer irreparable harm in the absence of injunctive relief.**

An essential prerequisite to injunctive relief is a sufficient showing by the plaintiffs that they will suffer irreparable harm if injunctive relief is not granted.  *See, e.g., Davenport v. International Brotherhood of Teamsters,* 166 F.3d 356, 360 (D.C. Cir. 1999); *see also Sampson v. Murray*, 415 U.S. 61, 88–90 (1974).

> Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur.  The movant must provide proof . . . indicating that the harm is certain to occur in the near future.

*Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C. Cir. 1985).  As observed by Judge Urbina recently in *Spencer v. District of Columbia*, *supra*, a case similarly claiming that a requested due process hearing was improperly delayed:

> A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction.  *CityFed Fin. Corp.* [*v. Office of Thrift Supervision*], 58 F.3d [738, 747 (D.C. Cir. l995)] (quotation omitted).  Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors.  *Id.*

*Spencer*, 416 F. Supp.2d at 9.

"[A]n injunction should not be issued unless the threat of injury is imminent and well-founded, *and* unless the injury itself would be <u>incapable of being redressed</u> after a final hearing on the merits." *Wieck*, 350 A.2d at 388 (emphasis added); *see also Wisconsin Gas Co.*, 758 F.2d at 674. The movant has the burden to come forward with admissible evidence that he will suffer irreparable harm unless injunctive relief is granted. *Davenport*, 166 F.3d at 360.

Here, there has been no showing whatever of irreparable harm pending a resolution of the merits.  To the extent the Plaintiff suggests an urgency now, such claims are at odds with the Plaintiff's prior conduct, since Plaintiff has yet to complete T.G.'s enrollment with

a DCPS school by immunizing T.G. *See* DCPS Response, ¶¶ 4-6 (attached as Ex. 1); *see also* 22 D.C. Mun. Regs. §§ 130-136. In short, there is no equitable basis for demanding such haste here.

Moreover, the three cases Plaintiff cites in support of his irreparable harm argument are inapposite because they involved egregious procedural violations of IDEIA, such as the failure to provide a due process hearing or the failure to devise IEPs several years after the request was made. In *Cox v. Brown*, 498 F. Supp. 823 (D.D.C. 1980), the Court granted the plaintiffs' motion for a preliminary injunction requiring the Department of Defense ("DOD") to place the plaintiffs' two children in private schools in the United States because the DOD was several years delinquent in devising IEPs for the students and the father was a civilian employee of the United States government on loan to the North Atlantic Treaty Organization. *Cox*, 498 F. Supp. at 828. In *Massey v. District of Columbia*, 400 F. Supp.2d 66 (D.D.C. 2005), and *Blackman v. District of Columbia*, 277 F. Supp.2d 71 (D.D.C. 2003), the Courts granted the plaintiffs' motions for preliminary injunctions on the ground that DCPS' egregious failure to provide an adequate administrative process to the students effectively denied them FAPE, and as such, resulted in per se harm to the students satisfying the irreparable injury requirement for preliminary injunctive relief. Specifically, in *Massey*, DCPS failed to provide an appropriate placement, hold the resolution session in a timely manner, or respond to the hearing request in the substance required by the IDEA statute. *Massey*, 400 F. Supp.2d at 74. Similarly, in *Blackman,* DCPS failed to schedule timely due process hearings and provide written determinations in a timely manner after the plaintiffs had requested IEP meetings or hearings. *Blackman*, 277 F. Supp.2d at 77; *see also E.M. ex rel. E.M. v. Pajaro Valley Unified School Dist*., 2006 WL 3507926, (N.D. Cal.

2006) (holding that minor procedural violations do not constitute a denial of FAPE and grounds for granting a motion for a preliminary injunction).

In this case, Plaintiff did receive an administrative hearing, unlike the plaintiffs in *Blackman* and *Massey*. More importantly, Plaintiff presents no reason to believe that he will not receive appropriate relief once he completes his immunizations. Further, any delay is attributable to his decision to file suit rather than complete enrollment requirements, and this self-inflicted harm negates any showing of irreparable harm. *Lee v. Christian Coalition of America, Inc.*, 160 F.Supp.2d 14, 33 (D.D.C. 2001) (holding that a preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted); *Barton v. District of Columbia*, 131 F. Supp.2d 236, 247-48 (D.D.C. 2001). Plaintiff's claim that immediate Court intervention is required to continue T.G.'s attendance at Rock Creek Academy is outside the scope of the HOD and ignores the fact that the school is on vacation for the last couple weeks of August. *See* Rock Creek Academy school calendar, *available at*

www.rockcreekacademy.org/WhatsHappening/school_calendar.asp?m=8&y=2008

(printout attached as Ex. 2).

**C.     Prong 3: The balance of harms favors the Defendant**.

As to this element, the Plaintiff states simply that because DCPS was nonresponsive to Plaintiff's alleged written requests to convene an MDT/IEP meeting, Plaintiff resorted to placing T.G. at Rock Creek Academy. Compl. ¶¶ 13-22. In weighing the balance of interests here, it should be stressed that Rock Creek Academy is out of session for the last part of August. DCPS has offered to evaluate T.G. and conduct a MDT/IEP meeting to approximately coincide with the upcoming 2008-09 school year. Given that school is out

of session and the upcoming school year is over six weeks away, there is no indication whatever in this case that preliminary injunctive relief is required to avoid causing T.G. any educational injury. However, Plaintiff has rejected this administrative process and instead filed with this Court.

