THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL GAGE,<br>          Plaintiff,<br>v.<br>DISTRICT OF COLUMBIA,<br>          Defendant. | Civil Action No. 08-1159 (EGS) |

**PLAINTIFF'S MEMORANDUM IN REPLY TO DEFENDANT'S
OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION[1]**

**I.    PRELIMINARY INJECTION STANDARD**

The Defendant incorrectly asserts that the traditional four-factor test for the granting of a preliminary injunction requires that the "Plaintiff must satisfy *each* prong of the . . . test." Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction ("Def.'s Opp'n.") at 5 (emphasis in original). To the contrary, the four factors are not disjunctive, but interrelated, and may be balanced against each other. See Plaintiff's Motion for a Preliminary Injunction ("Pl.'s Mot.") at 5-6, citing Serono Lab v. Shalala, 158 F.3d 1313 (D.C. Cir. 1998).[2]

---

[1] The Defendant has captioned its filing as an "Opposition to Plaintiff's Motion For A Preliminary Injunction And (2) Motion To Dismiss[.]" Def.'s Opp'n. at 1. The Plaintiff here submits his memorandum in reply to the Defendant's Opposition and will reserve his Opposition to the Defendant's Motion to Dismiss, if necessary, to be filed within the time permitted by Local Civil Rule 7(b).

[2] This is also clear in the cases cited by the Defendant. See, e.g., Barry v. Washington Post Co., 529 A.2d 319, 320-321 (D.C. 1987) ("When the last three factors strongly favor interim relief, only a 'substantial' showing of likelihood of success, not a 'mathematical probability,' is necessary for the court to grant a stay"); Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977) ("The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors.").

II.  **THE DEFENDANT HAS DECLINED TO CHALLENGE THE FACTS AND ARGUMENT PRESENTED IN THE PLAINTIFF'S MOTION**

In arguing that Mr. Gage will not succeed on the merits of this case, the Defendant devotes itself to the contention that the issues presented are "outside the scope of the HOD." Def.'s Opp'n at 6.[3] The Plaintiff addresses that argument below.

The Defendant has declined to present any argument that the Plaintiff's interpretation of the relevant law is incorrect. That is, the Defendant has offered no law or argument in that DCPS did not owe T.G. FAPE from the time he moved into the jurisdiction.

The Defendant has likewise declined to contest the relevant facts as presented in the Plaintiff's Motion, as had already been found by the Hearing Officer. Accordingly, there appears to be no dispute that DCPS owed T.G. FAPE beginning in late February or early March 2008, that Mr. Gage repeatedly requested that FAPE, that DCPS did nothing to provide that FAPE, and that DCPS declined to suggest any possible school for T.G. to attend, appropriate or not.[4]

III.  **THE DEFENDANT'S CLAIM THAT "T.G.'S IMMUNIZATIONS ARE OUTSTANDING" IS IRRELEVANT, UNSUBSTANTIATED, AND FALSE**

T.G.'s immunization records are current and complete. See Pl.'s Mot. Exhibit 3 at 6. Furthermore, Mr. Gage provided DCPS with T.G.'s immunization certificate on more than one occasion. See Pl.'s Mot. Exhibit 3 at 5-7, 11-12 (Letters to Ballou Senior High School from Plaintiff's counsel with fax confirmations attached); see also statement of Defendant's counsel at status hearing of July 16, 2008, that DCPS now has all necessary paperwork for T.G.. The

---

[3] The Defendant does attempt to distinguish the cases cited by the Plaintiff, falsely claiming that the children in those cases had enrolled in public schools. As reviewed at length in the Plaintiff's Motion, in Hawkins, the child was not registered at, enrolled in, or attending a DCPS school at the time of the administrative complaint or the resulting hearing. See Hawkins v. District of Columbia, 539 F. Supp. 2d 108, 113-114 (D.D.C. 2008). The students at issue in Abramson and Nesbit were likewise neither enrolled in nor attending DCPS schools. See 493 F. Supp. 2d 80, 86 (D.D.C. 2008); 2003 U.S. Dist. LEXIS 23606, *21 (D.D.C. March 31, 2003); Pl.'s Mot. at 7-10.