### D.    Prong 4: Granting the requested injunctive relief would not be in the public interest.

In general terms, grant of the relief requested here would represent a major disruption of a carefully crafted legislative scheme. IDEIA and related federal regulations specifically provide for the administrative procedures governing challenges to IEPs and placements, and for judicial review of administrative HODs. The Plaintiff's request for funding to attend Rock Creek Academy and circumvent those statutorily-prescribed processes indeed represents potential harm to DCPS and its ability to administer its special education programs, and does violence to the Congressionally-prescribed processes.

Here, the Plaintiff would have the Court disregard such statutory and regulatory prescriptions and choose a placement for T.G. Such a course can only impair the orderly conduct of the adjudication procedures prescribed by Congress, and would not be in the public interest.

### CONCLUSION

For the reasons set forth above, the Plaintiff has failed to satisfy the four-prong test justifying the grant of preliminary injunctive relief. It is clear that the Plaintiff has failed to exhaust his administrative remedies and seeks a Court-fashioned alternative to the statutory procedural scheme. No imminent irreparable injury of any sort has been demonstrated, and harm both to the Defendant and the public interest in the event of a grant of the requested

14

relief are readily apparent. As a consequence, not only should the Motion be denied, but

the Complaint herein should be summarily dismissed.

Dated this 18th day of July, 2008.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Edward P. Taptich*
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

/s/ *Richard A. Latterell*
RICHARD A. LATTERELL [502127]
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6626 (phone)
(202) 715-7820 (facsimile)
Richard.latterell@dc.gov

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Defendant's (1) Opposition to Plaintiff's

Motion for a Preliminary Injunction and (2) Motion to Dismiss, along with the Proposed

Order, were sent, on this 18th day of July, 2008, by electronic service to the following:

Doug Tyrka
TYRKA & ASSOCIATES, LLC
1726 Connecticut Avenue, N.W., Suite 400
Washington, DC 20009
(202) 265-4264
tyrka@tyrkalaw.com

*/s/ Richard A. Latterell*

RICHARD A. LATTERELL
Assistant Attorney General

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

Terrell Gage, DOB: 10/16/92

    Petitioner,

v.

District of Columbia Public Schools

    Respondent

**District of Columbia Public School's Response to**
**Parent's Administrative Due Process Complaint Notice**

    The District of Columbia Public School (hereinafter "DCPS"), by and through the undersigned Attorney Advisor, hereby provides its Response[1] to the Administrative Due Process Complaint Notice ("Complaint") filed on or about March, 2008 on behalf of the parent of the above named student, pursuant to the Individual's with Disabilities Education Improvement Act (hereinafter "IDEA 04"), 20 U.S.C. §1415(c)(2)(B)(i)(I).   Specifically, DCPS asserts the following:

1.  Terrell moved to Washington, DC from the Maryland School system.
2.  Parent's counsel requested an MDT meeting per the students special education needs.
3.  DCPS informed the parent that the student must first be enrolled in school.
4.  After the parent finally enrolled the student and DCPS received records from the previous school district it was determined that the student was in need of immunization shots.
5.  DCPS has made numerous requests to provide this information to the student but the student has significant attendance problems.
6.  On April 28, 2008, sent the parent a notice regarding the need for immunization records.

---

[1] DCPS acknowledges that this response may not be timely. However, DCPS maintains that this procedural violation has in no way harmed the student.



In re Terrell Gago
Response to Due Process Complaint Notice
Page 2

Date: April 29, 2008                    Submitted by:

                                        /s/ Christal Mims-Williams
                                        Christal Mims-Williams
                                        Attorney Advisor
                                        Office of the General Counsel
                                        DC Public Schools
                                        825 North Capitol Street, N.E., 9th Floor
                                        Washington, D.C. 20002
                                        (202) 442-5564 – direct
                                        (202) 442-5097/8 - fax

## CERTIFICATE OF SERVICE

I, Christal Mims-Williams hereby certify that a copy of DCPS' Response to the

Administrative Due Process Complaint Notice was served on Douglas Tyrka.

                                        /s/ Christal Mims Williams
                                        Christal Mims Williams

2



Challenging Minds.
Building Character.

| Home | About Us | Student Services | What's Happening | Career Opportunities | |

## School Calendar

### <<     August 2008.     >>

| Sun | Mon | Tue | Wed | Thu | Fri | Sa |
|-----|-----|-----|-----|-----|-----|-----|
|  |  |  |  |  | 1<br><br>MPD Life Skills Fashion Show | 2 |
| 3 | 4 | 5 | 6 | 7 | 8<br><br>LAST DAY OF SUMMER SCHOOL<br><br>Field Day | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |  |  |  |  |  |  |

4401 Connecticut Ave, NW  |  Washington, DC 20008  |  phone: 202.378.1400
©2005 Rock Creek Academy, Inc. | Triratna WebDesign



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **MICHAEL GAGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civ. No. 1:08-cv-01159-EGS** |
| | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____)


**<u>ORDER</u>**

Upon consideration of Plaintiff's Motion for a Preliminary Injunction, Defendant's

Opposition thereto and the record herein, it is by the Court this _____ day of July,

2008,

      **ORDERED**: That Plaintiff's Motion is DENIED; and it is

      **FURTHER ORDERED**: That the Complaint herein is DISMISSED with prejudice.


_____
UNITED STATES DISTRICT COURT JUDGE