[4] DCPS did state that T.G. "was in need of immunization shots." Def.'s Opp'n Exhibit 1. As discussed below, that claim is irrelevant, unsubstantiated, and false.

2

Defendant's repeated allegation that T.G.'s immunizations are "outstanding" is plainly false. See Def.'s Opp'n at 2, 10-13.

The falsity of that allegation is unsurprising, given that the Defendant has offered no support for its claim outside of a statement by DCPS counsel in an April 29, 2008 Response.[5,6] That statement was supported with neither documentary or testimonial evidence nor personal knowledge and, as such, may not be relied upon as probative fact. See Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997) (granting summary judgment when adverse party's attorney's affidavit was not based on personal knowledge); Magruder v. Schley, 18 App. D.C. 288 (D.C. App. 1901) (finding affidavit not based on the affiant's personal knowledge inadequate because "suspicion is not proof; and it is equally true that belief and expectation to prove cannot be accepted as a substitute for fact").

Furthermore, by failing to substantiate or argue this issue at the administrative level, at a hearing or in any brief as ordered by the Hearing Officer, the Defendant has waived its right to raise the argument before this Court. See Leonard v. McKenzie, 869 F.2d 1558, 1563 (D.C. Cir. 1989) (declining to consider issue not raised before hearing officer).

Regardless, the issue of T.G.'s immunization records is wholly irrelevant to this case. The Defendant has not explained in any way, much less established, what exact problem it alleges exists with the immunization records received by DCPS on April 2, 2008. Moreover, the Defendant does not allege that DCPS gave Mr. Gage any notice of the alleged insufficiency at any relevant time, so as to permit its correction.[7]

---

[5] That document did not respond to the due process complaint underlying this case, but to a due process complaint filed earlier and subsequently withdrawn for revision.

[6] It should be noted that at the time DCPS counsel made this allegation, DCPS had possessed T.G.'s immunization records for nearly a month. (See Pl.'s Mot. Exhibit 3 at 7.)

[7] The Defendant has apparently abandoned the further unsubstantiated claim in the Response that DCPS sent Mr. Gage a notice. If the Defendant makes that allegation, Mr. Gage will provide an affidavit or testimony to refute it. Regardless, not even the Response alleges that any notice went out before weeks after the filing of the administrative complaint to which that document responds. As is clear in the documents, in early May, very late in the history of

Ultimately, the Defendant does not, and cannot, explain why an absence of immunization records would prevent a multidisciplinary team from meeting to discuss T.G.'s IEP, order necessary evaluations, or discuss an appropriate placement, even if more needed to be done to finalize that placement. Furthermore, the Defendant has not alleged that it had ever identified any school that T.G. should attend, but could not due to a lack of immunization records. To the contrary, the Defendant has effectively admitted the Hearing Officer's finding of fact that DCPS did nothing in response to Mr. Gage's requests. Pl.'s Mot. Exhibits 4, 6.

IV. **MR. GAGE HAS EXHAUSTED AVAILABLE ADMINISTRATIVE REMEDIES, AND THIS COURT HAS JURISDICTION OVER HIS COMPLAINT**

The Defendant contends that Mr. Gage is seeking relief "outside the scope of the HOD and that, if granted, would circumvent the statutory and administrative framework of IDEIA." Def.'s Opp'n at 6. The Defendant misrepresents the nature of the exhaustion requirement and the IDEA's provision for challenging HODs.

The IDEA grants "[a]ny party aggrieved by [an HOD]...the right to bring a civil action with respect to the [administrative] complaint[.]" 20 U.S.C. § 1415(i)(2)(A). Jurisdiction in this court therefore depends upon only two things:  1) that the Plaintiff be aggrieved; and 2) that the court complaint be "with respect to" the administrative complaint. See id.

Mr. Gage has plainly been aggrieved. "A party is considered 'aggrieved' under [the IDEA]...where relief requested in satisfaction of the Act is denied." Diatta v. District of Columbia, 319 F. Supp. 2d 57, 63 (D.D.C. 2004); see also D.A. v. Pleasantville Sch. Dist., 2008 U.S. Dist. LEXIS 49941 *10 (D.N.J. June 30, 2008) (citation omitted) ("Once a decision has been rendered at a due process hearing, administrative remedies are deemed exhausted, and a

---

this case, Mr. Gage received a telephone message stating that DCPS needed immunizations records, so he provided them to DCPS a third time. Pl.'s Mot. Exhibit 3 at 11-12.

party has the right to appeal the due process hearing decision by bringing a civil action in any state or federal court").

At the administrative level, Mr. Gage requested, under the IDEA, placement and funding at Rock Creek Academy, retroactive to the date of enrollment, among other things. The Hearing Officer denied that relief, so Mr. Gage is aggrieved.

Regarding the second element of jurisdiction, the Complaint in this case is plainly "with respect to" the administrative complaint. The Complaint contains the same allegations and the same claims, and requests the same relief; the Complaint before this Court and the administrative complaint could hardly be more similar. Compare Compl., with Pl.'s Mot. Exhibit 1 at 5-7.[8]

The Defendant's repeated assertion that T.G.'s placement is "outside the scope of the HOD" is both incorrect and irrelevant. It is incorrect because the Hearing Officer explicitly acknowledged Mr. Gage's request for placement at Rock Creek Academy in both the May 27, 2008 pre-hearing conference order and the June 6, 2008 HOD. See Pl.'s Mot. Exhibits 4, 6. ("Counsel for the Parent complained of failure on the part of DCPS to provide special education services to the student and, for relief, requested a private placement at Rock Creek Academy"). It is irrelevant because jurisdiction depends only upon the request for relief and the denial of that relief, and not on any particular statement in the HOD. See 20 U.S.C. § 1415(i)(2)(A); Diatta, 319 F. Supp. 2d at 63.

The Hearing Officer's failure to make a determination on the issues presented in Mr. Gage's administrative complaint cannot serve to strip this court of jurisdiction over those issues. See, e.g., Hawkins, 539 F. Supp. 2d at 112-113 (overturning Hearing Officer's decision where the "HOD failed to make a determination on the issue raised in [the Plaintiff's] due process

---

[8] The Plaintiff's administrative complaint requests as relief, inter alia, an order placing T.G. at Rock Creek Academy. Compare Pl.'s Mot. Exhibit 1 at 6, "Proposed resolution" ¶ 2.a, with Compl. at 6.

complaint"); Petway ex rel. J.P. v. District of Columbia, 2005 WL 3276349 at *6, 2005 U.S. Dist. LEXIS 36226 at *22-23 (Aug. 10, 2005) (stating the Court may reach its own conclusions where the ''HOD contains no discussion or conclusions of law relating to... issues'' raised in the administrative complaint).

The clear standards for exhaustion aside, it is simply incongruous for the Defendant to seek to rely upon the Hearing Officer's specific resolution of an issue when it has repeatedly declined to address that issue itself. The Plaintiff filed an administrative due process complaint seeking placement for T.G. at Rock Creek Academy. When the Hearing Officer asked the parties to submit briefs on the issue, Mr. Gage submitted a brief explaining both the need for DCPS to provide T.G. FAPE and the appropriateness of Rock Creek Academy. Pl.'s Mot. Exhibit 5. DCPS did not submit a brief on any issue, did not reply to Mr. Gage's brief, and did not in any way respond to Mr. Gage's repeated allegations and evidentiary submissions showing that Rock Creek Academy was an appropriate placement. The Defendant now seeks to hide behind the Hearing Officer's failure to address an issue that DCPS repeatedly declined to contest.

Mr. Gage brought an IDEA administrative complaint requesting "relief...in satisfaction of the Act," including placement and funding at Rock Creek Academy retroactive to the date of enrollment. Diatta, 319 F. Supp. 2d at 63. That relief was denied. Mr. Gage is therefore aggrieved, and therefore has "the right to bring a civil action with respect to the complaint[.]" 20 U.S.C. § 1415(i)(2)(A).

## V.    T.G. IS IN DANGER OF IRREPARABLE HARM

The Defendant presents three arguments against the presence of a threat of imminent and irreparable harm. First, the Defendant claims that the Plaintiff's past actions are at odds with his claim that this matter requires prompt resolution. Second, the Defendant claims that its own

6

actions are not sufficiently egregious to allow for a finding of a threat of irreparable harm. Finally, the Defendant claims that Rock Creek Academy's August break somehow eliminates the potential that T.G. will suffer irreparable harm in the absence of a speedy resolution to the Plaintiff's claims. The arguments lack merit.

### A. Mr. Gage Has Diligently Pursued T.G.'s Rights

DCPS implicitly admitted all of the Hearing Officer's findings of fact, and the Plaintiff's allegations, when it declined to make any filing at the administrative level. The Defendant has continued to decline to challenge any of those findings.[9]

Those undisputed facts include the following:

1) Mr. Gage repeatedly requested, both in person and in writing, that DCPS convene a multidisciplinary team ("MDT") meeting to determine an appropriate placement for T.G., and provided DCPS with all relevant documents. See Pl.'s Mot. Exhibits 1 at 5-7, ¶ 8; 4; 6.

2) DCPS failed to respond to those requests, failing to suggest enrollment at any school whatsoever. See id.

3) When DCPS failed to provide an appropriate school for T.G. the Plaintiff secured a placement at an appropriate private school to ensure that T.G. received some educational benefit. Pl.'s Mot. Exhibit 3 at 8-9.

4) The Plaintiff filed an administrative action attempting to force the Defendant to determine an appropriate placement for T.G., and then filed the present Complaint and Motion for immediate preliminary relief.

---

[9] DCPS' argument here is based largely on its unsupported claim that T.G.'s immunizations are "outstanding." Def.'s Opp'n at 2, 10-13. See Section III, supra, for a detailed response to that argument.

7

Throughout the process, Mr. Gage has diligently pursued his son's rights, and has expressed through his actions the urgency of this matter.[10]

### B. The Egregiousness of DCPS' Violations is Irrelevant, Though the Violations Have Been Egregious

The Defendant seems to contend that there is no danger of irreparable harm unless DCPS' violations have been sufficiently egregious. See Def.'s Opp'n at 12. The Defendant mistakenly conflates the seriousness of its alleged violations with the potential for irreparable harm. There is no question that T.G. is in danger of having no school to attend. That harm is real and imminent, regardless of how egregious are the actions that created the danger.

Regardless, it is hard to see why DCPS' actions in this case are so forgivable. DCPS for months ignored repeated requests for a school placement, in writing and in person, for a child whom DCPS knew to be in need of extensive specialized instruction and related services. DCPS left that child with no school whatsoever, forcing his father to find a private school willing to admit him without funding, "on spec." DCPS' casual neglect of all of its obligations, under the IDEA and other laws, certainly qualifies as "egregious."

### C. Rock Creek Academy Is Not "on Vacation for the Last Couple Weeks of August," Though That Fact is of Questionable Relevance

The Defendant's claim regarding Rock Creek Academy's calendar is not completely clear, but it is not correct that the school is not in session at the end of August. The school year at Rock Creek Academy begins on August 25, 2008. See Exhibit 1. Regardless, the exact date is irrelevant, as this case will certainly not reach final resolution in the next few months in the absence of a preliminary injunction.

### VI. THE DEFENDANT HAS MADE NO RELEVANT ARGUMENT REGARDING THE BALANCE OF HARMS

---

[10] Mr. Gage's actions, responsible as they have been, are irrelevant regardless. The simple fact is that the new school year is only one month away.

8

The "balance of harms" factor of the preliminary injunction standard requires a court to weigh the potential harm to the Defendant of the Plaintiff's requested injunctive relief against the harm to the Plaintiff if such relief is withheld. See Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977).

The Defendant has neither argued that it is in danger of harm or that the child is not. Instead, the Defendant has alleged (wrongly – see Exhibit 1) that "the upcoming school year is over six weeks away." The start date of the new school year is relevant to the question of immediacy of the danger, and the Plaintiff has addressed that question in his discussion of that preliminary injunction factor, but that issue has no bearing on the balance of harms.[11]

The Defendant has not, and reasonably could not, contest the fact that T.G. will be harmed if he does not have a school placement for the new school year. As reviewed in the Plaintiff's Motion, this court has repeatedly held that the irreparable harm of denial of FAPE outweighs DCPS' interests in cases like these. See Pl.s Mot. at 15-16, citing Massey v. District of Columbia, 400 F. Supp. 2d 66 (D.D.C. 2005), Cox v. Brown, 498 F. Supp. 823, 828-29 (D.D.C. 1980).

## VII. THE REQUESTED RELIEF IS IN THE PUBLIC INTEREST

The Defendant has cited to nothing in its Opposition to counter the precedent in this Court, notably in the Petties class action, establishing that the public interest in these cases rests

---

[11] The Defendant also claims that "Plaintiff has rejected this administrative process and instead filed with this Court." This is patently false. DCPS has already admitted, and the Hearing Officer repeatedly found, that DCPS failed to initiate or to offer any MDT process prior to the filing of the administrative complaint. The Defendant has neither proven nor suggested that it made any such offer after the administrative case and prior to the filing of the Complaint in this case. Only several days after the filing of the Complaint, upon the Court's suggestion, but one business day before the status hearing, the Defendant made an offer of settlement. To the degree that the Defendant seeks to refer to that offer, the Defendant is breaching the confidentiality of settlement negotiations. Upon the Court's order or request, the Plaintiff is happy to explain the numerous reasons why the Defendant's offer was unacceptable.

9

with the parents and children. See Pl.'s Mot. at 16, citing Massey, 400 F. Supp. 2d 66 and Petties v. District of Columbia, 238 F. Supp. 2d 88, 99 (D.D.C. 2002).

## CONCLUSION

For these reasons and the reasons presented in his Motion for a preliminary injunction, the Court should grant the Plaintiff's Motion and order the requested relief.

>Respectfully submitted,
>
>/s/_____
>Douglas Tyrka, #467500
>Tyrka & Associates, LLC
>1726 Connecticut Ave. NW, Suite 400
>Washington, DC 20009
>(ph) (202) 265-4260
>(f) (202) 265-4264
>tyrka@tyrkalaw.com

10

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL GAGE,<br>          Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>          Defendant. | Civil Action No. 08-1159 (EGS) |

### VERIFIED STATEMENT OF SHAWN MEADE

1. I am over 18 years of age and competent to testify regarding the matters described herein.

2. I am the Chief Executive Officer of Rock Creek Academy ("Rock Creek"), a private special education school in the District of Columbia.

3. Rock Creek Academy will begin classes for the 2008-2009 school year on August 25, 2008. (see attached calendar)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 7/18/19

Shawn Meade

07/13/2008 08:05 FAX ⌐005/005
Case 1:08-cv-01159-EGS   Document 6-2   Filed 07/21/2008   Page 2 of 2
Rock Creek Academy - What's Happening? Page 1 of 1




## Challenging Minds. Building Character.

| Home | About Us | Student Services | What's Happening | Career Opportunities | Contact Us |

**School Calendar**

<<   **August 2008**   >>

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8<br>LAST DAY OF SUMMER SCHOOL<br><br>Field Day | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19<br>Professional Development- ALL STAFF | 20<br>Professional Development- ALL STAFF | 21<br>Professional Development- ALL STAFF | 22<br>Professional Development- ALL STAFF | 23 |
| 24 | 25<br>First Day of 2008-2009 School Year-ALL STUDENTS | 26 | 27 | 28 | 29 | 30 |
| 31 |  |  |  |  |  |  |

4101 Connecticut Ave, NW | Washington, DC 20008 | phone: 202.378.1400
©2005 Rock Creek Academy, Inc. | Triratna WebDesign